| | |
|---|---|
| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br>7325 South Potomac Street<br>Centennial, Colorado  80112 | DATE FILED: November 12, 2019 4:20 PM<br>FILING ID: 7486B40BFB545<br>CASE NUMBER: 2019CV32673 |
| Plaintiffs:    SKIBO, INC., a Colorado corporation<br>                    and ILIA GRETSKIY<br>v.<br>Defendant:   SHELTER MUTUAL INSURANCE<br>                    COMPANY | |
| *Attorney for Plaintiffs:*<br><br>David M. Summers<br>4401 South Quebec Street,<br>Suite 100<br>Denver, Colorado  80237<br>Phone: (303) 220-5420<br>Email: dsummerslaw@gmail.com | **Case Number:**<br><br>**Division:**<br><br>**Courtroom:** |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiffs SKIBO, INC., a Colorado corporation ("SKIBO") and Ilia Gretskiy (Mr. Gretskiy") (collectively, "Plaintiffs" or "Insureds"), by and through their attorney, David M. Summers, for their Complaint against Shelter Mutual Insurance Company ("Shelter"), allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiffs were insured by Shelter at all times described in this Complaint.

2. Plaintiffs are the owners of residential property located at 12066 East Lake Circle, Greenwood Village, Colorado  80111 (the "Property").  At all relevant times, Plaintiffs are and were the beneficiary of a property insurance policy issued by Shelter covering the Property (the "Policy").

Exhibit A

3.	Venue is proper in this district pursuant to C.R.C.P. 98 because at all times relevant to this case, SKIBO is and was a Colorado corporation doing business in Arapahoe County, and Mr. Gretskiy is and was a resident of Arapahoe County; the Property is located in Arapahoe County, and all activities alleged in this Complaint occurred in Arapahoe County.

4.	All of the acts described in this Complaint occurred in the State of Colorado under Colorado law, and involve an insurance policy governed by Colorado law.

5.	This Court has personal and subject matter jurisdiction over this case pursuant to Colo. Rev. Stat. §§ 13-1-124 1(a), (b), and (c).

## GENERAL ALLEGATIONS

6.	On or about September 6, 2018, the Property was leased by Plaintiffs to an unrelated third party (the "Tenant") for $3,000 per month, and the Tenant took possession of the Property on or about September 15, 2018.

7.	The Tenant paid the monthly rent in a timely manner for the period from September 15, 2018 through January 14, 2019.

8.	On or about January 16, 2019, after returning from an out of town trip, the Tenant discovered severe and extensive water damage to the Property.

9.	Shelter was notified about the discovery of the water damage in a timely manner.

10.	Shelter assigned a claims adjuster to handle the claim on behalf of Shelter.

11.	During the interim weekend that followed, the Tenant removed the Tenant's and Tenant's invitees' belongings that could be salvaged from the Property, and other damaged items were also removed from the Property in an effort to prevent mold growth.

12.	Shelter's claims adjuster first inspected the Property on Monday, January 21, 2019.

13.	By the time of such inspection, however, Tenant and Tenant's invitees had removed virtually all of their belongings from the Property.

14. Based on the inspection conducted on January 21, 2019, Shelter's claim adjuster concluded that the Property was vacant.

15. Based on the inspection conducted on January 21, 2019, Shelter's claim adjuster concluded that the Property was unoccupied.

16. Experts hired by Shelter determined that the water damage was caused by the sudden bursting of a water supply pipe located in the second floor bathroom.

17. The Plaintiffs completed the claim form given to them by Shelter and provided all information and documents requested by Shelter in a timely manner.

18. The Plaintiffs reasonably cooperated with the investigations conducted by and on behalf of Shelter.

19. Despite the obvious extensive water damage to the Property, Shelter refused to tender any payment for necessary mitigation to prevent additional damage to the Property, including imminent potential damage from mold and mildew.

20. Nevertheless, the Plaintiffs took reasonable steps to mitigate against additional damage to the Property, including potential damage from mold and mildew.

21. Despite efforts by the Plaintiffs to obtain some assistance from Shelter associated with their casualty loss at the Property, Shelter delayed and refused to provide any assistance to the Plaintiffs.

