

**Shelter**
**Insurance**
**Companies**

Claim Number: AO2171676
Policy Number: 05-79-4041852-8

We certify that this is a true and complete copy of
the insurance policy as of 01/17/2019.

Shelter Mutual Insurance Company

By: _Amy Crane_

klc

Exhibit 1

EXHIBIT A

 

**Shelter Mutual Insurance Company**
1817 W Broadway
Columbia, MO 65218
1-800-SHELTER (743-5837)

## Apartment Owners/Rental Dwelling Insurance Policy Declarations

**Named Insured:**
LESTER L BOGUNOVICH
6401 S BOSTON ST UNIT W101
GREENWOOD VILLAGE CO 80111-5344

**Policy Number:** 05-79-4041852-8
**Effective Date:** 03-07-2018 (12:01 AM CST)
**Expiration Date:** 03-07-2019 (12:01 AM CST)

**Agent:** ROBERT L CONNELLY
05-0A122-11
1949 WADSWORTH BLVD
SUITE 101
LAKEWOOD CO 80214
303-233-1800

These **Declarations** are part of your policy and replace all prior **Declarations**.

**The Named Insured is a(n):** INDIVIDUAL

**Policy Deductible**
$2,500

*For the number of deductibles applicable to multiple losses caused by a single occurrence, see the provision headed "DEDUCTIBLE" in the state specific amendatory endorsement.*

| Location | Protection | Zone |
|---|---|---|
| APARTMENT - 1 FAMILY FRAME BUILDING LOCATED AT 12066 E LAKE CIR NEAR GREENWOOD VILLAGE CO 80111 (COUNTY 0005) | 03 | 10 |

| Coverages | Limits | Premium |
|---|---|---|
| A. Building(s) | $390,600 | |
| B. Business Personal Property - Coinsurance 90 % | $39,060 | |
| C. Rents (12 Month Limit) | Actual Loss Sustained | |
| E. Bodily Injury, Property Damage and Personal Injury Liab | $300,000 Per Occurrence | $2.00 |
| F. Premises Medical Payments | $2,000 Per Person $50,000 Per Accident | |

| Items and Coverages | Limits | Premium |
|---|---|---|
| FIRE DIVISION RATING SUMMARY: FRAME 1 UNIT RENTAL | $390,600 | $1,436.00 |

| Premium Adjusting Endorsements | Limits | Deductible | Number | Premium |
|---|---|---|---|---|
| Special Form Coverage (Apartment Owners/Rental Dwelling) | | | B-250.2-B | |

| | Total for Term (This is Not a Bill): | |
|---|---|---|
| | | $1,438.00 |

| Policy forms and additional endorsements attached to this policy | Number |
|---|---|
| Apartment Owners/Rental Dwelling Ins Policy | B-249.2-B |
| Asbestos Exclusion | B-559-B |
| How Losses are Settled | B-834.3-B |

| Policy forms and additional endorsements attached to this policy | Number |
|---|---|
| AMENDATORY ENDORSEMENT - COLORADO | B-132.1-B |
| Amendatory Endorsement | B-173-B |

**Mortgagee**

**Loan Number: 0691370779**
JP MORGAN CHASE BANK, N.A.
ISAOA
PO BOX 100564
FLORENCE SC 29502-0564

**Mortgagee**

FIRST STATE BANK OF COLORADO
PO BOX 38
HOTCHKISS CO 81419-0038

(For Office Use Only)
Transaction: RNEW B
H. O. CODE: 1,438.00
Policy ID: 17003635371          Date Issued:  01-07-2018
Policy Term: One Year                       '01082017'
Mortgagee Pays Premium

B-473.2-B

**End of Declarations**

## APARTMENT OWNERS/RENTAL DWELLING INSURANCE POLICY

For information regarding this policy, please contact **your** Shelter Insurance® Agent.



**SHELTER INSURANCE COMPANIES**
Home Office:  Columbia, MO 65218-0001

B-249.2-B

## THE INDEX
### WHERE YOU CAN FIND IT

**DECLARATIONS** - **Your** Name, Location of **Your** Premises, Policy Period, Coverages, Limits of Liability and Deductibles.

Beginning on Page

AGREEMENT .................................................................................................................................................................... 2

DEFINITIONS ................................................................................................................................................................... 2

SECTION I .......................................................................................................................................................................... 3
    Coverage A - Building(s) ................................................................................................................................................ 3
    Coverage B - Business Personal Property ...................................................................................................................... 3
    Coverage C - Rents ........................................................................................................................................................ 3
    Additional Coverages ..................................................................................................................................................... 4
    Property Not Covered or Subject to Limitations ........................................................................................................... 5

PERILS WE INSURE AGAINST .................................................................................................................................... 5

EXCLUSIONS .................................................................................................................................................................... 6

CONDITIONS .................................................................................................................................................................... 6

SECTION II - LIABILITY ................................................................................................................................................ 8
    Coverage E - Bodily Injury, Property Damage and Personal Injury Liability ............................................................... 8
    Coverage F - Premises Medical Payments ..................................................................................................................... 9
    Additional Coverages ..................................................................................................................................................... 9

EXCLUSIONS .................................................................................................................................................................... 9

CONDITIONS .................................................................................................................................................................... 11

SECTION I AND II - CONDITIONS ............................................................................................................................... 11

SPECIAL FORM COVERAGE ....................................................................................................................................... 13

**APARTMENT OWNERS/RENTAL DWELLING INSURANCE POLICY**
**STANDARD COVERAGE FORM**
**INSURING AGREEMENT**

**We** agree to insure **you** according to all the terms of this policy,

(1)    in reliance on **your** statements in the Application and in any Application for Change and in the Declarations, made a part hereof, and

(2)    based on **your** payment of the premium.

When **you** pay the premium, this policy provides the insurance **you** chose, as shown in the Declarations. If any premium payment is by check, no insurance is provided if the check is not honored by the bank.

## DEFINITIONS USED THROUGHOUT THIS POLICY

The terms defined below appear in bold type throughout this policy:

1. **"You"** and **"your"** mean the **insured** named in the Declarations.

2. **"We"**, **"us"** and **"our"** mean the Company providing this insurance.

3. **"Bodily Injury"** means bodily injury, sickness or disease occurring during the policy term, and includes resulting death at any time.

4. **"Automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any attached machinery or apparatus). **Mobile equipment** is not included.

5. **"Elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all related equipment including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery. It does not include:
   (a)  an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or
   (b)  a hod or material hoist used in alteration, construction or demolition operations, or
   (c)  an inclined conveyor used exclusively for carrying property, or
   (d)  a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

6. **"Incidental contract"** means any written:
   (a)  lease of premises,
   (b)  easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad,
   (c)  undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality,
   (d)  sidetrack agreement, or
   (e)  elevator maintenance agreement.

7. **"Insured"** means the person(s) or organization named in the Declarations of the policy. Under Section II - Liability **insured** also means:
   (a)  if an individual, the insured's spouse but only with respect to the conduct of a business of which the **insured** is the sole proprietor;
   (b)  if a partnership or joint venture, the partnership or joint venture named in the policy Declarations and partners or members but only with respect to their liability as such;
   (c)  if other than an individual, partnership or joint venture, the organization named in the policy Declarations and executive officers, directors or stockholders while acting within the scope of their duties as such;

   (d)  any person (other than an employee of the **insured**) or organization while acting as real estate manager for the **insured**;
   (e)  any employee of the **insured** while acting within the scope of their duties, and
   (f)  with respect to the operation, for the purpose of locomotion upon a public highway, of **mobile equipment** registered under any motor vehicle registration law, any person while operating with the permission of the **insured** any such equipment registered in the name of the **insured** and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization; provided that no person or organization shall be an **insured** under this paragraph (f) with respect to:
      (1)  **bodily injury** to any fellow employee of such person injured in the course of his or her employment, or
      (2)  **property damage** to property owned by, rented to, in charge of or occupied by the **insured** or the employer of any person described in this paragraph above.

   Coverage does not apply to **bodily injury**, **property damage** or **personal injury** arising out of the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in this policy as an **insured**.

8. **"Insured premises"** means:
   (a)  the premises shown in the Declarations.
   Under Section II - Liability, **insured premises** also means:
   (b)  premises transferred to others by the **insured** (other than premises constructed for sale by the **insured**), if possession has been relinquished to others, and
   (c)  premises as to which the **insured** acquires ownership or control and reports his or her intention to insure under this policy within 30 days after acquisition; and includes the ways immediately adjoining such premises on land.

9. **"Medical expenses"** means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.

10. **"Mobile equipment"** means a land vehicle (including any attached machinery or apparatus), whether or not self-propelled:
    (a)  not subject to motor vehicle registration, or
    (b)  designed for use principally off public roads, or
    (c)  maintained for use exclusively on premises owned by or rented to the **insured**, including the ways immediately

2

adjoining.

11. **"Occurrence"**, under Section II, means an accident, including continuous or repeated exposure to conditions, which results, during a policy term, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**.

12. **"Property damage"** means physical injury to or destruction of tangible property, including loss of its use.

13. **"Rents"** mean the determined rents and rental value, less such charges and expenses that do not necessarily continue after an occurrence of the peril insured against.

14. **"Personal injury"** means **personal injury** sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the **insured's** business:
   (a) false arrest, detention or imprisonment, or malicious prosecution;
   (b) the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or for the **insured**;
   (c) wrongful entry or eviction, or other invasion of the right of private occupancy.

15. **"Completed operations hazard"** includes **bodily injury** and **property damage** arising out of operations or reliance upon a representation or warranty made with respect to operations. The **bodily injury** or **property damage** must occur after operations have been completed or abandoned and away from the **insured premises**. "Operations" include materials, parts or furnished equipment. Operations are completed the earliest of the following times:
   (a) when all operations to be performed by **you** or on **your** behalf under the contract have been completed,
   (b) when all operations to be performed by **you** or on **your**

behalf at the site of the operations have been completed, or
   (c) when the portion of the work causing the injury or damage has been put to its intended use by any person or organization excluding another contractor working as a part of the same project.

Operations requiring further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but are otherwise complete, are considered completed. **Completed operations hazard** does not include **bodily injury** or **property damage** arising out of (1) operations in connection with the transportation of property, unless arising out of a condition in or on a vehicle created by the loading or unloading, (2) the existence of tools, uninstalled equipment or abandoned or unused materials.

16. **"Insured's products"** means goods or products manufactured, sold, handled or distributed by the **insured** or by others trading under his or her name, including its container (other than a vehicle). "**Insured's products**" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

17. **"Products hazard"** includes **bodily injury** and **property damage** arising out of the **insured's products** or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs away from premises owned by or rented to the **insured** and after physical possession of such products has been relinquished to others.

18. **"Non-owned automobile"** means an **automobile** not owned in whole or in part by, registered in the name of, hired by, leased by or loaned to **you**.

19. **"Private passenger automobile"** means a 4-wheel private passenger or station wagon type **automobile**.

20. **"Named insured"** means the person or organization named in the policy Declarations.

## SECTION I - PROPERTY PROTECTION

### COVERAGE A - BUILDING(S)

**We** cover the buildings at the premises described in the policy Declarations for which a limit of liability is shown, including the following items while on the premises.

1. all attached additions and extensions;
2. all fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building;
3. materials and supplies intended for use in construction, alteration or repair of the buildings;
4. outdoor antennas located on the **insured premises** up to $200 for each occurrence;

### COVERAGE B - BUSINESS PERSONAL PROPERTY

**We** cover:
1. business personal property of the **insured** usual to the occupancy including bullion, manuscripts, furniture, fixtures, equipment and supplies, not otherwise covered under this policy;
2. similar property held by the **insured** and belonging in whole or in part to others but not exceeding the amount for which **you** are liable;
3. personal property of the **insured** as landlord used for the maintenance or service of the described buildings or **insured**

premises and including fire extinguishing apparatus;
4. floor coverings whether attached to the building or not, unattached refrigerating, ventilating, cooking, dishwashing and laundering equipment; shades and outdoor furniture (including other personal property in apartments or rooms furnished by the **insured** as landlord);

all while at the described locations in or on the covered buildings, or in the open (including within vehicles) on the **insured premises** or within 100 feet of the **insured premises**.

### COVERAGE C - RENTS

**We** cover loss of **rents** for the actual loss sustained including expenses necessarily incurred to resume normal operations caused by a covered peril to a building described in the Declarations. Coverage applies if all or part of a covered building is untenantable, whether rented at the time or not.

Coverage is limited by the following:
1. Loss is to be computed from the date of damage or destruction to the time the building is again in a tenantable condition, not to exceed 12 consecutive months. Coverage is not limited by the expiration of the policy. Coverage includes loss to areas occupied by the **insured**.
2. If access to the **insured premises** is prohibited by order of civil

authority because of a covered peril, **we** cover the actual loss incurred for a period not exceeding 2 weeks.

3. We do not cover any increase of loss caused by:
   (a) Local or state law or ordinance;
   (b) suspension, lapse or cancellation of any lease, license or contract;
   (c) Interference by strikers or persons with restoration; or
   (d) consequential or remote loss.

## ADDITIONAL COVERAGES-SECTION I

1. **Other Structures**

   **You** may apply up to 5% of the limit of liability of Coverage A-Buildings as an additional amount of insurance to cover:
   (a) Other Structures at the **insured premises** not attached to the building or connected by only a utility line, fence or similar connection.
   (b) Construction material at the **insured premises** for use in connection with the other structure.

   **We** do not cover loss to any structure not designed to service **your** covered building.

2. **Newly Acquired Property**
   (a) **You** may apply up to 50%, not to exceed $150,000, of the limit of liability specified for Coverage A-Building(s) for loss in any one occurrence by a covered peril to cover:
       (1) New additions, new buildings and new structures when constructed on the **insured premises** and intended for similar occupancy. This coverage shall cease 30 days from the date construction begins or on the date the values of new construction are reported to **us**, whichever occurs first.
       (2) Buildings acquired by the **insured** at any other location within the territorial limits of this policy and used by the **insured** for similar occupancies or warehouse purposes. This coverage shall cease 30 days from the date of such acquisition or on the date values of such acquisition are reported to **us**, whichever occurs first.

