IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-03526-WJM-NYW

**SKIBO, INC., a Colorado corporation,**
**ILIA GRETSKIY**, and **LESTER BOGUNOVICH**

      Plaintiffs,

v.

**SHELTER MUTUAL INSURANCE COMPANY**,

      Defendant.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Shelter Mutual Insurance Company, ("Shelter" or "Defendant"), by and through its attorneys, Morgan Rider Riter Tsai, P.C., hereby submits the following Motion for Summary Judgment in accordance with Fed. R. Civ. P. 56. In support thereof, Defendant states as follows:

### INTRODUCTION

This case arises out of Plaintiffs' ownership of a home insured by Shelter, which Plaintiffs rented out to a tenant, Armando Piedra. Mr. Piedra entered into a lease for the property dated September 6, 2018. Throughout 2018, however, Mr. Piedra was physically absent from the property, and he never moved into the property. The utilities were not activated until December 2018, several months after the lease term began. Consequently, from September 2018 through

the end of December 2018, the home utilized negligible amounts of water, electricity, and gas. Around that time, a pipe froze and burst at the home, causing substantial water damage.

Shelter denied Plaintiffs' claim pursuant to two exclusions, numbers 11 and 12, in its policy. Exclusion 11 precludes coverage when the home is vacant or unoccupied and no efforts are made to maintain heat in the home, and Exclusion 12 bars coverage for continuous or repeated seepage or leakage of water from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks. Both exclusions apply to preclude coverage to Plaintiffs' claim. As discussed herein, based upon these exclusions, Plaintiffs' breach of contract and statutory bad faith claims fail, and Shelter is entitled to summary judgment.

## MOVANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiffs SKIBO, INC. and Ilia Gretskiy are the owners of the residential property located at 12066 East Lake Circle, Greenwood Village, Colorado 80111 (the "Property"). *See* Amended Complaint and Jury Demand (ECF No. 34) p. 1, ¶ 2.

2. Plaintiff Lester L. Bogunovich was the named insured on an Apartment Owners/Rental Dwelling Insurance Policy that covered the Property ("Policy"). *See* Exhibit A, Certified Policy, p. 2.[1]

3. The Policy, with an effective policy period of March 7, 2018 to March 7, 2019, contains multiple exclusions that act to preclude coverage for certain claims. *See* Exhibit A, p. 2.

---

[1] The page reference is to the page as numbered in the PDF, not on the policy form itself.

4. On or around Sept 15, 2018, Plaintiffs purportedly leased the Property to Armando Piedra as a lone tenant pursuant to terms and conditions of a written residential property lease. Exhibit B, Lease.[2]

5. As of January 15, 2019, Mr. Piedra still had not moved into the Property. *See* Exhibit C, Affidavit of Sean M. Monaghan; *See* Transcript of Recorded Statement of Armanda Piedra, attached to Affidavit of Sean M. Monaghan ("Transcription"), 5:2-4, 6:7-13, 10:17-18.

6. Mr. Piedra did not move any personal property into the Property. *See* Exhibit C; *See* Transcription, 7:18-24.

7. Mr. Piedra purchased some furnishings from the prior tenant. Those items were already in the Property before he signed the lease. *See* Exhibit C; *See* Transcription, 7:21-25, 8:1-15.

8. Mr. Piedra did not stay at the Property after leasing it. *See* Exhibit C; *See* Transcription, 5:14-23.

9. Mr. Piedra tasked a friend with checking the Property periodically. *See* Exhibit C; *See* Transcription, 3:10-12.

10. Mr. Piedra did not purchase renter's insurance for the Property. *See* Exhibit C; *See* Transcription, 11:9-15.

11. Mr. Piedra did not receive mail at the Property. *See* Exhibit C; *See* Transcription, 10:13-18.

---

[2] As discussed in detail in Shelter's Supplemental Response to Plaintiffs' original early motion for summary judgment (ECF Doc. No. 44), there are questions regarding Mr. Piedra's execution of the lease. For purposes of this Motion only, Shelter accedes that the lease was signed by Mr. Piedra.

12. The date of loss was reported as January 17, 2019. Exhibit D, Letter from Sean Monaghan to Lester Bogunovich.

13. Shelter retained a mechanical engineer, Eric A. Black, P.E., to determine the cause of the loss at the Property. Exhibit E, Affidavit of Eric A. Black, ¶ 4.

14. Mr. Black determined that the furnace was not operating from at least December 3, 2018 to January 17, 2019. Exhibit E, ¶ 9.

