**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL BEFORE SIGNING**

## RESIDENCE LEASE

**1. Parties.** THIS LEASE ("Lease") is made on September 6, 2018 between SKIBO, Inc., a Colorado corporation (the "Landlord") and Armando Mickel Piedra (the "Tenant").

**2. Premises.** In consideration of the payment of the Rent and the performance of the promises by the Tenant set forth below, the Landlord leases to the Tenant the following described residence, with all the appurtenances, situated in the City or Town of Greenwood Village, County of Arapahoe, in the State of Colorado, the address of which is 12066 E. Lake Circle, Greenwood Village, Colorado 80111, the legal description of which is Lot 24, Block 2, Cherry Creek Vista, Filing No 17A, County of Arapahoe, State of Colorado (the "Premises").

**3. Term.** The Landlord leases the Premises to the Tenant from twelve o'clock noon on September 15, 2018, until twelve o'clock noon on May 31, 2010 ("Term"). Upon the Tenant paying the Rent and performing all obligations under the Lease, the Tenant shall enjoy quiet possession of the Premises.

**4. Rent.** Rental shall be paid in monthly installments of $ 3,000.00, payable in advance, on or before twelve o'clock noon on the 1st day of each calendar month during the term of this Lease at the address of the Landlord's Property Manager David M. Summers at P.O. Box 372249, Denver, Colorado 80237 if mailed, or in person, without notice ("Rent"). If the Lease Term does not begin on the first day of the month, the Rent shall be prorated to the last day of that month.

**5. Tenant Covenants.** The Tenant, in consideration of the leasing of the Premises, agrees to the terms below.

**a. Prompt Payments.** The Tenant shall pay all the Rent and any Additional Payments due for the Premises.

**b. No Sublease/Assignment.** The Tenant shall not sublet any part of the Premises nor assign the Lease, or any interest therein, without the written consent of the Landlord.

**c. Use/Alterations.** The Tenant shall use and occupy the Premises only as a private residence with a maximum occupancy of five (5) people and shall not use the Premises for any purpose prohibited by the laws of the United States or the State of Colorado, or of the ordinances of the city or town in which the Premises are located. The Tenant shall not permit any portion of the Premises to be used in a manner which may endanger the person or property of the Landlord, co-tenants or any person living on or near the Premises. The Tenant shall keep all portions of the Premises in clean and habitable condition and will not make any alterations or additions to the Premises without the Landlord's written approval.

**d. Hold Harmless.** The Tenant shall neither hold, nor attempt to hold, the Landlord, Landlord's agents, contractors and employees liable for any injury, damage, claims or loss to person or property occasioned by any accident, condition or casualty to, upon, or about the Premises including, but not limited to, defective wiring, the breaking or stopping of the plumbing or sewage upon the Premises, unless such accident, condition or casualty is directly caused by intentional or reckless acts or omission of the Landlord. Notwithstanding any duty the Landlord may have hereunder to repair or maintain the Premises, in the event that the improvements upon the Premises are damaged by the negligent, reckless or intentional act or omission of the Tenant or any licensees, invitees or co-tenants, the Tenant shall bear the full cost of such repair or replacement. The Tenant shall hold the Landlord, Landlord's agents and their respective successors and assigns, harmless and indemnified from all injury, loss, claims or damage to any person or property while on the Premises or any other part of the Property, which is occasioned by an act or omission of the Tenant, Tenant's licensees, invitees or co-tenants. The Landlord is not responsible for any damage or destruction to the Tenant's personal property. The Tenant shall obtain renter's insurance at the Tenant's sole discretion and expense.

**e. Access.** The Tenant shall allow the Landlord to enter upon the Premises at any reasonable hour. The Tenant shall permit the Landlord to place a "For Rent" sign upon the Premises, and show the Premises to prospective tenants at any reasonable hour, during the final thirty days of this Lease.