22. Approximately three months later, Shelter sent a letter denying coverage for the loss under the Policy in its entirety, based on the following two exclusions contained in the policy:

> 11. Leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy.

    12. Continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning systems or from within a domestic appliance which occurs over a period of weeks, months or years.

  23. On information and belief, the letter sent to the Plaintiffs denying coverage was prepared prior to Shelter's receipt of Plaintiffs' claim form.

  24. Shelter determined that the Property was vacant at the time the water damage occurred.

  25. Shelter determined that the Property was unoccupied at the time the water damage occurred.

  26. Shelter determined that the leakage of water that occurred at the Property occurred over a period of weeks.

  27. Shelter's denial of Plaintiffs' claims under the Policy was improper.

  28. On information and belief, Shelter has wrongfully delayed and denied covering similar claims under similar circumstances for other customers of Shelter in the past.

  29. On information and belief, Shelter intentionally selected vague and undefined terms in the Polity to describe coverage exclusions in its Policy, in order to facilitate delay and denial of claims such as those made by the Plaintiffs.

  30. With respect to the Insureds, at the time the water damage occurred, the Property was not vacant because the Property was leased to the Tenant.

  31. With respect to the Insureds, at the time the water damage occurred, the Property was occupied because the Property was leased to the Tenant.

  32. With respect to the Insureds, at the time the water damage occurred, the Property was occupied because the Tenant and the Tenant's invitees were in full possession of the Property.

33. With respect to the Insureds, at the time the water damage occurred, the Property was occupied because the Tenant and his invitees had furniture and other material possessions located inside of the Property.

34. With respect to the Insureds, at the time the water damage occurred, the Property was occupied because the Tenant and the Tenant's invitees were using the space inside of the Property as their own.

35. The Insureds made an effort to maintain heat in the Property because the Property was leased to the Tenant.

36. The Insureds made an effort to maintain heat in the Property because they relinquished possession of the Property to the Tenant and the Tenant's invitees.

37. The Insureds made an effort to maintain heat in the Property because they maintained the furnace at the Property in "good maintenance and repair at their expense."

38. The Insureds made an effort to maintain heat in the Property because the relevant lease required the Tenant to keep all portions of the Property in "clean and habitable condition."

39. The Insureds made an effort to maintain heat in the Property because the relevant lease provided that the Tenant was responsible for paying utilities at the Property, including natural gas used for heating the Property.

40. The Insureds made an effort to maintain heat in the Property because the relevant lease provided that the Tenant would not cause waste to occur upon the improvements at the Property.

41. In light of the rate of water flow from the sudden bursting of the water pipe in the upstairs bathroom, the extensive water damage to the Property occurred during a period of less than one week.

42. In light of the rate of water flow from the sudden bursting of the water pipe in the upstairs bathroom, no additional material damage to the Property occurred after a period of one week.

43. Plaintiffs' claim was unreasonably delayed, denied, and/or underpaid because Shelter's claims adjuster decided during his initial inspection that the claim would be denied.

44. Plaintiffs' claim was unreasonably delayed, denied, and/or underpaid because Shelter's claims adjuster improperly concluded that the Property was vacant during his initial inspection, and refused to consider relevant facts brought to his attention after such time.

45. On information and belief, Shelter's claim adjuster was rewarded for denial of the Plaintiffs' claim.

46. Numerous letters were sent to Shelter on behalf of the Plaintiffs questioning the unsupportable position of Shelter and requesting additional information and documents.

47. Shelter intentionally refused to provide meaningful responses to the inquires described above.

48. Shelter intentionally refused to provide relevant information and documents sought on behalf of the Plaintiffs.

49. To date, Plaintiffs have incurred substantial liability for mitigation performed at the Property, have lost monthly rental income from the Property, and have not been able to obtain required materials and complete work required to repair the water damage to the Property because Shelter wrongfully and unreasonably refused to issue any payment whatsoever to repair the damage caused to the Property, and failed to accept any responsibility for coverage under the Policy implicated in Plaintiffs' loss.