       Additional premiums are payable for values reported from the date construction begins or the property is acquired.
   (b) **You** may apply up to 50%, not to exceed $50,000 of the limit of liability specified for Coverage B-Business Personal Property for loss in any one occurrence by a covered peril to cover such property at any location newly acquired by the **insured**, elsewhere than at the **insured premises**. This coverage applies for 30 days from the date of acquisition or when the acquisition is reported to **us**, whichever occurs first.

       Additional premiums are payable for values reported from the date the property is acquired.

   Payments under this coverage are in addition to the amounts of insurance applying to Building Coverage and to Business Personal Property Coverage.

3. **Off-premises**

   **We** cover, as an additional amount of insurance, Coverage A Building Items and Coverage B-Business Personal Property while temporarily away from the **insured premises** but within the United States and Canada. Coverage applies for up to $15,000 for loss by a covered peril.

   **We** do not cover property in transit nor property on any other premises owned, leased, operated or controlled by the **insured**.

4. **Personal Effects**

   **You** may apply up to $500 of the limit of liability specified for

Coverage B-Business Personal Property for loss on the **insured premises** for any one occurrence by a covered peril to cover personal effects of the **insured**, officers, partners or their employees, subject to a limit of $100 for such property belonging to any one person. This coverage does not apply if the loss is covered by any other insurance, whether collectible or not, or which would have been covered by such other insurance in the absence of this policy.

Payments will not increase the amount of insurance applying to covered property.

5. **Valuable Papers and Records**

   **You** may apply up to $5,000 of the limit of liability specified for Coverage B-Business Personal Property for loss on the **insured premises** for any one occurrence by a covered peril for the cost of research and other expense incurred to reproduce, replace or restore books of account, abstracts, drawings, card index systems and other business records, including film, tape, wire or other recording media, all the property of the **insured**. Payments are in addition to the amount of insurance applying to Business Personal Property.

6. **Debris Removal**

   **We** cover reasonable expenses incurred in the removal of debris of covered property following a loss by a peril insured against. Payments will not increase the amount of insurance applying to the covered property. Cost of debris removal shall not be considered in the determination of replacement cost or of actual cash value when applying the Coinsurance Clause.

7. **Trees, Shrubs, Plants and Lawns**

   **We** will pay up to $5,000 of the limit of insurance under Building Coverage for loss to trees, shrubs, plants and lawns within 200 feet of a covered Building on the **insured premises**. Coverage applies to loss caused by the following perils **we** insure against: Fire or Lightning, Explosion, Riot or Civil Commotion, or Aircraft. Payments are in addition to the amount of insurance applying to Building Coverage. **We** will not pay for more than $500 on any one tree, shrub, or plant; including expense for debris removal.

8. **Extra Expense.**

   **We** will pay up to $5,000 to cover the extra expense incurred by the **insured** at the damaged locations in order to continue as nearly as practicable the normal operation of the **insured's** business following damage by a covered peril to the covered buildings or contents situated at the **insured premises**.
   "Extra expense" means the excess cost incurred during the period of restoration by the **insured** over and above normal business expenses caused by the covered loss. Any salvage value of property temporarily used during restoration and left after normal operations resume shall be considered in any loss adjustment.

   Coverage applies from the date of damage for a period which, with reasonable effort, the damaged property could be repaired or rebuilt. Payments are in addition to the amount of insurance applying to the loss.

   **We** do not cover:
   (a) loss of income;
   (b) cost of repairing or replacing property;
   (c) research or expense to replace books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell and other magnetic or electronic data processing); or
   (d) consequential or remote loss.

9. **Fire Extinguisher Recharge**
We cover, as an additional amount of insurance, expenses incurred to recharge a portable fire extinguisher when it has been used to combat a covered fire. No deductible applies to this coverage.

10. **Transportation**
We cover, as an additional amount of insurance, up to $15,000 for direct loss to business personal property and building items while in transit. The loss must result from direct loss by flood, earthquake, volcanic eruption, landslide or collision (except contact with the road bed), derailment, overturn or upset of a transporting conveyance.

11. **Elevator Collision**
We will pay up to 25%, not to exceed $50,000, of the limit of liability specified for Coverage A-Building(s) and Coverage B-Business Personal Property to cover loss or damage to elevators. Coverage includes loss or damage to any other property owned, occupied, used by or rented to the **insured** and at the option of the **insured**, property in his care, custody or control for business purposes and for which he is liable. The loss or damage must be caused by accidental collision of any part of an elevator or of anything carried on it, with another part of such elevator or another object.

Payments will not increase the amount of insurance applying to the loss.

This additional coverage shall not apply to loss or damage with, respect to which coverage may be afforded under Section II of this policy.

12. **Fire Department Charges**
We will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a peril **we** insure against. Payments are in addition to the amount of insurance applying to the loss. No deductible applies to this coverage.

13. **Emergency Removal of Property**
We will pay for covered property damaged in any way while being removed or while removed from a premises because of danger from a peril **we** insure against. Coverage is limited to a 5-day period from the date of removal. Payments will not increase the amount of insurance applying to the covered property.

14. **Accounts Receivable**
We will pay as an additional amount of insurance up to $50,000 for loss or damage caused by a covered peril to **your** records of accounts receivable which occurs during the policy period. Coverage applies only while records are on the **insured premises** or at a place of safety because of imminent danger from a covered peril. Coverage also applies while being moved to or from the place of safety.

We cover:
(a) all sums due **you** from tenants, provided **you** are unable to effect collection as the direct result of loss or damage to records of accounts receivable;
(b) interest charges on any loan to offset impaired collections pending repayment of sums made uncollectible by loss or damage;
(c) collection expense in excess of normal collection cost and made necessary because of such loss or damage;
(d) other expenses, **you** reasonably incur in re-establishing records of accounts receivable following such loss or damage.

**PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS**
We do not cover:
1. Animals and pets; aircraft; watercraft, including motors, equipment and accessories (except rowboats and canoes, while out of water and on the **insured premises**); and automobiles, trailers, semitrailers or any self-propelled vehicles or machines, except motorized equipment not licensed for use on public thoroughfares and operated principally on the **insured premises**.
2. Fences; outdoor swimming pools and related equipment; beach or diving platforms or appurtenances; retaining walls not constituting a part of building; walks, roadways, pavements and other paved surfaces; against loss caused by freezing or thawing, impact of watercraft, or by the pressure of weight of ice, snow, sleet, or water whether driven by wind or not and collapse.
3. The cost of excavations, grading or filling; foundations of buildings, machinery, boilers or engines which foundations are below the undersurface of the lowest basement floor, or where there is no basement, below the surface of the ground; pilings, piers, pipes, flues and drains which are underground; pilings which are below the low water mark.
4. Household and personal effects contained in living quarters occupied by the **insured**, any officer, director, stockholder or partner of the **insured** or relatives of any of the foregoing, except as provided in the Additional Coverages.
5. Trees, shrubs, plants and lawns, outdoor swimming pools including all pool service facilities, and exterior signs, except as provided in Additional Coverages.
6. Piers, bulkheads, wharves and docks unless covered by endorsement attached to this policy.
7. Property under Coverage B more specifically described and insured by this or any other insurance.

**DEDUCTIBLE**
We will pay for loss to covered property minus the deductible shown in the Declarations.

The deductible applies per occurrence.

Rents Coverage, Fire Department Charges and Fire Extinguisher Recharge are not subject to this deductible clause.

**PERILS WE INSURE AGAINST-SECTION I**
We cover direct loss to property insured under the Coverage A-Building(s) and Coverage B-Business Personal Property caused by:
1. **Fire or Lightning**
2. **Windstorm or Hail**
   This does not include loss:
   (a) caused directly or indirectly by frost, cold weather, ice, snow or sleet whether driven by wind or not;
   (b) to the interior of any building, or property within, caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters;
   (c) to the interior of any building or property within caused by water from sprinkler equipment or other piping, unless the equipment or piping is damaged directly from this peril.
3. **Explosion** including direct loss from the explosion of accumulated gases or unconsumed fuel within the fire box (or combustion chamber) of any fired vessel or within the flues or

passages which conduct the gases of combustion from the vessel.

The following are not considered explosion under this peril.
(a) electric arching;
(b) rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;
(c) water hammer;
(d) rupture or bursting of water pipes;
(e) rupture or bursting due to expansion or swelling of contents of any building or structure, caused by or resulting from water;
(f) rupture, bursting or operation of pressure or relief valves.

4. **Riot Attending a Strike and Civil Commotion,** including direct loss caused;
(a) by acts of striking employees of the owner or occupants of the **insured premises** while occupied by the striking employees;
(b) from pillage and looting occurring during and at the site of riot, strike or civil commotion.

**We** do not cover loss resulting from damage to or destruction of covered property because of change in temperature or humidity or interruption of operations whether or not loss is otherwise covered by some other peril.

5. **Vehicles or Aircraft**
Loss from actual physical contact of an aircraft, including self-propelled missiles or spacecraft, or a vehicle with the covered property hereunder or with the buildings containing the covered property. Loss by aircraft includes direct loss by objects falling from it.

**We** do not cover loss:
(a) by any vehicle owned or operated by **you** or by any occupant of the **insured premises;** or
(b) to any aircraft or vehicle or their contents.

6. **Smoke,** if the loss is sudden and accidental. This peril does not apply to loss caused by smoke from agricultural smudging or industrial operations.

7. **Vandalism or Malicious Mischief**
This peril means only the willful and malicious damage to or destruction of the covered property. **We** do not cover loss:
(a) to glass (other than glass building blocks) constituting a part of a building;
(b) by pilferage, theft, burglary or larceny, except for willful damage to the covered buildings caused by burglars; or
(c) if the covered buildings has been vacant or unoccupied more than 30 consecutive days immediately preceding the loss. A building in process of construction shall not be deemed vacant or unoccupied; or
(d) from depreciation, delay, deterioration or loss of market; nor for any loss resulting from change in temperature or humidity.

**EXCLUSIONS-SECTION I**
We do not cover loss:
(a) resulting directly or indirectly from any of the following events;
(b) which would not have occurred in the absence of any of the following events;
(c) which occurs regardless of the cause of any of the following events; or
(d) if loss occurs concurrently or in any sequence with any of the events.

1. Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability is otherwise specifically assumed by endorsement;

2. Electrical currents artificially generated unless loss by fire or explosion as insured against ensues, and then we shall be liable for only such ensuing loss;

3. Power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the covered property is located caused by a covered peril. **We** shall not be liable under this clause for any loss resulting from riot, riot attending a strike, civil commotion, or vandalism or malicious mischief;

4. Earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, earth rising or shifting;

5. Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

6. Water which backs up through sewers or drains;

7. Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

8. Explosion of steam boilers, steam pipes, steam turbines or steam engines (except direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox, or combustion chamber, or any fired vessel or within the flues or passages which remove the gases of combustion) if owned by, leased by or operated under the control of the **insured**; unless loss by fire or explosion not otherwise excluded ensues, and then we shall be liable for only such ensuing loss;

9. Due to any delay or loss of market.
**We** do not cover loss from any of the following:
(a) any action, lack of action or decision of any person, group, organization or governmental body, conduct of any of these, regardless if negligent, wrongful, intentional or without fault;
(b) detect, inadequacy, fault, unsoundness or weakness in:
(1) material used for construction or repair;
(2) site preparation including planning, zoning, surveying, grading, compaction and placement;
(3) workmanship, design or engineering specifications; or
(4) maintenance;
of land, structures, improvements and similar property on or off of the **insured premises.**

**We** do not cover losses excluded in PERILS INSURED AGAINST or in EXCLUSIONS:
(1) regardless of whether any of the items of (a) and (b) above occurred simultaneously with, before or after the loss; or
(2) if any item of (a) and (b) above directly or indirectly caused, contributed to or aggravated the loss.

**We** do cover ensuing loss of items (a) and (b) if the ensuing loss is specifically covered by this policy.

**CONDITIONS-SECTION I**
1. **What To Do In Case Of Loss**
If a covered loss occurs, the **insured** must:

(a)  give **us** immediate written notice. In case of theft, also
notify the police.
(b)  protect the property from further damage, making
necessary and reasonable repairs to protect the property,
and keeping records of the cost of repairs;
(c)  make a list of all damaged or destroyed property, showing
in detail quantities, costs, actual cash value and amount of
loss claimed:
(d)  send to **us**, within 60 days after loss, a proof of loss
signed and sworn by the **insured**, including:
  (1)  the time and cause of loss;
  (2)  the interest of **insureds** and all others in the
property;
  (3)  actual cash value and amount of loss to the property;
  (4)  all encumbrances on the property;
  (5)  other policies covering the loss;
  (6)  changes in title, use, occupancy or possession of the
property;
  (7)  if required, any plans and specifications of any
damaged building or fixtures;
(e)  exhibit the damaged property to **us** or **our** representative,
as often as may be reasonably required;
(f)  submit to examinations under oath by any person named
by **us** and sign the transcript of the examinations;
(g)  provide **us** with records and documents requested and
permit **us** to make copies;
(h)  produce receipts for any increased cost incurred to
continue **your** normal business operation.

2.  **How Losses Are Settled**
(a)  Valuation of property is established as follows:
  (1)  Property of others at the amount for which the
**insured** is liable but not to exceed the actual cash
value. Actual cash value includes deduction for
depreciation.
  (2)  Books of account, manuscripts, abstracts, drawings,
card index systems and other records (except film,
tape, disc, drum, cell and other magnetic recording
or storage media for electronic data processing) for
not exceeding the cost of blank books, cards or other
blank material.
  (3)  Film, tape, disc, drum, cell and other magnetic
recording or storage media for electronic data
processing for not exceeding the cost of such media
in unexposed or blank form.
  (4)  All other property at actual cash value. Actual cash
value includes deduction for depreciation.
(b)  Replacement Cost: Coverage A-Building(s) When the full
cost of repair or replacement is less than $1,000, this
policy is extended to include the full cost of repair or
replacement (without deduction for depreciation).
  (1)  Coverage applies only to a covered building
structure.
  (2)  **We** shall not be liable under this provision for any
loss unless and until the damaged property is
actually repaired or replaced on the same premises
and, in no event, unless repair or replacement is
completed within a reasonable time after such loss.
  (3)  **We** shall not be liable under this provision for any
loss unless the whole amount of insurance
applicable to the building structure for which claim
is made is equal to or in excess of the amount

produced by multiplying the coinsurance percentage
(shown on the policy Declarations) by the actual
cash value of such property at the time of loss.
(c)  **We** may make a cash settlement and take all or part of the
damaged property at its appraised or agreed on value, or
repair or replace the damaged property with property of
like kind and quality. **We** must give **you** notice of **our**
intention within 30 days after **we** receive **your** proof of
loss.
(d)  **(Missouri Only)**
In the event of partial damage to insured property caused
by the peril of fire, **we** will, at **your** option, pay **you** up to
the limit of liability that applies to the property, the repair
cost of the damage or repair the damage so that the
property will be in as good condition as before the fire.