15. Mr. Black determined that because the furnace was not operating between December 3, 2018 and January 17, 2019, the residence was subjected to below freezing temperatures. Exhibit E, ¶ 9.

16. Mr. Black determined that the energy records showed no indications of residency during December 2018 and January 2019. Exhibit E, ¶¶ 8-10.

17. Mr. Black concluded that the water loss was caused by a frozen pipe due to a lack of heat being maintained in the residence. Exhibit F, Engineering Findings Report, Prepared by Eric Black, p. 8-9.

18. The Policy, pursuant to Exclusion 11 contained in Special Form Coverage B-250.2-B, does not cover loss resulting directly or indirectly from "leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except-fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy." Exhibit A, p. 17, ¶ 11.

19. Additionally, pursuant to Exclusion 12, the Policy does not cover loss resulting directly or indirectly from "continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks, months or years." Exhibit A, p. 17, ¶ 12.

20. The Policy defines "you" and "your" to mean the insured named in the Declarations. Exhibit A, p. 6, ¶ 1. The only named insured is Plaintiff Bogunovich. Exhibit A, p. 2.

21. Shelter denied Defendant Bogunovich's clam for coverage based on Exclusions 11 and 12. Exhibit D.

22. Denver Water records revealed de minimis water usage at the Property in September, October, November, and December 2018, which starkly contrasts with the usage from before the Piedra lease began. Exhibit G, Consumption Records from Denver Water.

23. Similarly, from September 15, 2018 to December 3, 2018 there was no electric or gas usage recorded, indicating there no electric or gas utility service was being supplied to the residence. Exhibit H, Knott's Supplemental Report, Prepared by Eric Black p. 3; Exhibit I, Xcel Records.

24. The Property used six therms of gas from December 3, 2018 to December 21, 2018 and 31 therms from December 22, 2018 to January 24, 2019. Exhibit H, p. 4; Exhibit I.

25. The previous tenant used 85 and 130 therms during these same respective pay cycles the year prior. Exhibit H, p. 4; Exhibit I.

26. Mr. Black concluded the pilot light on the Property's water heater accounted for all six therms of gas used during the initial December 2018 cycle. Exhibit H, p. 4.

5

27. The gas and water usage indicates that no person inhabited the Property from December 3, 2018 until the water loss was discovered. Exhibit H, p. 5.

28. After evaluating utility records and weather data, Mr. Black determined the pipe froze on or about December 31, 2018 due to sustained freezing temperatures inside the Property. Exhibit H, p. 8-9.

29. Mr. Black also determined the resulting water loss commenced between January 3, 2019 and January 7, 2019 (9 to 13 days prior to the discovery of the loss). Exhibit H, p. 8-9.

## STANDARD OF REVIEW

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the … moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). e burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *Id*. at 322-23.

## ARGUMENT

**I.     The Policy's Exclusions Apply to Bar Coverage, and Plaintiffs' Breach of Contract Claim Fails**

   A.   <u>Exclusion 11 Applies to Preclude Coverage for Water Damage Caused by a Leak from Frozen Pipes When the Property is Vacant or Unoccupied and the Insured Did Not Make an Effort to Maintain Heat</u>

The Policy, pursuant to Exclusion 11 found in Special Form Coverage B-250.2-B, does not cover loss resulting directly or indirectly from "leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except-fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy." Material Fact #18.

Insurance policies are interpreted as a matter of law by the Court. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). Like all contracts, an insurance policy should be construed in accordance with general principles of contract interpretation. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Thus, courts must enforce the plain language of the policy unless it is ambiguous.[3] *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). The interpretation of the words "vacant" and "unoccupied" as used in an insurance policy is a question of law, but whether the subject dwelling was vacant or unoccupied at the time of the loss is a question of fact. *See Kolivera v. Hartford Fire Insurance Co.*, 290 N.E.2d 356, 358 (Ill.

---

[3] As discussed in Defendant's Response to Plaintiffs' Amended Early Motion for Partial Summary Judgment (ECF No. 57), the policy terms "unoccupied" and "vacant" are unambiguous.

7

App. 1972). In this case, the undisputed facts demonstrate that the Property was vacant and unoccupied during the relevant time frame.