**6. Utilities.** The Tenant shall be responsible for paying the following utilities. All of such charges to be paid by the Tenant shall be denoted Additional Payments: ☑ Electric ☑ Gas ☑ Water ☑ Sewer ☑ Phone ☐ Refuse Disposal ☑ Other  security monitoring (if desired by tenant).

**7. No Waiver/Set Off.** No assent, express or implied, to any default of any one or more of the agreements hereof shall be deemed or taken to be a waiver of any succeeding or other default. The covenants set forth herein shall be deemed to be independent. The Tenant shall have no right to withhold or set off any Rent due the Landlord.

**8. Holdover.** If, after the expiration of this Lease, the Tenant shall remain in possession of the Premises and continue to pay Rent without a written agreement as to such possession, then such tenancy shall be regarded as a month-to-month tenancy, at a monthly rental, payable in advance, equivalent to 200% of the last month's Rent paid under this Lease, and subject to all the terms and conditions of this Lease.

**9. Vacancy.** If the Premises are left vacant and any part of the Rent reserved hereunder is not paid, then the Landlord may, without being obligated to do so and without terminating this Lease, retake possession of the Premises and relet, or attempt to relet, the same for such rent and upon such conditions as the Landlord may think best. The Landlord may make such change and repairs as may be required, giving credit for the amount of Rent so received less all expenses of such changes and repairs, and the Tenant shall be liable for the balance of the Rent herein reserved until the expiration of the Term.

**10. Security Deposit.** The Tenant agrees to surrender the Premises at the expiration of this Lease in as good a condition as when the Tenant entered the Premises, normal wear and tear excepted. As security therefor and performance of all other terms of the Lease, a Security Deposit in the amount

**EXHIBIT B**

INSURED 0001

of $ 3,000.00 ("Security Deposit") has been paid by the Tenant. The Security Deposit shall be returned to the Tenant, or written accounting made for any portion retained, listing the exact reasons for the retention, together with the balance of the Security Deposit, within sixty (60) days after termination of the Lease or surrender and acceptance of the Premises. The Landlord shall mail any written statement to the last known address of the Tenant. The Tenant may not apply the Security Deposit as Rent unless agreed to by the Landlord.

**11. Repairs and Maintenance of the Premises.** The Landlord agrees to keep all the improvements upon the Premises including, but not limited to, structural components, interior and exterior walls, floors, ceiling, roofs, sewer connections, plumbing, wiring, appliances and glass in good maintenance and repair at their expense. The Tenant shall properly irrigate and care for all trees, shrubbery and lawn and shall keep all drives, common areas and sidewalks on the Premises free and clear of ice and snow. The Tenant shall not cause waste to occur upon the improvements and shall keep the entire interior and exterior Premises free from all litter, dirt, debris and obstructions; and shall keep any septic system or sewer line in a clean and sanitary condition.

In the event the Landlord is responsible for repair of the Premises, the Tenant shall be obliged to notify the Landlord of any condition upon the Premises requiring repair, and shall provide the Landlord a reasonable time to accomplish said repair. At the commencement of this Lease, the Tenant and the Landlord ☐ have ☑ have not completed a written description setting forth the agreed condition of the Premises. If such written description has been completed, it is hereby incorporated by this reference. As of the commencement of this Lease, the Tenant acknowledges that the Tenant has examined the Premises and is satisfied with the condition thereof. Taking possession of the Premises is conclusive evidence to the fact that the Premises are in good order and satisfactory condition.