50. Shelter wrongfully denied Plaintiffs' claim for mitigation of water damage, repairs to the Property and lost rents, even though the Policy provided coverage for losses such as those suffered by Plaintiffs.

51. Shelter failed to adequately investigate Plaintiffs' claim for damages, resulting in significant and unreasonable delays in the handling of Plaintiffs' claim.

52. Shelter failed to perform its contractual duties to adequately compensate the Plaintiffs under the terms of the Policy for damages sustained to the Property, although proper demand was made for proceeds to be paid in an amount sufficient to repair damages to the Property, and all conditions precedent to recovery upon the Policy had been carried out and performed by the Plaintiffs.

53. All conditions precedent to recovery upon the Policy by the mortgagee's listed on the Policy have been carried out and performed.

54. Shelter failed to perform its contractual duties to adequately compensate the mortgagees listed on the Policy for their interests, which would have indirectly benefited the Plaintiffs.

55. As a direct and proximate result of action and inaction by Shelter, Plaintiffs suffered damages in amounts to be proven at trial.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

56. Plaintiffs re-allege and incorporate the previous allegations as if fully set forth here.

57. A contract of insurance existed between Shelter and Plaintiffs.

58. Among other things, under the contract of insurance that existed between Shelter and Plaintiffs, Shelter was required to pay covered claims under that contract of insurance.

59. Shelter's conduct described above constituted a breach of the insurance contract between Shelter and Plaintiffs.

60. More specifically, Shelter breached its contract by, among other things, failing to pay Plaintiffs for their losses, forcing the Plaintiffs to incur liability for mitigation costs, failing to pay the Plaintiffs' rental income they lost, and compelling Plaintiffs to institute litigation to recover amounts due under the contract of insurance with Shelter.

61. Shelter breached its contract by failing to pay mortgagees listed in the Policy on account of the casualty loss at the Property.

62. As a result of Shelter's actions, Plaintiffs have sustained damages, and incurred recoverable costs and expenses in amounts to be proved at trial, for which Shelter is liable.

## SECOND CLAIM FOR RELIEF
## (VIOLATION OF C.R.S. 10-3-1115 AND 1116)

63. Plaintiffs re-allege and incorporate the previous allegations as if fully set forth here.

64. At all times pertinent to the allegations contained in this Complaint, the following statute of the State of Colorado was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(1) (a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

. . .

(2) Notwithstanding section 10-3-1113(3), for the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

65. Shelter unreasonably refused to tender the payment of benefits necessary to repair the damage done to Plaintiffs' property.

66. Plaintiffs' claim was so open and obvious that any reasonable insurer would have paid the benefits necessary to perform the mitigation, replacement and repairs in accordance with applicable industry standards and put Plaintiffs' property back in its pre-loss condition.

8

67. Shelter has unreasonably denied and delayed payment to Plaintiffs in violation of Colo. Rev. Stat. §10-3-1115.

68. Shelter has unreasonably denied and delayed payment to Plaintiffs' mortgagees in violation of Colo. Rev. Stat. §10-3-1115.

69. Colo. Rev. Stat. §10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees, court costs, and two times the covered benefit."

70. Shelter is subject to the provisions of Colo. Rev. Stat. §10-3-1116 for double damages, court costs, and attorney fees in addition to those claimed elsewhere in this Complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for damages against Shelter as follows:

(a) Damages for breach of contract, including the value of benefits Plaintiffs were entitled to receive under the Policy that were not provided; damages for delayed payment; consequential damages; and reasonable interest on delayed payment;

(b) Compensatory damages against Shelter including economic and noneconomic damages;

(c) Double damages, court costs, and reasonable attorneys' fees incurred in prosecuting this action pursuant to Colo. Rev. Stat. §10-3-1116;

(d) An award of pre-judgment interest, and costs; and

(e) Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted November 12, 2019.

/s/ David M. Summers
David M. Summers  # 13488
4401 South Quebec Street, Suite 100
Denver, Colorado  80237
(303) 220-5420
dsummerslaw@gmail.com
*Attorney for Plaintiffs*

Address of the Plaintiffs:
12066 East Lake Circle
Greenwood Village, Colorado  80111