3.  **Coinsurance Clause**
**We** shall not be liable for a greater proportion of any loss to the
covered property than **our** limit of liability under this policy
bears to the amount produced by multiplying the coinsurance
percentage (shown on the policy Declarations) times the actual
cash value of such property at the time of the loss. If the
aggregate claim for any loss is both less than $10,000 and less
than 5% of the limit of liability for all contributing insurance
applicable to the property involved at the time such loss occurs,
no special inventory and appraisement of the undamaged
property shall be required.
If insurance under Section I of this policy is divided into
separate limits of liability, this provision shall apply separately
to the property covered under each such limit of liability.
This clause does not apply to any Additional Coverages.

4.  **Appraisal**
If **you** and **we** fail to agree on the actual cash value or amount
of loss, either party may make written demand for an appraisal.
Each party will select an appraiser and notify the other of the
appraiser's identity within 20 days after the demand is
received. The appraisers will select a competent and impartial
umpire. If the appraisers are unable to agree upon an umpire
within 15 days, **you** or **we** can ask a judge of a court of record
in the state where the **insured premises** is located to select an
umpire.
The appraisers shall then appraise the loss, stating separately
the actual cash value and loss to each item. If the appraisers
submit a written report of an agreement to **us**, the amount
agreed upon shall be the actual cash value or amount of loss. If
they cannot agree, they will submit their differences to the
umpire. A written agreement by any two will determine the
actual cash value or amount of loss.
Each party will pay the appraiser it chooses, and equally pay
expenses for the umpire and all other expenses of the appraisal.

5.  **Insurable Interest**
**We** will not pay more than the insurable interest an **insured**
has in the covered property at the time of loss.

6.  **Abandoned Property**
**We** are not obligated to accept abandoned property.

7.  **Our Payment of Loss**
**We** will adjust any loss with **you**, and pay **you** unless another
payee is named in the policy. **We** will pay within 30 days after
**we** receive **your** proof of loss and the amount of loss is finally
determined by agreement between **you** and **us**, a court
judgment or an appraisal agreement.

8.  **Suit Against Us**

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year (in Kansas 5 years) after the loss or damage occurs. However, this period is extended by the number of days between the date proof of loss is submitted and the date the claim is denied in whole or in part.

9.  **Valued Policy (Nebraska Only)**
    When this policy is written to insure any real property in this state against loss by fire, tornado, windstorm, lightning or explosion and the property insured shall be wholly destroyed, without criminal fault on the part of the **insured** or the **insured's** assignee, the amount of insurance written on such real property shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages.

10. **Permission is Granted to You:**
    (a)  to make alterations and repairs;
    (b)  for unoccupancy as is usual or incidental to the described occupancy,
    (c)  to make reasonable repairs, temporary or permanent, after a loss occurs, provided such repairs are confined solely to the protection of the property from further damage. The **insured** shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any covered peril shall be included in determining the amount of loss.

11. **Vacancy**
    Under Coverage A-Buildings, coverage to any building shall be reduced by 15% after a period of 60 continuous days of vacancy. Buildings under construction are not considered vacant.

12. **Loss Clause**
    Any loss hereunder shall not reduce the amount of this policy.

13. **Mortgage Clause**
    This clause is applicable to buildings only, but the entire clause is void unless the name of the mortgagees (or trustees) is inserted in the policy Declarations: Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear under all present or future mortgages upon the covered property in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages. This insurance as to the interest of the mortgagee (or trustee) listed, shall not be invalidated by any act or neglect of the mortgagor or owner of the covered property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in the case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagee (or trustee) shall notify **us** of any change of ownership or occupancy or

increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. **We** reserve the right to cancel the policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and **we** shall have the right, on like notice to cancel this agreement.

Whenever **we** pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed **we** shall to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claims.

14. **Protective Safeguards**
    The **insured** agrees to maintain, if within his or her control, any protective safeguards endorsed to this policy.
    Failure to maintain them will suspend this insurance, with respects to the location or situation affected, for the time of such discontinuance.

15. **Impairment of Recovery**
    Except as noted below, **we** shall not be bound to pay any loss if the **insured** has impaired any right of recovery for loss to the property insured; however, it is agreed that:
    (a)  as respects to property while on the **insured premises**, permission is given the **insured** to release others in writing from liability for loss prior to loss, and such release shall not affect the right of the **insured** to recover hereunder, and
    (b)  as respects property in transit, the **insured** may, without prejudice to this insurance, accept such bills of lading, receipts or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of such goods or merchandise.

16. **No Benefit to Bailee**
    This insurance shall not inure directly or indirectly to the benefit or any carrier or other bailee for hire.

17. **Loss Payable Clause**
    Loss, if any, to be adjusted only with the **insured** named on the Declarations and payable to the **insured** and the loss payee named on the policy Declarations as their respective interests may appear, subject to all the terms and conditions of the policy.

## SECTION II-LIABILITY

**COVERAGE E-BODILY INJURY, PROPERTY DAMAGE AND PERSONAL INJURY LIABILITY**
We will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of:
1.  **Bodily Injury** or **Property Damage** covered by this policy,

caused by an **occurrence** and arising out of the ownership, maintenance or use of the **insured premises** and all necessary or incidental operations.
2.  **Personal Injury** sustained by any person or organization and arising out of ownership, maintenance or use of the **insured**

**premises** and all necessary or incidental operations.
**We** shall have the right and duty to defend any suit against the **insured** even if any of the allegations of the suit are groundless, false or fraudulent. **We** may make such investigation and settlement of any claim or suit as **we** deem expedient, but **we** are not obligated to pay any claim or judgment or to defend any suit after **our** limit of liability has been exhausted by payment of judgments or settlements.

**COVERAGE F-PREMISES MEDICAL PAYMENTS**
**We** will pay all reasonable **medical expense** for each person who sustains **bodily injury** caused by accident and incurred within 3 years from the date of the accident. Coverage is provided when such **bodily injury** arises out of:

1. a condition in the **insured premises**; or
2. operations for which **you** are provided coverage for bodily injury liability under this policy.

**SECTION II-ADDITIONAL COVERAGES**
**We** will pay, in addition to **our** limit of liability:

1. **Property Damage Legal Liability**
   **We** will pay on behalf of the **insured** all sums the **insured** shall become legally obligated to pay for **property damage** to structures, including fixtures permanently attached to it, while rented to or occupied by the **insured**. The **property damage** must be caused by fire, explosion or water and covered under Section I of this policy. **Our** liability for loss to any one **occurrence** shall not exceed the limit of liability shown on the policy Declarations for Property Damage Liability.
   This coverage does not apply to loss or damage caused by water to electronic data processing equipment including component parts.

2. **Employers Non-Ownership Automobile Liability Insurance**
   **We** will pay on behalf of the **insured** all sums the **insured** shall become legally obligated to pay as damages for **bodily injury** or **property damage** arising out, of the use by any person, other than a **named insured**, of a **non-owned automobile** in **your** business. For this coverage **named insured** includes **your** partner or executive officer. **We** do not cover any **automobile** owned by any partner or executive officer or owned by a member of either person's household
   This coverage does not apply to:
   (a) liability, assumed by the **insured** under any contract or agreement;
   (b) any obligation for which the **insured** or any carrier as his or her insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;
   (c) **bodily injury** to any employee of the **insured** arising out of and in the course of his or her employment by the **insured** or to any obligations of the **insured** to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the **insured** unless benefits therefor are in whole or in part either payable or required to be provided under any workers' compensation law;
   (d) **property damage** to (1) property owned or being transported by the **insured** or (2) property rented to or in the care, custody and control of the **insured**, or as to which the **insured** is for any purpose exercising physical control, other than **property damage** to a residence or a private garage by a **private passenger automobile** covered by this insurance;

(e) **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;
(f) liability of the **insured** for punitive damages.

3. **The following Expenses**
   (a) All costs **we** incur in the settlement of any claim or defense of any suit.
   (b) Interest on the entire amount of damages awarded in any suit **we** defend accruing after judgment is entered and before **we** have paid, offered to pay, or deposited in court that portion of the judgment which is not more than **our** limit of liability.
   (c) Premiums on bonds required in any suit **we** defend. But, **we** will not pay the premium for any portion of a bond amount that is greater than **our** limit of liability. **We** have no obligation to apply for or furnish bonds.
   (d) Loss of earnings up to $50 a day, but not other income, when **we** ask **you** to help **us** investigate or defend any claim or suit.
   (e) Any other reasonable expense incurred at **our** request.
   (f) Cost of bail bonds up to $250 required because of an accident or traffic law violation arising out of the use of any land motor vehicle to which this policy applies but **we** are not obligated to apply for or furnish such bonds.
   (g) First Aid Expenses for immediate medical and surgical treatment for other persons at the time of the accident. **We** will pay only expenses which an **insured** incurs for treatment of **bodily injury** covered by this policy.

**SECTION II-EXCLUSIONS**
Under Bodily Injury, Property Damage Liability and Premises Medical Payments **we** do not cover:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:
   (a) any **automobile** or aircraft owned or operated by or rented or loaned to any **insured**; or
   (b) any other **automobile** or aircraft operated by persons in the course of their employment by any **insured**.
   This exclusion does not apply to:
   (a) the parking of an **automobile** on the **insured premises**, if such **automobile** is not owned by or rented or loaned to any **insured**; or
   (b) a **non-owned automobile** used in the business of the **named insured** while used by any person other than the **named insured**.

2. **bodily injury** or **property damage** arising out of:
   (a) the ownership, maintenance, operation, use, loading or unloading of any **mobile equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity; or
   (b) the operation or use of any snowmobile or trailer designed for use with it.

3. **bodily injury** or **property damage** arising out of and in the course of the transportation of **mobile equipment** by an **automobile** owned or operated or rented or loaned to any

**insured**.

4. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of;
   (a) any watercraft owned or operated by or rented or loaned to any **insured**; or
   (b) any other watercraft operated by persons in the course of their employment by any **insured**;
   but this exclusion does not apply to watercraft while ashore on the **insured premises**.

5. **bodily injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to:
   (a) liability assumed by the **insured** under an **incidental contract**; or
   (b) First Aid Expenses under Section II - Additional Coverages.

6. **bodily injury** or **property damage** for which the **insured** or his or her indemnitee may be held liable
   (a) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or
   (b) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:
      (1) by or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage; or
      (2) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
      but part (2) of this exclusion does not apply with respect to liability of the insured or his or her indemnitee as an owner or lessor described in (b) above.
   This entire exclusion does not apply to liability imposed on the **insured** as the result of giving or serving of alcoholic beverages at functions incidental to the **insured's** business. The **insured** cannot be engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages and there can be no intentional violation of any statute, regulation, or ordinance committed by or at the direction of the **insured**.

7. any obligation for which the **insured** or any carrier as his or her insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law.

8. **bodily injury** or **property damage** with respect to nuclear action meaning nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these.

Under Bodily Injury and Property Damage Liability, **we** do not cover:

1. liability assumed by the **insured** under any contract or agreement except an **incidental contract**.

2. **bodily injury** to employees of the **insured** arising out of and in the course of their employment by the **insured** or to any obligation of the **insured** to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the **insured** under an **incidental contract**.

3. **property damage** to:

   (a) property owned or occupied by or rented to the **insured**.
   (b) property used by the **insured**, unless liability is assumed under a sidetrack agreement, or
   (c) property in the care, custody or control of the **insured** or which the **insured** is for any purpose exercising physical control, other than **property damage** to a residence or private garage caused by a covered **private passenger automobile**.
   This exclusion does not apply with respect to liability under a written sidetrack agreement or to **property damage** (other than to **elevators**) arising out of the use of an **elevator** at the **insured premises**.

4. **property damage** to premises transferred to others by the **insured** arising out of such premises or any part of such premises.
   This exclusion does not apply to **property damage** covered under Additional Coverage-Property Damage Legal Liability.

5. **bodily injury** or **property damage** arising out of operations on or from premises (other than the **insured premises**) owned by, rented to or controlled by the **insured**, or to liability assumed by the **insured** under any contract or agreement relating to such premises.

6. **bodily injury** or **property damage** arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste materials or other irritants, contaminants into or upon land, the atmosphere, or any water course or body of water. This exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

7. **bodily injury** or **property damage** arising out of a **non-owned automobile** used in conduct of any partnership or joint venture of which **you** are a partner or a member and is not designated as an **insured** in this policy.

Under Personal Injury Liability, **we** do not cover:

1. **personal injury** arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any **insured**.

2. **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the **insured**.

3. **personal injury** arising out of any publication or utterance if the first injurious publication or utterance of the same or similar material by or on behalf of the **insured** was made prior to the effective date of this policy.

4. **personal injury** arising out of a publication or utterance concerning any organization or business enterprise, or its products or services, made by or at the direction of any **insured** who has knowledge of such falsity.

Under Premises Medical Payments, **we** do not cover:

1. **bodily injury** arising out of operations performed for the **insured** by independent contractors other than:
   (a) maintenance and repair of the **insured premises**; or
   (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures.

2. **bodily injury** to the **insured**, partners of the **insured**, tenants or other persons regularly residing on the **insured premises** or employees of any of the foregoing if the **bodily injury** arises out of and in the course of their employment.

3. **bodily injury** to any other tenant if the **bodily injury** occurs on that part of the **insured premises** rented from the insured or

to employees of such tenant if the **bodily injury** occurs on the tenant's part of the **insured premises** and arises out of and in the course of their employment for the tenant.

4. **bodily injury** to any person while engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises.

5. **bodily injury** to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest.