### 1. The Property was Unoccupied at the Time of the Loss

A home is "unoccupied" when it lacks people's habitual presence. *See Verzura v. Allstate Indem. Co.*, No. 1–14–2907, 2016 WL 4586068, at *5 (Ill. App. Ct. Aug. 31, 2016) ("A house is unoccupied when "it has ceased to be a customary place of habitation or abode, and no one is living or residing in it."") (citation omitted); *Carter v. State Farm Fire and Casualty Company*, 407 F.Supp.3d 780, 784 (S.D. Ind. 2019) (when a customary place of abode is no longer a place of "usual return and habitual stoppage," it is unoccupied.); *Jugan v. Economy Premier Assurance Company Memorandum Opinion*, C.A. NO. 15-4272, 2016 WL 3632724, at *10 (E.D. Pa. July 7, 2016) ("A dwelling house being designed as the abode of mankind, is occupied when human beings habitually reside in it, and unoccupied when no one lives or dwells in it.") (citing 44 Am.Jur. 2d Insurance 1220 (1982)); *Chow v. Merrimack Mut. Fire Ins. Co.*, 987 N.E.2d 1275, 1281 (Mass. App. Ct. 2013) (undefined term "unoccupied," as used in policy exclusion, meant that no person was presently using the premises as a dwelling.); *Blaylock v American Guarantee Bank Liability Ins Co.*, 632 S.W.2d 719, 721 (Tex. 1982) (A house is unoccupied when "it ceases to be used for living purposes or as a customary place of human habitation."); *Lee-Jordan v. Allstate Indemnity Company*, 2019 WL 3066408, *2 (S.D.N.Y. July 12, 2019) (the regular presence of inhabitants is required for occupancy.)

Here, the Property was unoccupied and vacant at the time of pipe burst. Although Mr. Piedra had a lease signed on September 6, 2018, he never moved into the Property. *See* Undisputed Fact #4. The terms of the lease did not require him to move into our live at the

8

Property. *See* Exhibit B. Moreover, Mr. Piedra never acquired renter's insurance despite it being required under the terms of the lease. *See* Exhibit B; Undisputed Fact #10. He never directed his mail to the Property. *See* Undisputed Fact #11. Mr. Piedra alleges that he asked a friend to occasionally check in on the Property. *See* Undisputed Fact #9. However, Mr. Piedra himself never stayed at the Property. *See* Undisputed Fact #8.

Eric A. Black, a mechanical engineer retained by Shelter, determined that the furnace was not operating from at least December 3, 2018 to January 17, 2019. *See* Undisputed Fact #14. The Xcel Energy service was inactive for the Property until December 2018. *See* Undisputed Fact #23. Water usage at the Property was non-existent through the final four months of 2018. *See* Undisputed Fact #22. The gas usage in December 2018 revealed only enough energy to power the pilot light on the Property's water heater. *See* Undisputed Fact #26. The amount of energy used at the Property was insufficient to keep the home at a habitable temperature. *See* Undisputed Facts #27 and #28. The interior of the home was regularly at freezing temperatures in December 2018 and January 2019. *See* Undisputed Fact #15. The Property, with de minimis water and gas usage, and interior temperatures below freezing, ceased to be a customary place of habitation or abode. The home lacked the habitual presence of people, and it was therefore unoccupied at the time of the loss.

2. *The Property was Vacant at the Time of the Loss*

Even if the court determines that the Property does not qualify as "unoccupied" at the time of the loss, the exclusion also applies if the property was vacant at the time of the loss. Courts have held that "vacant" means not lived in and empty of content, including inanimate objects. *See Thompson v. Green Garden Mut. Ins. Co.*, 633 N.E.2d 1327 (Ill. App.

9

Ct.1994)) (defining "vacant" as "generally empty or deprived of contents[.]"); *Jelin v. Home Ins. Co.*, 5 F.Supp. 908 (D.N.J. 1934) (concluding that vacant means empty); *Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468, 471 (7th Cir. 1986) (vacant means entirely empty); *Jerry v. Kentucky Cent. Insurance*, 836 S.W.2d 812, 815 (Tex. App. 1992) ("[t]he term 'vacant' means entire abandonment, deprived of contents, empty, that is, without contents of substantial utility."); *Estes v. St. Paul Fire and Marine Ins. Co.*, 45 F.Supp.2d 1227, 1230 (D. Kan. 1999) (reasonably prudent policyholder would have understood term "vacant" to mean that structure was not lived in and lacked basic amenities for human habitation.); Merriam-Webster Online Dictionary, available at https://www.merriamwebster.com/dictionary/unoccupied (28 Jan. 2021) ("vacant" defined as "being without content or occupant," as in "a vacant seat in a bus" or "a vacant room." It also defines the word as "not lived in," as in "vacant houses.")