**12. Default.** If the Tenant shall be in arrears in the payment of any instalment of Rent, any Additional Payments, or any portion thereof, or in default of any other covenants or agreements set forth in this Lease ("Default"), and the Default remains uncorrected for a period of three (3) days after the Landlord has given written notice thereof pursuant to applicable law, then the Landlord may, at the Landlord's option, undertake any of the following remedies without limitation: (a) declare the Term of the Lease ended; (b) terminate the Tenant's right to possession of the Premises and reenter and repossess the Premises pursuant to applicable provisions of the Colorado Forcible Entry and Detainer Statute; (c) recover all present and future damages, costs and other relief to which the Landlord is entitled; (d) pursue Landlord's lien remedies; (e) pursue breach of contract remedies; and/or (f) pursue any and all available remedies in law or equity. In the event possession is terminated by reason of a Default prior to expiration of the Term, the Tenant shall be responsible for the Rent and Additional Payments occurring for the remainder of the Term, subject to the Landlord's duty to mitigate such damages. Pursuant to applicable law [13-40-104(d.5), (e.5) and 13-40-107.5, C.R.S.] which is incorporated by this reference, in the event repeated or substantial Default(s) under the Lease occur, the Landlord may terminate the Tenant's possession upon a written Notice to Quit, without a right to cure. Upon such termination, the Landlord shall have available any and all of the above-listed remedies.

**13. Attorneys' Fees.** In the event any dispute arises concerning the terms of this Lease or the non-payment of any sums under this Lease, and the matter is turned over to an attorney, the party prevailing in such dispute shall be entitled, in addition to other damages and costs, to recover reasonable attorneys' fees from the other party.

**14. Late Fee.** In the event any payment required hereunder is not received within ten (10) days after the payment is due, a late charge in the amount of (five) 5 % of the payment will be paid by the Tenant. Such fee shall be deemed an Additional Payment. No partial payment or performance by the Tenant or acceptance by the Landlord shall cure any outstanding default, estop the Landlord from pursuing, or continuing to pursue, remedies for such default, or act as a waiver.

**15. Pets.** Pets shall be permitted on the Premises, but shall be limited to 3 in number, without the prior written consent of Landlord.

**16. Miscellaneous.** This Lease shall be subordinate to all existing and future security interests on the Premises. All notices shall be in writing and be personally delivered or sent by first class mail, unless otherwise provided by law, to the respective parties at the address immediately below their signature. All titles and captions are for convenience only and are not a part of this Lease. If any term or provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and shall be valid and enforceable to the full extent permitted by law. This Lease shall only be modified by amendment signed by both parties. This Lease shall be binding on the parties, their personal representatives, successors and assigns.

## ADDITIONAL PROVISIONS

Additional provisions of this Lease are set forth in Exhibit A, attached to and made a part of this Lease by this reference.

SKIBO, INC., a Colorado corporation

Landlord: _____

Lester Bogunovich, President

Address: c/o D. Summers P.O. Box 372249
      Denver, Colorado 80237

Tenant: _____

Armando Mickel Piedra

Tenant: _____

Address: 7 Dakota Court, Carbondale, CO 81623

INSURED 0002

EXHIBIT A
TO RESIDENCE LEASE DATED SEPTEMBER 6, 2018
FOR PERIOD FROM SEPTEMBER 15, 2018 THROUGH MAY 31, 2020

ADDITIONAL PROVISIONS

1. All references to Tenant in this Exhibit shall refer to Armando Michel Piedra.

2. Landlord shall pay all applicable Home Owners Association dues for the Premises during the term of this Lease.

3. Tenant has inspected the Premises and accepts the Premises in its present condition.

4. Tenant and all persons claiming by or through the Tenant shall hold Landlord harmless for any liability associated with Tenant's occupancy of the Premises by the Tenant. Tenant shall indemnify Landlord for any liability incurred by Landlord arising from Tenant's occupancy of the Premises.

5. Tenant's security deposit may not be designated by Tenant for use for payment of rent at any time.

6. Landlord shall be responsible for any necessary repairs to the premises in excess of $99 individually, and in excess of $499 in the aggregate during the term of this Lease, unless the Tenant or its invitees cause damage necessitating such repair. Tenant, however, shall be responsible for maintaining the premises, its fixtures and appliances in good working order and shall pay for any necessary repairs or replacements costing less than $100 individually, or less than $500 in the aggregate, during the term of this Lease.

7. Before Tenant occupies the Premises, in addition to payment of the Security Deposit ($3,000), Tenant shall also pay one full month's rent ($3,000) and the last month's rent ($3,000) due under this Lease in advance.