6. **bodily injury** included within the **completed operations hazard** or the **products hazard**.

7. **medical expenses** for services by the **insured**, any employee of the **insured** or any person or organization under contract to the **insured** to provide such services.

**CONDITIONS–SECTION II**

1. **WHAT TO DO IN CASE OF BODILY INJURY, PROPERTY DAMAGE OR PERSONAL INJURY**
   In the event of **bodily injury**, **property damage** or **personal injury** the **insured** must:
   (a) notify **us** or **our** agent as soon as possible. The notice must give:
      (1) **your** name and policy number;
      (2) the time, place and circumstances of the accident, **occurrence** or loss;
      (3) the names and addresses of injured persons and witnesses;
   (b) send **us** promptly any legal papers received relating to any claim or suit;
   (c) cooperate with **us** and assist **us** in any matter relating to a claim or suit;
   The **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur expenses other than for First Aid Expenses at the time of accident.

2. **DUTIES OF AN INJURED PERSON - MEDICAL PAYMENTS**
   The injured person or someone acting on behalf of the injured person will:
   (a) give **us**, as soon as possible, written proof of claim under oath if required;
   (b) authorize **us** to obtain medical and other records.
   The injured person shall submit to physical examinations at **our** expense by doctors **we** select as often as **we** may

reasonably require;
**We** may pay the injured person or any person or organization rendering the services and this payment will reduce the amount payable. This payment is not an admission of **our** liability of any person.

3. **LIMITS OF LIABILITY**. Regardless of the number of **insureds**, injured persons, claims made, suits brought, or locations shown, **our** liability is limited as follows:
   (a) As respects Bodily Injury, Property Damage or Personal Injury, the limit of liability stated in the Declarations is the total limit of **our** liability for all damages resulting from any one **occurrence**.
   (b) As respects Medical Payments, the limit of liability stated in the Declarations as applicable to "each person" is **our** limit of liability for all medical expenses for **bodily injury** to any one person as the result of any one accident.
   **Our** liability for two or more persons shall not exceed the limit of liability for "each accident" stated in the Declarations.

4. **SEVERABILITY OF INSURANCE**. This insurance applies separately to each **insured** against whom claim is made or suit is brought, subject to **our** limits of liability for each **occurrence**.

5. **SUIT AGAINST US**. **We** may not be sued unless there is full compliance with all the terms of this policy.
   **We** may not be sued under Coverage E until the obligation of an **insured** to pay is finally determined either by judgment against the person after actual trial or by written agreement of the person, claimant and **us**.
   No one shall have any right to make **us** a party to a suit to determine the liability of an **insured**.

6. **BANKRUPTCY**. **We** are not relieved by any obligation under this policy because of the bankruptcy or insolvency of any **insured**.

7. **NOTICE TO US**. Any notice by or on behalf of the **insured** to **our** authorized agent within this state, with particulars sufficient to identify the **insured**, shall be notice to **us**.

8. **FINANCIAL RESPONSIBILITY LAWS**: When certified as proof of financial responsibility for the future under any motor vehicle financial responsibility law, and while required during the policy period, this policy shall comply with such law but not in excess of the policy limits of liability.
   The **insured** agrees to repay **us** for any payment **we** would not have had to make except for this agreement.

**GENERAL POLICY CONDITIONS APPLYING TO SECTION I AND SECTION II**

1. **ASSIGNMENT**. Interest in this policy may not be transferred without **our** written consent.
   If an **insured** dies, **we** will cover:
   (a) the legal representative of the **insured** while acting for the **insured**,
   (b) any person having proper temporary custody of the property until a qualified legal representative has been appointed.

2. **CANCELLATION**
   **YOUR RIGHT TO CANCEL**
   **You** may cancel this policy by returning it to **us** or by advising **us** in writing when at a future date the cancellation is to be effective.
   **Our Right to Cancel or Refuse to Renew**
   (a) **Cancellation for nonpayment of premium**. This policy

may be cancelled by **us** at any time during the policy period for failure to pay any premium when due whether such premium is payable directly to **us** or **our** agent by mailing to **you**, at **your** address last known to **us**, written notice stating when, not less than 10 days, thereafter, such cancellation shall be effective.
   (b) **Cancellation of policies for other than non-payment**. **We** may cancel at any time during the policy period by mailing to **you**, at **your** address last known to **us**, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective:
   (c) **Nonrenewal, reduction in amount, or adverse modification of this policy**.
   If **we** elect not to renew, reduce the amount, or adversely modify this policy, **we** shall mail to **you**, at **your** address

last known to **us**, written notice of such action not less than 30 days prior to the expiration date; provided that, notwithstanding **our** failure to comply with the foregoing provisions of this paragraph, this policy shall terminate automatically on such expiration date, if **you** have failed to pay the premium for this policy or any installment thereof, whether payable directly to **us** or **our** agent. A copy of the notice will be sent to the last known mortgagee or lienholder named in the policy at the last address known to **us**.

**RETURN OF PREMIUM**

If **you** cancel **your** policy, **we** will return no more than the short rate unused share of **your** premium.
If **we** cancel **your** policy, **we** will return no more than the prorated unused share of **your** premium.

3. **CONCEALMENT OR FRAUD.** This entire policy is void as to all **insureds** if any **insured** has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

4. **CHANGES.** This policy and the Declarations include all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary **we** will make the adjustment as of the effective date of the change. If any coverage **you** have under this policy is broadened without charge during the policy period, this policy will automatically provide the broadened coverage when effective in **your** state.

5. **OUR RIGHT TO RECOVER PAYMENT.** After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. This right will not apply under Section I if **you** have waived it in writing prior to loss. The **insured** will do whatever is required to transfer this right to **us**.

6. **POLICY PERIOD.** This policy applies to losses, **bodily injury**, **property damage** or **personal injury** which occur during the policy period.

7. **OTHER INSURANCE.** If both this and other insurance apply to a loss, **we** will pay **our** share will be the appropriate amount that this insurance bears to the total amount of all applicable insurance.
Liability coverage applicable to **non-owned automobile** shall be excess over any other valid and collectible insurance.

8. **INSPECTION AND AUDIT.** **We** shall be permitted but not obligated to inspect the covered property and operations at any time. **Our** inspections do not warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.
**We** may examine and audit the **insured's** books and records at any time during any policy period and within three years after termination of this policy as they relate to this insurance.

9. **CONFORMITY TO STATE STATUTE.** The terms of this policy which are in conflict with state statutes are amended to conform to such statues.

10. **TIME OF INCEPTION.** (Except Iowa). To the extent that coverage in this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy, this policy shall be effective at 12:01 A.M. (Standard Time) instead of at Noon Standard Time.

11. **EFFECT OF POLICY ACCEPTANCE.** By acceptance of this policy **you** agree that the statements in the Declarations

and in any Application or Application for Change accepted by **us**, are offered as an inducement to **us** to issue, continue, or renew this policy, and are **your** agreements or representations. They are not warranties.

12. **CONTINUOUS RENEWAL (Except Illinois and Oklahoma).** Subject to **our** consent, and subject to the premiums, rules and forms then in effect for **us**, this policy may be continued in force by payment of the required continuation premium for each successive policy term. Such continuation premium must be paid to **us** prior to the expiration of the then current policy term and if not paid the policy shall terminate. With respect to a mortgagee (or trustee) declared under this policy, this insurance will continue in force as to only the interest of the mortgagee (or trustee) for ten (10) days after written notice of termination to the mortgagee (or trustee), and shall then terminate.

**CONTINUOUS RENEWAL. (Illinois only).** Subject to the premiums, rules and forms then in effect for **us**, this policy may be continued in force by payment of the required continuation premium for each successive policy term. Such continuation premium must be paid to **us** prior to the expiration of the then current policy term and if not paid the policy shall terminate. With respect to a mortgagee (or trustee) declared under this policy, this insurance will continue in force as to only the interest of the mortgagee (or trustee) for ten (10) days after written notice of termination of the mortgagee (or trustee), and shall then terminate.

**CONTINUOUS RENEWAL (Oklahoma only).** Subject to **our** consent, and subject to the premiums, rules and forms then in effect for **us**, this policy may be continued in force by payment of the required continuation premium for each successive policy term, but this policy shall not be continued for longer than a total policy period of five years. Such continuation premium must be paid to **us** prior to the expiration of the then current policy term and if not paid the policy shall terminate.

With respect to a mortgagee (or trustee) declared under this policy, this insurance will continue in force as to only the interest of the mortgagee (or trustee) for ten (10) days after written notice of termination to the mortgagee (or trustee), and shall then terminate.

13. **MUTUAL POLICY CONDITIONS.** This policy is issued by a mutual Company having special regulations lawfully applicable to its organization, membership, policies, or contracts of insurance, of which the following shall apply to and form a part of this policy:

**You** are hereby notified that by virtue of this policy **you** are a member of this mutual insurance Company of Columbia, Missouri, and are entitled to vote either in person or by proxy at any and all meetings of said Company. The annual meeting of said Company is held at its Home Office in Columbia, Missouri, on the first Wednesday in April of each year at 10 o'clock A.M.

All of **your** interest in the Company, its good will, assets, and guaranty fund, shall cease upon termination of this policy, except any claims that **you** may then have under this policy and except for any unearned portion of **your** deposit premium.

This policy is nonassessable. **You** are a member of the

Case No. 1:19-cv-03526-RMR-NRN   Document 55-1   filed 12/31/20   USDC Colorado   pg 17
of 40
Case 1:19-cv-03526-WJM-NYW   Document 28-2   Filed 04/23/20   USDC Colorado   Page 5 of 13

Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors of

the Company in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

IN WITNESS WHEREOF, the Company named in the Declarations has caused this policy to be signed by its Chief Executive Officer and its Secretary, and countersigned on the Declarations page by a duly authorized representative of the Company.

*Secretary*

*President and CEO*

B-249.2-B

## SPECIAL FORM COVERAGE
## B-250.2-B
### (Applicable When Shown on the Policy Declarations)

When Special Form Coverage is shown on the Policy Declarations, **PERILS WE INSURE AGAINST**; **EXCLUSIONS**; and **CONDITIONS** 2. and 3., **How Losses are Settled and Coinsurance Clause**, of Section I of the Policy are deleted and replaced by the following:

### PERILS WE INSURE AGAINST
We cover accidental direct physical loss to property covered under Coverage A - Buildings and Coverage B -Business Personal Property except for losses excluded in this section.

### EXCLUSIONS
We do not cover loss:
  (a)  resulting directly or indirectly from any of the following events;
  (b)  which would not have occurred in the absence of any of the following events;
  (c)  which occurs regardless of the cause of any of the following events; or
  (d)  if loss occurs concurrently or in any sequence with any of the events.

1.  Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures unless such liability is otherwise specifically assumed by endorsement;

2.  Electrical currents artificially generated unless loss by fire or explosion as insured against ensues, and then **we** shall be liable for only such ensuing loss;

3.  Power, heating or cooling failure, unless such failure results from physical damage to power, heating or cooling equipment situated on premises where the covered property is located caused by a peril not otherwise excluded. **We** shall not be liable under this clause for any loss resulting from riot, riot attending a strike, civil commotion, or vandalism or malicious mischief;

4.  Earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, earth rising or shifting;

5.  Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

6.  Water which backs up through sewers or drains;

7.  Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

Ensuing loss by fire or explosion under items 4 thru 7 is covered if

not otherwise excluded by this policy.

8.  Wear and tear, deterioration, rust or corrosion, mold, wet or dry rot; inherent or latent defect; smog, smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; animals, birds, vermin, termites or other insects; unless loss by a peril not otherwise excluded ensues and then **we** shall be liable for only such ensuing loss.

9.  Delay, loss of market, interruption of business, or consequential loss of any nature.

10.  Vandalism, malicious mischief, theft or attempted theft, if the described building has been vacant or unoccupied beyond a period of 30 consecutive days immediately preceding the loss, unless loss by a peril not excluded in this policy ensues, and then **we** shall be liable for only such ensuing loss.

11.  Leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the **insured** has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy.

12.  Continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks, months or years.

13.  Explosion of steam boilers, steam pipes, steam turbines or steam engines (except direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox, or combustion chamber, or any fired vessel or within the flues or passages which remove the gases of combustion) if owned by, leased by or operated under the control of the **insured**, or for, any ensuing loss except by fire or explosion not otherwise excluded in this policy, and then **we** shall be liable for only such ensuing loss.

14.  Unexplained or mysterious disappearance of any property, or shortage as disclosed on taking inventory, or caused by any willful or dishonest act or omission of the **insured** or any associate, employee or agent of any **insured**.

B-250.2-B           13

15. Inherent defect, failure, breakdown or derange-ment of machines or machinery; faulty materials or workmanship; unless loss by fire or explosion not otherwise excluded ensues, and then **we** shall be liable for only such ensuing loss.

16. Voluntary parting with title or possession of any property by the **insured** or others to whom the property may be entrusted (except by carriers for hire) if induced to do so by any fraudulent scheme, trick, device or false pretense.

17. Any fraudulent, dishonest or criminal act done by or at the instigation of any **insured**, partner or joint adventurer in or of any **insured**, an officer, director or trustee of any **insured**, pilferage, appropriation or concealment of any property covered due to any fraudulent, dishonest or criminal act of any employee while working or otherwise, or agent of any **insured**, or any person to whom the property covered may be entrusted, other than any carrier for hire.

18. Rain, snow, sleet or cold weather to property in the open (other than property in the custody of carriers for hire).

19. Any legal proceeding.

20. War (declared or undeclared), civil war, insurrection, rebellion or revolution.

21. Nuclear action, meaning nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these. Loss caused by nuclear action is not considered loss by perils of Fire, Explosion or Smoke.

Direct loss by Fire resulting from nuclear action is covered.

22. Property shipped by mail after in the custody of the Post Office Department.

23. Theft from an unattended vehicle unless the covered property is contained within a fully enclosed, locked compartment and the theft results from forcible entry evidenced by visible marks to the compartment.

24. Actual work to or installation of covered property, latent detect, failure, break down or derangement of machines or machinery, faulty materials or workmanship. **We** do not cover an ensuing fire or explosion if not otherwise excluded.