"For property to be considered vacant, it need not be totally free of any fixtures and furnishings; it is enough if the state of the structure's interior, combined with surrounding circumstances, indicate that the premises are not being used in any regular manner." *Hart v. Foremost Signature Insurance Company*, Civ. No. 05-519 WPL/DJS, 2006 WL 8444177, at *5 (D. NM May 2, 2006) (quoting 6A Couch on Ins. § 94:132 (3d ed. 1995)). Instead, a home lacking amenities minimally necessary for human habitation is considered "vacant." *American Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989).

For the reasons discussed above, the Property was not lived in at the time of the loss. Further, Mr. Piedra admitted to not moving into the Property. He also explained that the only personal property inside the Property had been purchased from the prior tenant. *See* Undisputed Fact #7. Mr. Piedra never used these items. Instead, they sat inside the empty and uninhabited

home for months until the loss event. Despite the existence of a few idle furnishings, Mr. Piedra abandoned the Property for several months, including the freezing winter months of December and January. The circumstances indicate that the Property was not being used in a regular manner, and "a reasonable person walking up to the house and looking through a window would conclude that it was 'vacant' as that term is understood in its plain and ordinary usage" because it was uninhabitably cold, without a regular occupant, and devoid of contents indicating habitation. *Hart*, 2006 WL at 8444177, at *5 (quoting *Speth v. State Farm Fire & Cas. Co.*, 35 P.3d 860, 864 (Kan. 2001)). As a result, in addition to being unoccupied at the time of the loss, the Property was also vacant.

### 3. *Plaintiffs Failed to Make any Effort to Maintain Heat in the Property*

As stated above, the Policy does not cover a loss resulting from a leak caused by freezing while the described building is vacant or unoccupied, unless the insured has made effort maintain heat in the building, or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy. Based upon the occurrence of the loss itself, it cannot be disputed that the water supply was not shut off at the Property. Thus, the only way Plaintiffs can avoid the application of Exclusion 11 is if the insured made an effort to maintain heat at the Property.

There is no evidence that any Plaintiff made an effort to maintain heat at the Property. Moreover, Plaintiffs cannot rely on the existence or actions of a tenant to meet the Policy's requirement that heat be maintained at the Property. *See Dougherty v. Allstate Property and Casualty Insurance Company*, 185 F.Supp.3d 585, 597 (E.D. Pa. 2016) (despite lease language putting obligation to maintain the property's heating system on tenant, the lease did not

11

constitute evidence that the insured used reasonable care to maintain his furnace because the insured's duty "to use reasonable care to maintain heat in the Property is a duty imposed upon [the insured] pursuant to the Policy that he cannot delegate to others.")

Even if Plaintiffs could satisfy the Policy requirements by relying on Mr. Piedra's actions, those actions also fail to demonstrate that any effort was made to maintain heat in the home. The lease did not require Mr. Piedra to reside at or maintain heat at the Property. *See* Exhibit B. Mr. Piedra did not activate the electric and gas until December 3, 2018, three months after the execution of the lease, and even then, the gas usage was minimal and not sufficient to maintain the heat at a habitable temperature. In addition, the furnace was not operating from at least December 3, 2018 to January 17, 2019. *See* Undisputed Fact #14. The Property's Xcel Energy service was inactive from September 2018 until December 2018. *See* Undisputed Fact #23. Even then, the gas usage in December 2018 revealed only enough energy to power the pilot light on the Property's water heater. *See* Undisputed Fact #26. Most importantly, the interior of the home dipped into freezing temperatures in December 2018 and January 2019. *See* Undisputed Fact #15.

Even if Mr. Piedra asked someone to check on the Property, this action is insufficient to satisfy the requirement of maintaining heat at the Property. In *Pazianas v. Allstate Ins. Co.*, No. CV 16-2018, 2016 WL 3878185 (E.D. Pa. July 18, 2016), the plaintiff left his property vacant for several months in the fall and winter, asked his daughter to inspect the property occasionally while he was away, made no provision for having the Property inspected during his trip to England after he learned that his daughter would be unable to inspect the Property, took no steps to ensure that the battery-operated thermostat would continue to operate for the duration of his

12

extended absence, and did not shut off the water to the Property or drain the appliances. The *Pazianas* court noted that "[e]ven accepting as true Pazianas's averments that he asked his daughter to inspect the Property in October, set the thermostat before departing, and did not intend to be away for more than two months, no reasonable juror could find that Pazianas used reasonable care to maintain heat in the Property during its vacancy." *See also Elkin v. State Farm Ins. Co.*, Civ. No. 11–3652 (PAM/JJG), 2013 WL 3340126, at *5 (D. Minn. July 2, 2013) (plaintiffs ignored their realtor and bills showing no gas usage); *Evangelista v. Hingham Mut. Fire Ins. Co.*, No. 034587, 2005 WL 705840, at *1-3 (Mass. Super. Ct. Feb. 14, 2005).