INSURED 0003

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL BEFORE SIGNING

## RESIDENCE LEASE

**1. Parties.** THIS LEASE ("Lease") is made on September 6, 2018 between SKIBO, Inc., a Colorado corporation (the "Landlord") and Arnaud Mickel Piedra (the "Tenant").

**2. Premises.** In consideration of the payment of the Rent and the performance of the promises by the Tenant set forth below, the Landlord leases to the Tenant the following described residence, with all the appurtenances, situated in the City, or Town of Greenwood Village, County of Arapahoe, in the State of Colorado, the address of which is 12066 E. Lake Circle, Greenwood Village, Colorado 80111, the legal description of which is Lot 24, Block 2, Cherry Creek Vista, Filing No 17A, County of Arapahoe, State of Colorado (the "Premises").

**3. Term.** The Landlord leases the Premises to the Tenant from twelve o'clock noon on September 15, 2018, until twelve o'clock noon on May 31, 2010 ("Term"). Upon the Tenant paying the Rent and performing all obligations under the Lease, the Tenant shall enjoy quiet possession of the Premises.

**4. Rent.** Rental shall be paid in monthly installments of $ 3,000.00, payable in advance, on or before twelve o'clock noon on the 1st day of each calendar month during the term of this Lease at the address of the Landlord's Property Manager David M. Summers at P.O. Box 372249, Denver, Colorado 80237 if mailed, or in person, without notice ("Rent"). If the Lease Term does not begin on the first day of the month, the Rent shall be prorated to the last day of that month.

**5. Tenant Covenants.** The Tenant, in consideration of the leasing of the Premises, agrees to the terms below.

**a. Prompt Payments.** The Tenant shall pay all the Rent and any Additional Payments due for the Premises.

**b. No Sublease/Assignment.** The Tenant shall not sublet any part of the Premises nor assign the Lease, or any interest therein, without the written consent of the Landlord.

**c. Use/Alterations.** The Tenant shall use and occupy the Premises only as a private residence with a maximum occupancy of five (5) people and shall not use the Premises for any purpose prohibited by the laws of the United States or the State of Colorado, or of the ordinances of the city or town in which the Premises are located. The Tenant shall not permit any portion of the Premises to be used in a manner which may endanger the person or property of the Landlord, co-tenants or any person living on or near the Premises. The Tenant shall keep all portions of the Premises in clean and habitable condition and will not make any alterations or additions to the Premises without the Landlord's written approval.

**d. Hold Harmless.** The Tenant shall neither hold, nor attempt to hold, the Landlord, Landlord's agents, contractors and employees liable for any injury, damage, claims or loss to person or property occasioned by any accident, condition or casualty to, upon, or about the Premises including, but not limited to, defective wiring, the breaking or stopping of the plumbing or sewage upon the Premises, unless such accident, condition or casualty is directly caused by intentional or reckless acts or omission of the Landlord. Notwithstanding any duty the Landlord may have hereunder to repair or maintain the Premises, in the event that the improvements upon the Premises are damaged by the negligent, reckless or intentional act or omission of the Tenant or any licensees, invitees or co-tenants, the Tenant shall bear the full cost of such repair or replacement. The Tenant shall hold the Landlord, Landlord's agents and their respective successors and assigns, harmless and indemnified from all injury, loss, claims or damage to any person or property while on the Premises or any other part of the Property, which is occasioned by an act or omission of the Tenant, Tenant's licensees, invitees or co-tenants. The Landlord is not responsible for any damage or destruction to the Tenant's personal property. The Tenant shall obtain renter's insurance at the Tenant's sole discretion and expense.

**e. Access.** The Tenant shall allow the Landlord to enter upon the Premises at any reasonable hour. The Tenant shall permit the Landlord to place a "For Rent" sign upon the Premises, and show the Premises to prospective tenants at any reasonable hour, during the final thirty days of this Lease.