**We** do not cover loss from any of the following:

(a) any action, lack of action or decision of any person, group, organization or governmental body, conduct of any of these, regardless if negligent, wrongful, intentional or without fault;

(b) defect, inadequacy, fault, unsoundness or weakness in:
   (1) material used for construction or repair;
   (2) site preparation including planning, zoning, surveying, grading, compaction and placement;
   (3) workmanship, design or engineering specifications; or
   (4) maintenance;
   of land, structures, improvements and similar property on or off of the **insured premises**.

**We** do not cover losses excluded in PERILS INSURED AGAINST or in EXCLUSIONS:

(1) regardless of whether any of the items of (a) and (b) above occurred simultaneously with, before or after the loss; or

(2) if any item of (a) and (b) above directly or indirectly caused, contributed to or aggravated the loss.

**We** do cover ensuing loss of items (a) and (b) if the ensuing loss is specifically covered by this policy.

**CONDITIONS**

2. **How Losses Are Settled.**

(a) Valuation of property is established as follows:

(1) Property of others at the amount for which the **insured** is liable but not to exceed the actual cash value. Actual cash value includes deduction for depreciation.

(2) Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, cards or other blank material.

(3) Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form.

(4) All other property at actual cash value. Actual cash value includes deduction for depreciation.

(b) Replacement Cost: Coverage A-Building(s)

(1) If, at the time of loss, the amount of insurance for the building and items covered under Coverage A-Building(s) in this policy is 80% or more of the full replacement cost, **we** will pay the full cost to repair or replace the damaged part of the building or item, without deduction for depreciation.
   In determining full replacement cost, do not include the cost of excavation, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no basement, do not include the cost of those supports below the surface of the ground and inside the foundations walls.

(2) If, at the time of loss, the amount of insurance for the building or items in this policy is less than 80% of the full replacement cost, **we** will pay the larger of the following amounts:
   (a) the actual cash value of the damaged part of the building or items; or
   (b) the full cost to repair or replace the damaged property multiplied by the ratio of the amount of insurance on the building or items to 80% of its full replacement cost.

(3) But, **we** will pay under (1) or (2), no more than the smallest of the following:
   (a) the limit of liability in this policy for the building or items;
   (b) the cost to replace the damaged building or items with equivalent construction for equivalent use on the same premises; or
   (c) the amount actually spent for necessary repair or replacement of the damaged building or items.

(4) The replacement cost of any single item of property (other than buildings) is limited to the amount it would cost to replace the item identical to the one damaged or destroyed. When an identical item is no longer available, replacement cost is limited to the cost of a new item similar to that damaged or

destroyed and of like kind and quality.

(5) If the full cost to repair or replace the damaged property is more than $1,000 or 5% of the insurance for the building or items in this policy, **we** will not be liable for full replacement cost until actual repair or replacement is completed.

(6) If the full cost to repair or replace the damaged property is both less than $1,000 and less than 5% of the amount of insurance applying to the property, **we** will pay the full cost to repair or replace the damaged property without deduction for depreciation.

(7) If **you** elect not to repair or replace the damaged property, **you** may disregard these replacement cost provisions and loss settlement will be for actual cash value. If **you** do, **you** have the right to make further claim for replacement cost within 180 days after the loss for any additional cost **you** incur in replacing the damaged property.

(c) **We** may make a cash settlement and take all or part of the damaged property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** proof of loss.

(d) **(Missouri Only)**

In the event of partial damage to insured property caused by the peril of fire, **we** will, at **your** option, pay **you** up to the limit of liability that applies to the property, the repair cost of the damage or repair the damage so that the property will be in as good condition as before the fire.

3. **Coinsurance Clause (Coverage B-Business Personal Property)**

**We** shall not be liable for a greater proportion of any loss to the covered property than **our** limit of liability under this policy bears to the amount produced by multiplying the coinsurance percentage (shown on the policy Declarations) times the actual cash value of such property at the time of the loss. If the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory and appraisement of the undamaged property shall be required.

If insurance under Section I of this policy is divided into separate limits of liability, this provision shall apply separately to the property covered under each such limit of liability. This clause does not apply to any Additional Coverages.

B-250.2-B                                                                                                    15

## ASBESTOS EXCLUSION

It is understood and agreed that such insurance as is afforded by this policy does not apply to any and all liability for bodily injury, disease, or illness, including death at any time resulting therefrom, or property damage, for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, abatement, replacement or handling of, or exposure to asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion, or found in any form whatsoever.

It is further understood and agreed that this policy will not become excess of any reduced or exhausted underlying aggregate limit of liability or aggregate self-insured retention to the extent such reduction or exhaustion is the result of claims, damage or loss excluded by this endorsement.

It is also agreed that the company shall not be obligated to defend any suit or claim as a result of claims, damage or loss excluded by this endorsement.

B-559-B

### AMENDATORY ENDORSEMENT – HOW LOSSES ARE SETTLED
### (APARTMENT OWNERS/RENTAL DWELLING)
### (SPECIAL FORM COVERAGE)

Under **CONDITIONS**, "2. **How Losses Are Settled**", is deleted and replaced with the following:

2. **How Losses Are Settled.**
   (a) Valuation of property is established as follows:
       (1) Property of others at the amount for which the **insured** is liable but not to exceed the actual cash value. Actual cash value includes deduction for depreciation.
       (2) Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, cards or other blank material.
       (3) Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form.
       (4) All other property at actual cash value. Actual cash value includes deduction for depreciation.
   (b) Replacement Cost: Coverage A-Building(s)
       (1) If, at the time of loss, the limit of liability shown in the Declarations for the building and items covered under Coverage A-Building(s) in this policy is 80% or more of the full replacement cost, **we** will pay the full cost to repair or replace the damaged part of the building or item, without deduction for depreciation up to that limit.
           In determining full replacement cost, do not include the cost of excavation, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. It there is no basement, do not include the cost of those supports below the surface of the ground and inside the foundations walls.
       (2) If, at the time of loss, the limit of liability shown in the Declarations for the building or items in this policy is less than 80% of the full replacement cost, **we** will pay the larger of the following amounts:
           (a) the actual cash value of the damaged part of the building or items; or
           (b) the full cost to repair or replace the damaged property multiplied by the ratio of the limit of liability shown in the Declarations on the building or items to 80% of its full replacement cost up to that limit.
       (3) But, **we** will pay under (1) or (2), no more than the smallest of the following:
           (a) the limit of liability shown in the Declarations for the building or items;
           (b) the cost to replace the damaged building or items with equivalent construction for equivalent use on the same premises; or
           (c) the amount actually spent for necessary repair or replacement of the damaged building or items.
       (4) The replacement cost of any single item of property (other than buildings) is limited to the amount it would cost to replace the item identical to the one damaged or destroyed. When an identical item is no longer available, replacement cost is limited to the cost of a new item similar to that damaged or destroyed and of like kind and quality.
       (5) It the full cost to repair or replace the damaged property is more than $1,000 or 5% of the limit of liability shown in the Declarations for the building or items in this policy, **we** will not be liable for full replacement cost until actual repair or replacement is completed.
       (6) If the full cost to repair or replace the damaged property is both less than $1,000 and less than 5% of the limit of liability shown in the Declarations applying to the property, **we** will pay the full cost to repair or replace the damaged property without deduction for depreciation.
       (7) If **you** elect not to repair or replace the damaged property, **you** may disregard these replacement cost provisions and loss settlement will be for actual cash value. If **you** do, **you** have the right to make further claim for replacement cost within 180 days after the loss for any additional cost **you** incur in replacing the damaged property.
   (c) **We** may make a cash settlement and take all or part of the damaged property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. **We** must give you notice of **our** intention within 30 days after **we** receive **your** proof of loss.
   (d) **(Missouri Only)**
       In the event of partial damage to insured property caused by the peril of fire, **we** will, at **your** option, pay **you** up to the limit of liability shown in the Declarations that applies to the property, the repair cost of the damage or repair the damage so that the property will be in as good condition as before the fire.

B-834.3-B

Case No. 1:19-cv-03526-RMR-NRN   Document 55-1   filed 12/31/20   USDC Colorado   pg 22
of 40
Case 1:19-cv-03526-WJM-NYW   Document 28-2   Filed 04/23/20   USDC Colorado   Page 10 of
13

## AMENDATORY ENDORSEMENT - COLORADO

A. Under **DEFINITIONS USED THROUGHOUT THIS POLICY**, the following definitions are added:

**Fungus/fungi** – includes, but is not limited to, any form or type of mold, mildew, mushroom, yeast or biocontaminant.

**Spore(s)** – includes, but is not limited to, any substance produced by, emanating from or arising out of any fungus/fungi.

**Spouse** means a person who **resides** in the household of an **insured** and is that **insured's** lawful husband, wife, or party to a civil union. Lawful means that the marriage or civil union is valid under the law of the state in which it was entered into.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, gasoline and other oil and petroleum products, chemicals, and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Whenever these terms are used in this policy (whether or not it appears in bold type), the meaning above applies.

B. Under **ADDITIONAL COVERAGES - SECTION I**, 6. **Debris Removal** is deleted and replaced with:

6. **Debris Removal**

    **We** will pay:

    (a) The reasonable expenses **you** incur to have the remains of covered property hauled away from the **insured premises** following a loss from a peril **we** insure against. This coverage does not extend to fees or expenses **you** incur for the tearing off, or tearing out, the remains of covered property.

    (b) The reasonable expenses **you** incur to have the remains of damaged property which is not covered property, hauled away from the **insured premises** if:

        (i) That property damaged covered property; and

        (ii) The damage to that property is caused by a peril **we** insure against; and

        (iii) This coverage is not provided elsewhere in this policy.

    Payments will not increase the amount of insurance applying to the covered property. The cost of debris removal shall not be considered in the determination of replacement cost or of actual cash value when applying the Coinsurance Clause.

    This additional coverage does not apply to cost to:

    (a) Extract **pollutants** from land or water; or

    (b) Remove, restore or replace polluted land or water.

C. Under **SECTION I – PROPERTY PROTECTION**, the section headed **DEDUCTIBLE** is deleted and replaced with:
**DEDUCTIBLE**
**We** will pay for loss to covered property minus the deductible shown in the policy Declarations.

The deductible applies per occurrence and separately to each building or other structure. If business personal property in the building or other structure is damaged from the same occurrence, a single deductible will apply to both losses. Business personal property damaged in a building or other structure without damage to a building or structure will be

subject to a separate deductible.
All other coverages or property losses combined are subject to a single deductible per occurrence unless otherwise provided for in that coverage.
Rents Coverage, Fire Department Charges and Fire Extinguisher Recharge are not subject to the deductible clause.

D. Under **ADDITIONAL COVERAGES – SECTION I**, the following coverages are added:
**Fungus/Fungi or Spore(s)**
**We** will cover direct physical loss to property covered by this policy caused by **fungus/fungi** or **spore(s)** if the loss is a direct result of a peril that is covered under this policy. Coverage applying from this endorsement does not increase the limit applying to covered property.

This coverage includes the necessary increase in cost which **you** incur to maintain **your** normal standard of living while the covered property is uninhabitable due to a loss covered by this endorsement.

This coverage will not apply:

(1) To the cost or expenses arising out of abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, disposal, testing or any obligation to investigate or assess the presence or effects of any **fungus/fungi** or **spore(s)**, whether the mold is the result of a covered loss or otherwise,

(2) To property that has not been adequately maintained contributing to the loss,

(3) If resulting from the failure of the **insured** to reasonably maintain or protect the property from further damage following a covered loss, or

(4) If the **insured** has caused delay of restoration by inaction or by not taking prompt action on decisions needed to repair the property.

**Pollutant Clean Up and Removal**
**We** will pay **your** expenses to extract **pollutants** from land or water at the **insured premises** if the discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused by or results from a loss by a peril **we** insure against that occurs during the policy period. The expenses will be paid only if they are reported to **us** in writing within 180 days or the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

The most **we** will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of a peril **we** insure against occurring during each separate 12 month period of this policy.

E. Under **EXCLUSIONS – SECTION I**, exclusion 3 is deleted and replaced with:

3. Temperature change caused by the interruption of utility service. **We** do cover direct loss caused by any of the following events unless coverage for that loss is otherwise excluded in this policy:

    (a) Physical damage to utility generation or

transmission equipment;

(b) Fire that occurs after the temperature change; or

(c) Freezing of a plumbing system that resulted from an interruption in the utility service needed to heat that system.

F. Under **EXCLUSIONS – SECTION I**, the following exclusions are added:

We do not cover:

(1) Direct physical loss to property arising from or caused by the presence of **fungus/fungi** or **spore(s)**, regardless of the origin of its cause and regardless of the event or chain of events that led to its presence.

(2) The cost or expenses arising out of abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal, testing or any obligation to investigate or assess the presence or effects of any **fungus/fungi** or **spore(s)**, and

(3) Any increase in cost which **you** incur because of its presence.

**We** will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of **pollutants** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the perils **we** insure against. But if loss or damage by a peril **we** insure against loss results, **we** will pay for resulting damage caused by the peril **we** insure against.

G. Under **CONDITIONS - SECTION I**, 8. **Suit Against Us** is deleted.

H. Under **SECTION II — EXCLUSIONS**, Under Bodily Injury and Property Damage Liability, the following exclusion is added:

**Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, release, or escape of **pollutants**:

(a) At or from premises the **insured** owns, rents or occupies;

(b) At or from any site or location used by or for the **insured** or others for the handling, storage, disposal processing, or treatment of waste;

(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the **insured** or any person or organization for whom the **insured** may be legally responsible; or

(d) At or from any site or location on which the **insured** or any contractors or subcontractors working directly or indirectly on the **insured's** behalf are performing operations:

(1) If the **pollutants** are brought on or to the site or location in connection with such operations; or

(2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize the **pollutants**

To any loss, cost, or expense arising out of any governmental direction or request that the **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

I. Under **SECTION II — EXCLUSIONS**, Under Personal Injury Liability, the following exclusion is added:

**Personal injury** arising out of the actual, alleged or threatened

discharge, dispersal, release or escape of **pollutants**:

(a) At or from premises the **insured** owns, rents or occupies;

(b) At or from any site or location used by or for the **insured** or others for the handling, storage, disposal processing or treatment of waste;

(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the **insured** or any person or organization for whom the **insured** may be legally responsible; or

(d) At or from any site or location on which the **insured** or any contractors or subcontractors working directly or indirectly on the **insured's** behalf are performing operations:

(1) If the **pollutants** are brought on or to the site or location in connection with such operations; or

(2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the **pollutants**

To any loss, cost, or expense arising out of any governmental direction or request that the **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**.