For these reasons, even if Plaintiffs could rely on Mr. Piedra's actions, those actions do not demonstrate that reasonable care was made to maintain heat at the Property. The undisputed facts show that there was no effort by Plaintiffs to maintain heat at the Property.

### 4. *Exclusion 11 Applies*

As noted, coverage is barred under the Policy's Exclusion 11 if the Property is unoccupied <u>or</u> vacant, and no effort was made to maintain heat at the property. As discussed above, the Property was both vacant and unoccupied. Moreover, the insured did not maintain the heat in the Property, whether those efforts are based on the insured's own actions or Mr. Piedra's. Accordingly, Exclusion 11 applies, and the Policy does not provide coverage for this loss. Consequently, summary judgment in favor of Defendant is appropriate on Plaintiffs' breach of contract claim.

### B. The Policy Precludes Coverage for Continuous Water Leaks

Shelter also denied the claim based upon Exclusion 12 for losses caused by a "continuous or repeated seepage or leakage of water from within a plumbing, heating or air conditioning

13

system or from within a domestic appliance which occurs over a period of weeks." *See* Undisputed Fact #19. As noted above, the at-issue water loss commenced as early as January 3, 2019. Undisputed Fact #29. It was not discovered until January 17, 2019. Undisputed Fact #14. The burst pipe leaked continuously for more than a week before it was discovered and reported it to Shelter. Thus, this loss resulted from a continuous water leak that occurred over weeks, and Exclusion 12 also applies to Plaintiffs' claim. As a result, both exclusions act to bar coverage for Plaintiffs' claim. Therefore, this exclusion also warrants the entry of summary judgment in favor of Shelter on Plaintiffs' breach of contract claim as a matter of law.

   C. Because There is No Coverage for Plaintiffs' Claim Under the Policy, Plaintiffs' Bad Faith Claim Fails as a Matter of Law

Because the subject Policy does not provide coverage for Plaintiffs, their additional claim for unreasonable delay/denial of benefits under C.R.S. § 10-3-1115 and -1116 fails as a matter of law. Per the plain language of C.R.S. § 10-3-1115, Plaintiffs' statutory bad faith claim cannot proceed if coverage does not exist. Such claim only exists where the claimant can prove that the insurer "delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." C.R.S. § 10-3-1115(2) (emphasis added); *see also* C.R.S. § 10-3-1115(1)(a) (prohibiting insurers from unreasonably delaying or denying payment of benefits owed) (emphasis added). Given the two exclusions analyzed above, no coverage exists for Plaintiffs' claim. Accordingly, Plaintiffs' claim was not for a covered benefit. Plaintiffs therefore cannot succeed on their statutory claim. *See Johnson v. Am. Nat'l Prop. & Cas. Cos.*, Civil Action No. 17-cv-2218-WJM-KMT, 2019 U.S. Dist. LEXIS 19184, at *15-16 (D. Colo. Feb. 6, 2019) (holding that statutory and common law bad faith claims are derivative of a claim for breach of an insurance contract and must be dismissed where contract claim fails).

14

For the reasons discussed above, Shelter has no contractual duty under the Policy to pay covered benefits to Plaintiffs, and Plaintiffs' breach of contract claim is not viable. Accordingly, summary judgment should also enter as to their statutory bad faith claim.

## CONCLUSION

For the reasons stated herein, Shelter Mutual Insurance Company respectfully requests this Court grant this Motion for Summary Judgment, dismiss all claims asserted by Plaintiffs in this lawsuit, and enter final judgment in favor of Shelter.

Dated this January 27, 2021.

Respectfully submitted,

*s/ Sophia H. Tsai*

_____
Sophia H. Tsai, Esq.
Matthew R. Freda, Esq.
Morgan Rider Riter Tsai, PC
1512 Larimer Street, Suite 450
Denver, CO 80202
Phone: (303) 623-1832
Fax: (303) 623-1833
Email: stsai@morganrider.com
         mfreda@morganrider.com
ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was duly served this January 27, 2021 to each of the following:

| | |
|---|---|
| David M. Summers | ( )   via U.S. Mail |
| 4401 S. Quebec St. | ( )   via Electronic Mail |
| Suite 100 | ( )   via Facsimile |
| Denver, CO 80237 | ( )   via Overnight Mail |
| *Counsel for Plaintiffs* | (x)   via CM/ECF System |

                                                    *s/ Felisha Hurtado*