**6. Utilities.** The Tenant shall be responsible for paying the following utilities. All of such charges to be paid by the Tenant shall be deemed Additional Payments: ☑ Electric ☑ Gas ☑ Water ☑ Sewer ☑ Phone ☐ Refuse Disposal ☑ Other security monitoring (if desired by tenant).

**7. No Waiver/Set Off.** No assent, express or implied, to any default of any one or more of the agreements hereof shall be deemed or taken to be a waiver of any succeeding or other default. The covenants set forth herein shall be deemed to be independent. The Tenant shall have no right to withhold or set off any Rent due the Landlord.

**8. Holdover.** If, after the expiration of this Lease, the Tenant shall remain in possession of the Premises and continue to pay Rent without a written agreement as to such possession, then such tenancy shall be regarded as a month-to-month tenancy, at a monthly rental, payable in advance, equivalent to 200% of the last month's Rent paid under this Lease, and subject to all the terms and conditions of this Lease.

**9. Vacancy.** If the Premises are left vacant and any part of the Rent reserved hereunder is not paid, then the Landlord may, without being obligated to do so and without terminating this Lease, retake possession of the Premises and relet, or attempt to relet, the same for such rent and upon such conditions as the Landlord may think best. The Landlord may make such change and repairs as may be required, giving credit for the amount of Rent so received less all expenses of such changes and repairs, and the Tenant shall be liable for the balance of the Rent herein reserved until the expiration of the Term.

**10. Security Deposit.** The Tenant agrees to surrender the Premises at the expiration of this Lease in as good a condition as when the Tenant entered the Premises, normal wear and tear excepted. As security therefor and performance of all other terms of the Lease, a Security Deposit in the amount

INSURED 0004

of $3,000.00 ("Security Deposit") has been paid by the Tenant. The Security Deposit shall be returned to the Tenant, or written accounting made for any portion retained, listing the exact reasons for the retention, together with the balance of the Security Deposit, within sixty (60) days after termination of the Lease or surrender and acceptance of the Premises. The Landlord shall mail any written statement to the last known address of the Tenant. The Tenant may not apply the Security Deposit as Rent unless agreed to by the Landlord.

**11. Repairs and Maintenance of the Premises.** The Landlord agrees to keep all the improvements upon the Premises including, but not limited to, structural components, interior and exterior walls, floors, ceiling, roofs, sewer connections, plumbing, wiring, appliances and glass in good maintenance and repair at their expense. The Tenant shall properly irrigate and care for all trees, shrubbery and lawn and shall keep all drives, common areas and sidewalks on the Premises free and clear of ice and snow. The Tenant shall not cause waste to occur upon the improvements and shall keep the entire interior and exterior Premises free from all litter, dirt, debris and obstructions; and shall keep any septic system or sewer line in a clean and sanitary condition.

In the event the Landlord is responsible for repair of the Premises, the Tenant shall be obliged to notify the Landlord of any condition upon the Premises requiring repair, and shall provide the Landlord a reasonable time to accomplish said repair. At the commencement of this Lease, the Tenant and the Landlord ☐ have ☒ have not completed a written description setting forth the agreed condition of the Premises. If such written description has been completed, it is hereby incorporated by this reference. As of the commencement of this Lease, the Tenant acknowledges that the Tenant has examined the Premises and is satisfied with the condition thereof. Taking possession of the Premises is conclusive evidence to the fact that the Premises are in good order and satisfactory condition.