The exclusions for pollution applicable to **Bodily injury**, **property damage** and **Personal injury** liability do not apply if caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

In this policy, any exclusion, limitation or other provision relating to **pollutants**, or any amendment to or replacement of such exclusions, limitations or other provisions, applies even if such irritant or contaminant is:

(a) A product which **you** sell or furnish in **your** business; or

(b) Used in the conduct of **your** business.

J. Under **SECTION II – EXCLUSIONS**, Under Bodily Injury and Property Damage Liability, the following exclusion is added:

We do not cover:

(1) **Bodily Injury**, **Property Damage** or **Medical Payments**, arising from or caused by the presence of **fungus/fungi** or **spore(s)**, regardless of the origin of its cause and regardless of the event or chain of events that led to its presence.

(2) The cost or expenses arising out of abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal, testing or any obligation to investigate or assess the presence or effects of any **fungus/fungi** or **spore(s)**, and

(3) Any increase in cost which **you** incur because of its presence.

K. Under **CONDITIONS – SECTION II**, 3. **LIMITS OF LIABILITY**, the following is added to subparagraph (a): This limit also applies separately to each consecutive annual period and to any remaining period of less than 12 months. This period starts at the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the annual aggregate limit of insurance.

B-132.1-B

(Continued on Next Page)

The aggregate limit is the most **we** will pay regardless of the number of **occurrences**, **insureds**, claims made, suits brought, or persons or organizations making claims or bringing suits.

L.  Under GENERAL POLICY CONDITIONS APPLYING TO SECTION I AND SECTION II, 5. is deleted and replaced with:
5. **OUR RIGHT TO RECOVER PAYMENT**. After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. This right will not apply under Section I if **you** have waived it in writing prior to loss. The **insured** will do whatever is required to transfer this right to **us**.

**Our** rights under this section extend only to the amount **we** actually paid and **we** will not enforce **our** rights under this section until the person receiving **our** payment receives full compensation for his, her, or its damages.

M.  Under **SPECIAL FORM COVERAGE, EXCLUSIONS**, exclusion 3 is deleted and replaced with:
3.  Temperature change caused by the interruption of utility service. **We** do cover direct loss caused by any of the following events unless coverage for that loss is otherwise excluded in this policy:
    (a)  Physical damage to utility generation or transmission equipment;
    (b)  Fire that occurs after the temperature change; or
    (c)  Freezing of a plumbing system that resulted from an interruption in the utility service needed to heat that system.

N.  **INFLATION PROTECTION**
Coverage limits under **your** policy will be adjusted annually using data from industry sources which report changes in the construction cost index caused by inflation. Any adjustments

B-132.1-B

**we** make will be applied according to the policy loss settlement provisions of **your** policy.

At each annual renewal date **your** renewal billing will reflect the adjustment, if any, in policy limits from the previous renewal date.

**You** agree to:
(a)  Accept all adjustments in limits included in **your** renewal billing;
(b)  Notify **us** within 90 days of the start of any new building valued at $5000 or more, or any addition to or remodeling of buildings which increases their value by $5000 or more; and
(c)  Pay any required premium for such changes in value.

O.  **LEAD POISONING EXCLUSION**
It is understood and agreed that such insurance as is afforded by this policy does not apply to:
(1)  **Bodily injury** or **property damage** arising out of or caused by, in whole or in part, lead, paint containing lead, or any other material or substance containing lead;
(2)  Any legal obligation of yours for indemnification or contribution due to damages because of **bodily injury** or **property damage** arising out of or caused by, in whole or in part, lead, paint containing lead, or any other substance or material containing lead;
(3)  Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, cleanup, remove, abate, contain, treat, or neutralize lead, paint containing lead, or any other substance or material containing lead.

All other provisions of the policy apply.

## AMENDATORY ENDORSEMENT

A.  Under **DEFINITIONS USED THROUGHOUT THIS POLICY**, the following definitions are added.  Whenever these terms are used in this policy (whether or not it appears in bold type), the meaning below applies.

1.  **Actual cash value** means the total cost to repair or replace the damaged property less **depreciation**.  If the law of the state in which this policy is issued limits the factors which may be considered in determining the **actual cash value**, only the factors allowed by such law will be considered.

2.  **Depreciation** means an amount of money that is deducted from the amount **we** actually pay.  That amount is based on the decrease in the value of the property since it was new.  It applies to any part that must be repaired or replaced to allow for the repair or replacement of a damaged part, whether or not that part itself is damaged.  The condition, age, extent of use, and obsolescence of the part, and the property as a whole, will be considered in determining **depreciation**.  **Depreciation** also applies to the labor and applicable sales tax necessary to complete covered repairs and replacements.  **We** will calculate the percentage by which the materials necessary to the replacement have decreased in value, based on the factors stated above, and apply that same percentage when calculating the **depreciation** applicable to the labor and sales tax.

All other provisions of this policy apply.

B-173-B

6278 S. Boston Ct
Englewood, CO 80111

6.00
39.99

Arapahoe County Clerk & Recorder, Nancy A. Doty
Reception #: B5034454
Receipt #: 5232912                Recording Fee: $6.00
Pages Recorded: 1                 Document Fee: $39.99
Date Recorded: 3/10/2005 10:10:34 AM

## WARRANTY DEED

THIS DEED, Made this 8th day of March, 2005 between

**Regency Builders Limited LLC, A Colorado limited liability company**

of the County of Arapahoe, State of Colorado, grantor and

39.99

**Skiba, Inc.**

whose legal address is: **6278 S. Boston Court Englewood, CO 80111**
of the County of **Arapahoe**, State of Colorado, grantee:
WITNESSETH, That the grantor for and in consideration of the sum of **Three Hundred Ninety-Nine Thousand Nine Hundred Dollars and NO/100'S,($399,900.00)**, the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, convey and confirm, unto the grantee, his heirs and assigns forever, all the real property together with improvements, if any, situate, lying and being in the County of Arapahoe, and State of COLORADO, described as follows:

Lot 24, Block 2,
Cherry Creek Vista Filing No. 17-A First Amendment,
County of Arapahoe,
State of Colorado.

also known by street and number as **12066 East Lake Circle, Greenwood Village, CO 80111**

**TOGETHER** with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the grantor, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances.
**TO HAVE AND TO HOLD** the said premises above bargained and described, with the appurtenances, unto the grantee, his heirs and assigns forever. And the grantor, for himself, his heirs, and personal representatives, does covenant, grant, bargain and agree to and with the grantee, his heirs and assigns, that at the time of the ensealing and delivery of these presents, he is well seized of the premises above conveyed, has good, sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and has good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, encumbrances and restrictions of whatever kind or nature soever,except all taxes and assessments for the current year, a lien but not yet due or payable, easements, restrictions, reservations, covenants and rights-of-way of record, if any.

The grantor shall and will **WARRANT AND FOREVER DEFEND** the above-bargained premises in the quiet and peaceable possession of the grantee his heirs and assigns, against all and every person or persons lawfully claiming the whole or any part thereof. The singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.
**IN WITNESS WHEREOF**, the grantor has executed this deed on the date set forth above.

**SELLER:**

Regency Builders Limited LLC

by: David Herscovitz, Manager

ASHLEE BALDWIN
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires Nov. 7, 2005

STATE OF **COLORADO**               } SS:
COUNTY OF **Arapahoe**

The foregoing instrument was acknowledged before me this **8th** day of **March, 2005** by **Regency Builders Limited LLC, A Colorado limited liability company by David Herscovitz, Manager**

Notary Public

Witness my hand and official seal.
My **Commission** expires:

WDPHOTO
Warranty Deed (For Photographic Record)

SE
Security Title
File No. S0021228

EXHIBIT B

Reception #:D7093541, 08/16/2017 at  11:55:06 AM, 1 OF  1, Rec Fee $13.00
Arapahoe  County CO Matt Crane, Clerk & Recorder

**LESTER BOGUNOVICH**
**6401 S BOSTON ST UNIT W-101**

**GREENWOOD VILLAGE, CO 80111**

QUIT CLAIM DEED

THIS DEED, made this _14 th_ day of July 2017, between
SKIBO, INC., a Colorado corporation, of the County of Arapahoe
and State of Colorado, grantor and SKIBO, INC., a Colorado
corporation and ILIA GRETSKIY, whose legal address is 6401 South
Boston Street, Unit W-101, Greenwood Village, Colorado  80111, of
the County of Arapahoe and State of Colorado, grantees,

WITNESSETH, That  the  grantor,  for  and  in
consideration of Ten and no/100 Dollars ($10.00) and other good
and valuable consideration, the receipt and sufficiency of which
is hereby acknowledged, has remised, released, sold, conveyed and
QUIT CLAIMED, and by these presents does remise, release, sell,
convey and QUIT CLAIM unto the grantees, their heirs, successors
and assigns, forever, all the right, title, interest, claim and
demand which the grantor has in and to the real property,
together with improvements, if any, situate, lying and being in
the County of Arapahoe and State of Colorado, to wit:

Lot 24, Block 2, Cherry Creek Vista filing No17A
County of Arapahoe, State of Colorado

also known by street and number as: 12066 East Lake Circle,
Greenwood Village, Colorado  80111.

TO HAVE AND TO HOLD the same, together with all and
singular the appurtenances and privileges thereunto belonging or
in anywise thereunto appertaining, and all the estate, right,
title, interest and claim whatsoever, of the grantor, either in
law or equity, to the only proper use, benefit and behoof of the
grantees, their heirs and assigns forever.

IN WITNESS WHEREOF, the grantor has executed this
deed on the date set forth above.

SKIBO, INC.

By: _____
Lester Bogunovich, President, Grantor

STATE OF COLORADO      )
                       )  ss.
COUNTY OF ARAPAHOE     )

The foregoing Quit Claim Deed, transferring title to
SKIBO, Inc. and Ilia Gretskiy, was acknowledged before me this
_10th_ day of July, 2017, by Lester Bogunovich, in his capacity
as President of SKIBO, Inc., a Colorado corporation.

My commission expires: _Sept 14, 2020_

WITNESS hand and official seal.

_____
Notary Public

LU STONE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164035325
MY COMMISSION EXPIRES SEPTEMBER 14, 2020

671119

☐ Final K-1          ☐ Amended K-1          OMB No. 1545-0123

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2019**

For calendar year 2019, or tax year

beginning _____ 2019 _____ ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.**      ► See page 2 of form and separate instructions.

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| Part I | Information About the Corporation |
|---|---|

**A**  Corporation's employer identification number
84- REDACTED

**B**  Corporation's name, address, city, state, and ZIP code

SKIBO  INC

%  LES  BOGUNOVICH

REDACTED

**C**  IRS Center where corporation filed return
OGDEN

| Part II | Information About the Shareholder |
|---|---|

**D**  Shareholder's identifying number
REDACTED

**E**  Shareholder's name, address, city, state, and ZIP code
LESTER  BOGUNOVICH

6401  SO  BOSTON  ST
ENGLEWOOD                    CO  80111

**F**  Shareholder's percentage of stock
ownership for tax year  . . . . . . . . . . 100.00000 %

For IRS Use Only

| # | Description | # | Description |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 13 | Credits |
| 2 | Net rental real estate income (loss) REDACTED | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| 12 | Other deductions | | |
| | | 17 | Other information |
| | | V* | STMT |

| 18 | More than one activity for at-risk purposes* |
|---|---|
| 19 | More than one activity for passive activity purposes* |

\* See attached statement for additional information.

EXHIBIT C

REDACTED

    16.    With regard to the allegations in paragraph 16 of the Complaint, Defendant admits that its experts determined that the water damage was caused by bursting of a water supply pipe located in the second floor bathroom. Defendant is without sufficient information and knowledge to admit or deny the remaining allegations of said paragraph and therefore denies the same.

REDACTED

EXHIBIT D

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL BEFORE SIGNING

### RESIDENCE LEASE

**1. Parties.** THIS LEASE ("Lease") is made on September 6, 2018 between SKIBO, Inc., a Colorado corporation (the "Landlord") and Armando Mickel Piedra (the "Tenant").

**2. Premises.** In consideration of the payment of the Rent and the performance of the promises by the Tenant set forth below, the Landlord leases to the Tenant the following described residence, with all the appurtenances, situated in the City or Town of Greenwood Village, County of Arapahoe, in the State of Colorado, the address of which is 12066 E. Lake Circle, Greenwood Village, Colorado 80111 , the legal description of which is Lot 24, Block 2, Cherry Creek Vista, Filing No 17A, County of Arapahoe, State of Colorado (the "Premises").

**3. Term.** The Landlord leases the Premises to the Tenant from twelve o'clock noon on September 15, 2018 , until twelve o'clock noon on May 31, 2010 ("Term"). Upon the Tenant paying the Rent and performing all obligations under the Lease, the Tenant shall enjoy quiet possession of the Premises.

**4. Rent.** Rental shall be paid in monthly installments of $ 3,000.00 , payable in advance, on or before twelve o'clock noon on the 1st day of each calendar month during the term of this Lease at the address of the Landlord's Property Manager David M. Summers at P.O. Box 372249, Denver, Colorado 80237 if mailed, or in person, without notice ("Rent"). If the Lease Term does not begin on the first day of the month, the Rent shall be prorated to the last day of that month.

**5. Tenant Covenants.** The Tenant, in consideration of the leasing of the Premises, agrees to the terms below.

**a. Prompt Payments.** The Tenant shall pay all the Rent and any Additional Payments due for the Premises.

**b. No Sublease/Assignment.** The Tenant shall not sublet any part of the Premises nor assign the Lease, or any interest therein, without the written consent of the Landlord.

**c. Use/Alterations.** The Tenant shall use and occupy the Premises only as a private residence with a maximum occupancy of five (5) people and shall not use the Premises for any purpose prohibited by the laws of the United States or the State of Colorado, or of the ordinances of the city or town in which the Premises are located. The Tenant shall not permit any portion of the Premises to be used in a manner which may endanger the person or property of the Landlord, co-tenants or any person living on or near the Premises. The Tenant shall keep all portions of the Premises in clean and habitable condition and will not make any alterations or additions to the Premises without the Landlord's written approval.