**12. Default.** If the Tenant shall be in arrears in the payment of any installment of Rent, any Additional Payments, or any portion thereof, or in default of any other covenants or agreements set forth in this Lease ("Default"), and the Default remains uncorrected for a period of three (3) days after the Landlord has given written notice thereof pursuant to applicable law, then the Landlord may, at the Landlord's option, undertake any of the following remedies without limitation: (a) declare the Term of the Lease ended; (b) terminate the Tenant's right to possession of the Premises and reenter and repossess the Premises pursuant to applicable provisions of the Colorado Forcible Entry and Detainer Statute; (c) recover all present and future damages, costs and other relief to which the Landlord is entitled; (d) pursue Landlord's lien remedies; (e) pursue breach of contract remedies; and/or (f) pursue any and all available remedies in law or equity. In the event possession is terminated by reason of a Default prior to expiration of the Term, the Tenant shall be responsible for the Rent and Additional Payments occurring for the remainder of the Term, subject to the Landlord's duty to mitigate such damages. Pursuant to applicable law [13-40-104(d.5), (e.5) and 13-40-107.5, C.R.S.] which is incorporated by this reference, in the event repeated or substantial Default(s) under the Lease occur, the Landlord may terminate the Tenant's possession upon a written Notice to Quit, without a right to cure. Upon such termination, the Landlord shall have available any and all of the above-listed remedies.

**13. Attorneys' Fees.** In the event any dispute arises concerning the terms of this Lease or the non-payment of any sums under this Lease, and the matter is turned over to an attorney, the party prevailing in such dispute shall be entitled, in addition to other damages and costs, to recover reasonable attorneys' fees from the other party.

**14. Late Fee.** In the event any payment required hereunder is not received within ten (10) days after the payment is due, a late charge in the amount of _(five) 5_ % of the payment will be paid by the Tenant. Such fee shall be deemed an Additional Payment. No partial payment or performance by the Tenant or acceptance by the Landlord shall cure any outstanding default, estop the Landlord from pursuing, or continuing to pursue, remedies for such default, or act as a waiver.

**15. Pets.** Pets shall be permitted on the Premises, but shall be limited to 3 in number, without the prior written consent of Landlord.

**16. Miscellaneous.** This Lease shall be subordinate to all existing and future security interests on the Premises. All notices shall be in writing and be personally delivered or sent by first class mail, unless otherwise provided by law, to the respective parties at the address immediately below their signature. All titles and captions are for convenience only and are not a part of this Lease. If any term or provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and shall be valid and enforceable to the full extent permitted by law. This Lease shall only be modified by amendment signed by both parties. This Lease shall be binding on the parties, their personal representatives, successors and assigns.

### ADDITIONAL PROVISIONS

Additional provisions of this Lease are set forth in Exhibit A, attached to and made a part of this Lease by this reference.

SKIBO, INC., a Colorado corporation

Landlord: _____
     Lester Bogunovich, President

Tenant: _____
     Armando Mickel Piedra

Address: _c/o D. Summers P.O. Box 372249_
      _Denver, Colorado 80237_

Tenant: _____

Address: _7 Dakota Court, Carbondale, CO 81623_

INSURED 0005

EXHIBIT A
TO RESIDENCE LEASE DATED SEPTEMBER 6, 2018
FOR PERIOD FROM SEPTEMBER 15, 2018 THROUGH MAY 31, 2020

ADDITIONAL PROVISIONS

1.  All references to Tenant in this Exhibit shall refer to Armando Michel Piedra.

2.  Landlord shall pay all applicable Home Owners Association dues for the Premises during the term of this Lease.

3.  Tenant has inspected the Premises and accepts the Premises in its present condition.

4. Tenant and all persons claiming by or through the Tenant shall hold Landlord harmless for any liability associated with Tenant's occupancy of the Premises by the Tenant. Tenant shall indemnify Landlord for any liability incurred by Landlord arising from Tenant's occupancy of the Premises.

5.  Tenant's security deposit may not be designated by Tenant for use for payment of rent at any time.

6.  Landlord shall be responsible for any necessary repairs to the premises in excess of $99 individually, and in excess of $499 in the aggregate during the term of this Lease, unless the Tenant or its invitees cause damage necessitating such repair.  Tenant, however, shall be responsible for maintaining the premises, its fixtures and appliances in good working order and shall pay for any necessary repairs or replacements costing less than $100 individually, or less than $500 in the aggregate, during the term of this Lease.

7.   Before Tenant occupies the Premises, in addition to payment of the Security Deposit ($3,000), Tenant shall also pay one full month's rent ($3,000) and the last month's rent ($3,000) due under this Lease in advance.