**d. Hold Harmless.** The Tenant shall neither hold, nor attempt to hold, the Landlord, Landlord's agents, contractors and employees liable for any injury, damage, claims or loss to person or property occasioned by any accident, condition or casualty to, upon, or about the Premises including, but not limited to, defective wiring, the breaking or stopping of the plumbing or sewage upon the Premises, unless such accident, condition or casualty is directly caused by intentional or reckless acts or omission of the Landlord. Notwithstanding any duty the Landlord may have hereunder to repair or maintain the Premises, in the event that the improvements upon the Premises are damaged by the negligent, reckless or intentional act or omission of the Tenant or any licensees, invitees or co-tenants, the Tenant shall bear the full cost of such repair or replacement. The Tenant shall hold the Landlord, Landlord's agents and their respective successors and assigns, harmless and indemnified from all injury, loss, claims or damage to any person or property while on the Premises or any other part of the Property, which is occasioned by an act or omission of the Tenant, Tenant's licensees, invitees or co-tenants. The Landlord is not responsible for any damage or destruction to the Tenant's personal property. The Tenant shall obtain renter's insurance at the Tenant's sole discretion and expense.

**e. Access.** The Tenant shall allow the Landlord to enter upon the Premises at any reasonable hour. The Tenant shall permit the Landlord to place a "For Rent" sign upon the Premises, and show the Premises to prospective tenants at any reasonable hour, during the final thirty days of this Lease.

**6. Utilities.** The Tenant shall be responsible for paying the following utilities. All of such charges to be paid by the Tenant shall be deemed Additional Payments: ☑Electric ☑Gas ☑Water ☑Sewer ☑Phone ☐Refuse Disposal ☑Other  security monitoring (if desired by tenant) .

**7. No Waiver/Set Off.** No assent, express or implied, to any default of any one or more of the agreements hereof shall be deemed or taken to be a waiver of any succeeding or other default. The covenants set forth herein shall be deemed to be independent. The Tenant shall have no right to withhold or set off any Rent due the Landlord.

**8. Holdover.** If, after the expiration of this Lease, the Tenant shall remain in possession of the Premises and continue to pay Rent without a written agreement as to such possession, then such tenancy shall be regarded as a month-to-month tenancy, at a monthly rental, payable in advance, equivalent to 200% of the last month's Rent paid under this Lease, and subject to all the terms and conditions of this Lease.

**9. Vacancy.** If the Premises are left vacant and any part of the Rent reserved hereunder is not paid, then the Landlord may, without being obligated to do so and without terminating this Lease, retake possession of the Premises and relet, or attempt to relet, the same for such rent and upon such conditions as the Landlord may think best. The Landlord may make such change and repairs as may be required, giving credit for the amount of Rent so received less all expenses of such changes and repairs, and the Tenant shall be liable for the balance of the Rent herein reserved until the expiration of the Term.

**10. Security Deposit.** The Tenant agrees to surrender the Premises at the expiration of this Lease in as good a condition as when the Tenant entered the Premises, normal wear and tear excepted. As security therefor and performance of all other terms of the Lease, a Security Deposit in the amount

EXHIBIT E

INSURED 0001

of $ 3,000.00 ("Security Deposit") has been paid by the Tenant. The Security Deposit shall be returned to the Tenant, or written accounting made for any portion retained, listing the exact reasons for the retention, together with the balance of the Security Deposit, within sixty (60) days after termination of the Lease or surrender and acceptance of the Premises. The Landlord shall mail any written statement to the last known address of the Tenant. The Tenant may not apply the Security Deposit as Rent unless agreed to by the Landlord.

**11. Repairs and Maintenance of the Premises.** The Landlord agrees to keep all the improvements upon the Premises including, but not limited to, structural components, interior and exterior walls, floors, ceiling, roofs, sewer connections, plumbing, wiring, appliances and glass in good maintenance and repair at their expense. The Tenant shall properly irrigate and care for all trees, shrubbery and lawn and shall keep all drives, common areas and sidewalks on the Premises free and clear of ice and snow. The Tenant shall not cause waste to occur upon the improvements and shall keep the entire interior and exterior Premises free from all litter, dirt, debris and obstructions; and shall keep any septic system or sewer line in a clean and sanitary condition.

In the event the Landlord is responsible for repair of the Premises, the Tenant shall be obliged to notify the Landlord of any condition upon the Premises requiring repair, and shall provide the Landlord a reasonable time to accomplish said repair. At the commencement of this Lease, the Tenant and the Landlord ☐ have ☑ have not completed a written description setting forth the agreed condition of the Premises. If such written description has been completed, it is hereby incorporated by this reference. As of the commencement of this Lease, the Tenant acknowledges that the Tenant has examined the Premises and is satisfied with the condition thereof. Taking possession of the Premises is conclusive evidence to the fact that the Premises are in good order and satisfactory condition.

**12. Default.** If the Tenant shall be in arrears in the payment of any instalment of Rent, any Additional Payments, or any portion thereof, or in default of any other covenants or agreements set forth in this Lease ("Default"), and the Default remains uncorrected for a period of three (3) days after the Landlord has given written notice thereof pursuant to applicable law, then the Landlord may, at the Landlord's option, undertake any of the following remedies without limitation: (a) declare the Term of the Lease ended; (b) terminate the Tenant's right to possession of the Premises and reenter and repossess the Premises pursuant to applicable provisions of the Colorado Forcible Entry and Detainer Statute; (c) recover all present and future damages, costs and other relief to which the Landlord is entitled; (d) pursue Landlord's lien remedies; (e) pursue breach of contract remedies; and/or (f) pursue any and all available remedies in law or equity. In the event possession is terminated by reason of a Default prior to expiration of the Term, the Tenant shall be responsible for the Rent and Additional Payments occurring for the remainder of the Term, subject to the Landlord's duty to mitigate such damages. Pursuant to applicable law [13-40-104(d.5), (e.5) and 13-40-107.5, C.R.S.] which is incorporated by this reference, in the event repeated or substantial Default(s) under the Lease occur, the Landlord may terminate the Tenant's possession upon a written Notice to Quit, without a right to cure. Upon such termination, the Landlord shall have available any and all of the above-listed remedies.

**13. Attorneys' Fees.** In the event any dispute arises concerning the terms of this Lease or the non-payment of any sums under this Lease, and the matter is turned over to an attorney, the party prevailing in such dispute shall be entitled, in addition to other damages and costs, to recover reasonable attorneys' fees from the other party.

**14. Late Fee.** In the event any payment required hereunder is not received within ten (10) days after the payment is due, a late charge in the amount of (five) 5 % of the payment will be paid by the Tenant. Such fee shall be deemed an Additional Payment. No partial payment or performance by the Tenant or acceptance by the Landlord shall cure any outstanding default, estop the Landlord from pursuing, or continuing to pursue, remedies for such default, or act as a waiver.

**15. Pets.** Pets shall be permitted on the Premises, but shall be limited to 3 in number, without the prior written consent of Landlord.

**16. Miscellaneous.** This Lease shall be subordinate to all existing and future security interests on the Premises. All notices shall be in writing and be personally delivered or sent by first class mail, unless otherwise provided by law, to the respective parties at the address immediately below their signature. All titles and captions are for convenience only and are not a part of this Lease. If any term or provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and shall be valid and enforceable to the full extent permitted by law. This Lease shall only be modified by amendment signed by both parties. This Lease shall be binding on the parties, their personal representatives, successors and assigns.

### ADDITIONAL PROVISIONS

Additional provisions of this Lease are set forth in Exhibit A, attached to and made a part of this Lease by this reference.

SKIBO, INC., a Colorado corporation

Landlord: _____
Lester Bogunovich, President

Address: c/o D. Summers P.O. Box 372249
Denver, Colorado 80237

Tenant: _____
Armando Mickel Piedra

Tenant: _____

Address: 7 Dakota Court, Carbondale, CO 81623

INSURED 0002

EXHIBIT A
TO RESIDENCE LEASE DATED SEPTEMBER 6, 2018
FOR PERIOD FROM SEPTEMBER 15, 2018 THROUGH MAY 31, 2020

ADDITIONAL PROVISIONS

1. All references to Tenant in this Exhibit shall refer to Armando Michel Piedra.

2. Landlord shall pay all applicable Home Owners Association dues for the Premises during the term of this Lease.

3. Tenant has inspected the Premises and accepts the Premises in its present condition.

4. Tenant and all persons claiming by or through the Tenant shall hold Landlord harmless for any liability associated with Tenant's occupancy of the Premises by the Tenant. Tenant shall indemnify Landlord for any liability incurred by Landlord arising from Tenant's occupancy of the Premises.

5. Tenant's security deposit may not be designated by Tenant for use for payment of rent at any time.

6. Landlord shall be responsible for any necessary repairs to the premises in excess of $99 individually, and in excess of $499 in the aggregate during the term of this Lease, unless the Tenant or its invitees cause damage necessitating such repair. Tenant, however, shall be responsible for maintaining the premises, its fixtures and appliances in good working order and shall pay for any necessary repairs or replacements costing less than $100 individually, or less than $500 in the aggregate, during the term of this Lease.

7. Before Tenant occupies the Premises, in addition to payment of the Security Deposit ($3,000), Tenant shall also pay one full month's rent ($3,000) and the last month's rent ($3,000) due under this Lease in advance.



THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL BEFORE SIGNING

## RESIDENCE LEASE

**1. Parties.** THIS LEASE ("Lease") is made on September 6, 2018 between SKIBO, Inc., a Colorado corporation (the "Landlord") and Armando Miekel Piedra (the "Tenant").

**2. Premises.** In consideration of the payment of the Rent and the performance of the promises by the Tenant set forth below, the Landlord leases to the Tenant the following described residence, with all the appurtenances, situated in the City or Town of Greenwood Village, County of Arapahoe, in the State of Colorado, the address of which is 12066 E. Lake Circle, Greenwood Village, Colorado 80111, the legal description of which is Lot 24, Block 2, Cherry Creek Vista, Filing No 17A, County of Arapahoe, State of Colorado (the "Premises").

**3. Term.** The Landlord leases the Premises to the Tenant from twelve o'clock noon on September 15, 2018, until twelve o'clock noon on May 31, 2010 ("Term"). Upon the Tenant paying the Rent and performing all obligations under the Lease, the Tenant shall enjoy quiet possession of the Premises.

**4. Rent.** Rental shall be paid in monthly installments of $ 3,000.00, payable in advance, on or before twelve o'clock noon on the 1st day of each calendar month during the term of this Lease at the address at the address of the Landlord's Property Manager David M. Summers at P.O. Box 372249, Denver, Colorado 80237 (if mailed, or in person, without notice ("Rent"). If the Lease Term does not begin on the first day of the month, the Rent shall be prorated for the last day of that month.

**5. Tenant Covenants.** The Tenant, in consideration of the leasing of the Premises, agrees to the terms below.

**a. Prompt Payments.** The Tenant shall pay all the Rent and any Additional Payments due for the Premises.

**b. No Sublease/Assignment.** The Tenant shall not sublet any part of the Premises nor assign the Lease, or any interest therein, without the written consent of the Landlord.

**c. Use/Alterations.** The Tenant shall use and occupy the Premises only as a private residence with a maximum occupancy of five (5) people and shall not use the Premises for any purpose prohibited by the laws of the United States or the State of Colorado, or of the ordinances of the city or town in which the Premises are located. The Tenant shall not permit any portion of the Premises to be used in a manner which may endanger the person or property of the Landlord, co-tenants or any person living on or near the Premises. The Tenant shall keep all portions of the Premises in clean and habitable condition and will not make any alterations or additions to the Premises without the Landlord's written approval.

**d. Hold Harmless.** The Tenant shall neither hold, nor attempt to hold, the Landlord, Landlord's agents, contractors and employees liable for any injury, damage, claims or loss to person or property occasioned by any accident, condition or casualty to, upon, or about the Premises including, but not limited to, defective wiring, the breaking or stopping of the plumbing or sewage upon the Premises, unless such accident, condition or casualty is directly caused by intentional or reckless acts or omission of the Landlord. Notwithstanding any duty the Landlord may have hereunder to repair or maintain the Premises, in the event that the improvements upon the Premises are damaged by the negligent, reckless or intentional act or omission of the Tenant or any licensees, invitees or co-tenants, the Tenant shall bear the full cost of such repair or replacement. The Tenant shall hold the Landlord, Landlord's agents and their respective successors and assigns, harmless and indemnified from all injury, loss, claims or damage to any person or property while on the Premises or any other part of the Property, which is occasioned by an act or omission of the Tenant, Tenant's licensees, invitees or co-tenants. The Landlord is not responsible for any damage or destruction to the Tenant's personal property. The Tenant may obtain renter's insurance at the Tenant's sole discretion and expense.

**e. Access.** The Tenant shall allow the Landlord to enter upon the Premises at any reasonable hour. The Tenant shall permit the Landlord to place a "For Rent" sign upon the Premises, and show the Premises to prospective tenants at any reasonable hour, during the final thirty days of this Lease.

**6. Utilities.** The Tenant shall be responsible for paying the following utilities. All of such charges to be paid by the Tenant shall be deemed Additional Payments: ☑ Electric ☑ Gas ☑ Water ☑ Sewer ☑ Phone ☐ Refuse Disposal ☑ Other security monitoring (if desired by tenant).

**7. No Waiver/Set Off.** No assent, express or implied, to any default of any one or more of the agreements hereof shall be deemed or taken to be a waiver of any succeeding or other default. The covenants set forth herein shall be deemed to be independent. The Tenant shall have no right to withhold or set off any Rent due the Landlord.

**8. Holdover.** If, after the expiration of this Lease, the Tenant shall remain in possession of the Premises and continue to pay Rent without a written agreement as to such possession, then such tenancy shall be regarded as a month-to-month tenancy, at a monthly rental, payable in advance, equivalent to 200% of the last month's Rent paid under this Lease, and subject to all the terms and conditions of this Lease.

**9. Vacancy.** If the Premises are left vacant and any part of the Rent reserved hereunder is not paid, then the Landlord may, without being obligated to do so and without terminating this Lease, retake possession of the Premises and relet, or attempt to relet, the same for such rent and upon such conditions as the Landlord may think best. The Landlord may make such change and repairs as may be required, giving credit for the amount of Rent so received less all expenses of such changes and repairs, and the Tenant shall be liable for the balance of the Rent herein reserved until the expiration of the Term.

**10. Security Deposit.** The Tenant agrees to surrender the Premises at the expiration of this Lease in as good a condition as when the Tenant entered the Premises, normal wear and tear excepted. As security therefor and performance of all other terms of the Lease, a Security Deposit in the amount

INSURED 0004

of $ 3,000.00  ("Security Deposit") has been paid by the Tenant. The Security Deposit shall be returned to the Tenant, or written accounting made for any portion retained, listing the exact reasons for the retention, together with the balance of the Security Deposit, within sixty (60) days after termination of the Lease or surrender and acceptance of the Premises. The Landlord shall mail any written statement to the last known address of the Tenant. The Tenant may not apply the Security Deposit as Rent unless agreed to by the Landlord.

**11. Repairs and Maintenance of the Premises.**  The Landlord agrees to keep all the improvements upon the Premises including, but not limited to, structural components, interior and exterior walls, floors, ceiling, roofs, sewer connections, plumbing, wiring, appliances and glass in good maintenance and repair at their expense. The Tenant shall properly irrigate and care for all trees, shrubbery and lawn and shall keep all drives, common areas and sidewalks on the Premises free and clear of ice and snow. The Tenant shall not cause waste to occur upon the improvements and shall keep the entire interior and exterior Premises free from all litter, dirt, debris and obstructions; and shall keep any septic system or sewer line in a clean and sanitary condition.

In the event the Landlord is responsible for repair of the Premises, the Tenant shall be obliged to notify the Landlord of any condition upon the Premises requiring repair, and shall provide the Landlord a reasonable time to accomplish said repair. At the commencement of this Lease, the Tenant and the Landlord ☐ have ☑ have not  completed a written description setting forth the agreed condition of the Premises. If such written description has been completed, it is hereby incorporated by this reference. As of the commencement of this Lease, the Tenant acknowledges that the Tenant has examined the Premises and is satisfied with the condition thereof. Taking possession of the Premises is conclusive evidence to the fact that the Premises are in good order and satisfactory condition.

**12. Default.**  If the Tenant shall be in arrears in the payment of any instalment of Rent, any Additional Payments, or any portion thereof, or in default of any other covenants or agreements set forth in this Lease ("Default"), and the Default remains uncorrected for a period of three (3) days after the Landlord has given written notice thereof pursuant to applicable law, then the Landlord may, at the Landlord's option, undertake any of the following remedies without limitation: (a) declare the Term of the Lease ended; (b) terminate the Tenant's right to possession of the Premises and reenter and repossess the Premises pursuant to applicable provisions of the Colorado Forcible Entry and Detainer Statute; (c) recover all present and future damages, costs and other relief to which the Landlord is entitled; (d) pursue Landlord's lien remedies; (e) pursue breach of contract remedies; and/or (f) pursue any and all available remedies in law or equity. In the event possession is terminated by reason of a Default prior to expiration of the Term, the Tenant shall be responsible for the Rent and Additional Payments occurring for the remainder of the Term, subject to the Landlord's duty to mitigate such damages. Pursuant to applicable law [13-40-104(d.5), (e.5) and 13-40-107.5, C.R.S.] which is incorporated by this reference, in the event repeated or substantial Default(s) under the Lease occur, the Landlord may terminate the Tenant's possession upon a written Notice to Quit, without a right to cure. Upon such termination, the Landlord shall have available any and all of the above-listed remedies.

**13. Attorneys' Fees.**  In the event any dispute arises concerning the terms of this Lease or the non-payment of any sums under this Lease, and the matter is turned over to an attorney, the party prevailing in such dispute shall be entitled, in addition to other damages and costs, to recover reasonable attorneys' fees from the other party.

**14. Late Fee.**  In the event any payment required hereunder is not received within ten (10) days after the payment is due, a late charge in the amount of  (five) 5 % of the payment will be paid by the Tenant. Such fee shall be deemed an Additional Payment. No partial payment or performance by the Tenant or acceptance by the Landlord shall cure any outstanding default, estop the Landlord from pursuing, or continuing to pursue, remedies for such default, or act as a waiver.

**15. Pets.**  Pets shall be permitted on the Premises, but shall be limited to 3 in number, without the prior written consent of Landlord.

**16. Miscellaneous.**  This Lease shall be subordinate to all existing and future security interests on the Premises. All notices shall be in writing and be personally delivered or sent by first class mail, unless otherwise provided by law, to the respective parties at the address immediately below their signature. All titles and captions are for convenience only and are not a part of this Lease. If any term or provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and shall be valid and enforceable to the full extent permitted by law. This Lease shall only be modified by amendment signed by both parties. This Lease shall be binding on the parties, their personal representatives, successors and assigns.

## ADDITIONAL PROVISIONS

Additional provisions of this Lease are set forth in Exhibit A, attached to and made a part of this Lease by this reference.

SKIBO, INC., a Colorado corporation

Landlord: _____          Tenant: _____

Lester Bogunovich, President                              Armando Mickel Piedra

Address:  c/o D. Summers P.O. Box 372249              Tenant: _____
_____ Denver, Colorado  80237

Address:  7 Dakota Court, Carbondale, CO 81623

INSURED 0005

EXHIBIT A
TO RESIDENCE LEASE DATED SEPTEMBER 6, 2018
FOR PERIOD FROM SEPTEMBER 15, 2018 THROUGH MAY 31, 2020

ADDITIONAL PROVISIONS

1.  All references to Tenant in this Exhibit shall refer to Armando Michel Piedra.

2.  Landlord shall pay all applicable Home Owners Association dues for the Premises during the term of this Lease.

3.  Tenant has inspected the Premises and accepts the Premises in its present condition.

4. Tenant and all persons claiming by or through the Tenant shall hold Landlord harmless for any liability associated with Tenant's occupancy of the Premises by the Tenant. Tenant shall indemnify Landlord for any liability incurred by Landlord arising from Tenant's occupancy of the Premises.

5.  Tenant's security deposit may not be designated by Tenant for use for payment of rent at any time.

6.  Landlord shall be responsible for any necessary repairs to the premises in excess of $99 individually, and in excess of $499 in the aggregate during the term of this Lease, unless the Tenant or its invitees cause damage necessitating such repair.  Tenant, however, shall be responsible for maintaining the premises, its fixtures and appliances in good working order and shall pay for any necessary repairs or replacements costing less than $100 individually, or less than $500 in the aggregate, during the term of this Lease.

7.  Before Tenant occupies the Premises, in addition to payment of the Security Deposit ($3,000), Tenant shall also pay one full month's rent ($3,000) and the last month's rent ($3,000) due under this Lease in advance.

_____

INSURED 0006

1/25/2019                                    Wells Fargo

Skip to main content
## Check Details

| Item # | Bank | Account # | Check # | Amount |
|--------|------|-----------|---------|--------|
| 1 | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | ...1326 | 1173424813 | $3,000.00 |



For your security, information like account numbers, signatures, and the ability to view the backs of checks have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

⌂ Equal Housing Lender

EXHIBIT F

INSURED 0011



**Xcel** Energy®

RESPONSIBLE BY NATURE®

PUBLIC SERVICE COMPANY OF COLORADO

Page 1 of 4

| SERVICE ADDRESS | ACCOUNT NUMBER | DUE DATE |
|---|---|---|
| ARMANDO MICHEL PIEDRA<br>12066 E LAKE CIR<br>GREENWOOD VILLAGE, CO 80111-52 | 53-0012482525-9 | 02/13/2019 |
| | STATEMENT NUMBER | STATEMENT DATE | AMOUNT DUE |
| | 624092220 | 01/25/2019 | $1,823.55 |

**Your Account is Overdue - Please Pay Immediately**

### SUMMARY OF CURRENT CHARGES (detailed charges begin on page 2)

| | | | |
|---|---|---|---|
| Electricity Service | 12/21/18 - 01/24/19 | 311 kWh | $37.74 |
| Natural Gas Service | 12/21/18 - 01/24/19 | 31 therms | $31.54 |
| Non-Recurring Charges / Credits | | | -$0.01 CR |
| **Current Charges** | | | **$69.27** |

### ACCOUNT BALANCE

| | | |
|---|---|---|
| Previous Balance | As of 12/21 | $1,814.28 |
| Payment Received | Pay Station 01/18 | -$60.00 CR |
| Balance Forward | | **$1,754.28** |
| Current Charges | | $69.27 |
| **Amount Due** | | **$1,823.55** |

### INFORMATION ABOUT YOUR BILL

Just a reminder about the past due amount on your account. If you have already sent your payment, thank you. Otherwise, please call 1-800-895-4999 to confirm the status of your account.

Thank you for your payment.

Your account has been credited for the interest earned to date on your deposit.

## YOUR MONTHLY ELECTRICITY USAGE



J F M A M J J A S O N D J

| DAILY AVERAGES | Last Year | This Year |
|---|---|---|
| Temperature | 33° F | 34° F |
| Electricity kWh | 0.0 | 9.1 |
| Electricity Cost | $0.00 | $1.11 |

## YOUR MONTHLY NATURAL GAS USAGE

J F M A M J J A S O N D J

| DAILY AVERAGES | Last Year | This Year |
|---|---|---|
| Temperature | 33° F | 34° F |
| Gas Therms | 0.0 | 0.9 |
| Gas Cost | $0.00 | $0.93 |

## QUESTIONS ABOUT YOUR BILL?

See our website: xcelenergy.com
Email us at: Customerservice@xcelenergy.com

Call Mon - Fri 7 a.m.-7 p.m. or Sat 9 a.m.-5 p.m.

| Please Call: | 1-800-895-4999 |
|---|---|
| Hearing Impaired: | 1-800-895-4949 |
| Español: | 1-800-687-8778 |

Or write us at:    XCEL ENERGY
PO BOX 8
EAU CLAIRE WI 54702-0008

 Like us on Facebook    Follow us on Twitter

**Xcel** Energy®

Please help our neighbors in need by donating to Energy Outreach Colorado. Please mark your donation amount on the back of this payment stub and CHECK THE RED BOX under your address below.

------ manifest line ---------

ARMANDO MICHEL PIEDRA
12066 E LAKE CIR
GREENWOOD VILLAGE CO 80111-5253

RETURN BOTTOM PORTION WITH YOUR PAYMENT • **PLEASE DO NOT USE STAPLES, TAPE OR PAPER CLIPS**

| ACCOUNT NUMBER | DUE DATE | AMOUNT DUE | AMOUNT ENCLOSED |
|---|---|---|---|
| 53-0012482525-9 | 02/13/2019 | $1,823.55 | |

Please see the back of this bill for more information regarding the late payment charge.
Make your check payable to XCEL ENERGY

| FEBRUARY | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | | |

XCEL ENERGY
P.O. BOX 9477
MPLS MN 55484-9477

32 53021319 0012482525 9 00000069270000182355

EXHIBIT G

INSURED 0118

REDACTED

## REQUEST FOR ADMISSION NO. 7:

Admit that Plaintiff timely submitted the Claim.

**RESPONSE:** Admit.

REDACTED

8

EXHIBIT H

 **SHELTER
INSURANCE
. COMPANIES**
SHELTER MUTUAL
SHELTER GENERAL

March 15, 2019

LESTER BOGUNOVICH
6401 S BOSTON ST UNIT W101
GREENWOOD VILLAGE, CO  80111-5344

RE:   Claim Number:       AO0000002171676
      Insured:            BOGUNOVICH, LESTER
      Date of Loss:       01/17/2019

Dear Mr. Bogunovich:

According to Shelter's records your Apartment Owners Policy, 05-79-4041852-8, was in force when this loss occurred. Your policy provides coverage subject to its terms, conditions, and exclusions. If you need another copy of your policy, please let us know.

This loss was reported to us as occurring on January 17, 2019. Our investigation revealed that water escaped from a frozen pipe in the master bedroom on the second floor causing damage to the vacant or unoccupied building over an extended period of time. Additionally, there is no evidence of heat being maintained in the building.

Your policy states:

\*\*\*

### SPECIAL FORM COVERAGE
### B-250.2-B
#### (Applicable When Shown on the Policy Declarations)

#### PERILS WE INSURE AGAINST
**We** cover accidental direct physical loss to property covered under Coverage A - Buildings and Coverage B -Business Personal Property except for losses excluded in this section.

#### EXCLUSIONS
**We** do not cover loss:
(a) resulting directly or indirectly from any of the following events:
(b) which would not have occurred in the absence of any of the following events;
(c) which occurs regardless of the cause of any of the following events; or
(d) if loss occurs concurrently or in any sequence with any of the events.

Shelter Insurance Companies • CO • PO Box 6008 • Columbia, MO 65205-6008

EXHIBIT I

INSURED 0173

RE: AO0000002171676                    2 of 2

*** 

11. Leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the **insured** has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy.

12. Continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks, months or years.

*** 

Based on our investigation and this policy language, Shelter believes the policy does not cover this claim. Specifically, damages from water leakage caused by freezing when heat was not maintained and that occurred over a period of weeks is excluded under this policy of insurance.

Therefore, Shelter denies coverage for this claim under this policy.

By quoting these policy provisions, Shelter is not waiving any other provision and specifically reserves the right to decline coverage for any other reason that may come to its attention in the future.

We did not discover any mold while investigating this claim. As mentioned, however, we did discover moisture and want you to know that water damage can lead to mold or mildew if not properly treated. Therefore, we recommend that you hire a qualified expert to find the source of this water, stop it, and dry the area. We also recommend that the expert apply an appropriate anti-microbial agent (fungicide or mildewcide) to help guard against any future mold growth. You will have to pay for these services.

If you have any other information that you believe suggests this policy or any other Shelter Insurance policy covers this claim, please provide it to me immediately so that Shelter may review it for coverage.

Sincerely,


Sean Monaghan
Claims Department
Phone:    720-545-3327
Fax:      888-742-5671
Email:    SMonaghan@ShelterInsurance.com

CL42

INSURED 0174