IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-CV-03526-NYW

**SKIBO, INC**., a Colorado corporation,
**ILIA GRETSKIY** and **LESTER BOGUNOVICH**,
   Plaintiffs,

v.

**SHELTER MUTUAL INSURANCE COMPANY**,
   Defendant.
_____

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
AMENDED EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Plaintiffs, SKIBO, INC., a Colorado corporation, ILIA GRETSKIY and LESTER BOGUNOVICH, by and through the undersigned attorney, hereby submit the Plaintiffs' Reply to Defendant's Response to Plaintiffs' Amended Early Motion for Partial Summary Judgment, as follows:

**OBJECTION TO SHELTER'S INTRODUCTION, AND ADDITIONAL
UNDISPUTED FACTS**

Plaintiffs object to Shelter's Introduction (pp. 1 – 2 of the Response), which is replete with disputed facts. Plaintiffs' Amended Early Motion for Partial Summary Judgment presents one very narrow issue, to-wit: Whether the terms "vacant or unoccupied" as used in the Policy Exclusion in Paragraph 11 on Page 13 of the Policy is ambiguous? As such, the disputed facts set forth in Shelter's Introduction are irrelevant to Plaintiffs' Amended Motion.

For similar reasons, Plaintiffs object to Shelter's claimed Additional Undisputed Material Facts (pp. 3 – 5 of the Response).  The additional facts that Shelter asserts derive from an opinion rendered by Shelter's expert, which Plaintiffs dispute. In any event, all of the recited facts are irrelevant to the issue of whether or not the terms "vacant or unoccupied" in Shelter's policy exclusion are ambiguous. If the terms are found to be ambiguous, they must be construed against Shelter and in favor of coverage for the Plaintiffs' loss.

## REPLY CONCERNING DENIAL OF
## TWO OF MOVANT'S UNDISPUTED FACTS

Shelter objected to Movant's material facts, numbered 6 and 7. Although they provide useful background information, these two material facts are not necessary for determination of the issue regarding whether the terms "vacant or unoccupied" are ambiguous. Nevertheless, in response to Defendant's objections, Plaintiff has attached as Exhibit A, the Affidavit of Lester Bogunovich, in support of Plaintiffs' original contention that Movant's Material Facts numbered 6 and 7 in its Amended Motion are undisputed facts. Plaintiffs also object to Shelter's newly offered disputed facts contained within its objections as irrelevant because they do not bear on the only issue to be determined in this Motion, namely, whether the term "vacant or unoccupied" as used in the Policy Exclusion in Paragraph 11 on Page 13 of the Policy is ambiguous?

## REPLY CONCERNING DEFENDANT'S ADDITIONAL DISPUTED FACTS

Notwithstanding Plaintiffs' objection set forth above, and without waiving same, Plaintiffs respond to Shelter's Additional Undisputed Material Facts as follows:

1. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, the document speaks for itself.
2. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Admitted.
3. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. This fact is disputed by a rebuttal expert opinion.
4. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. This fact is disputed by a rebuttal expert opinion.
5. OBJECTION. Irrelevant for purposes of this Motion. This purported fact is also ambiguous. Without waiving these objections, Denied. The water records set forth in Shelter's Exhibit 3 do not accurately reflect the billing periods where actual meter readings were taken, as billing periods include portions of two separate months. Such records are also misleading due to rounding.
6. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. Xcel Energy Service was maintained continuously at the property during periods relevant to this proceeding.

7. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. It appears that the Tenant at the Property was charged for 6 therms of natural gas used at the Property between December 3, 2018 and December 21, 2018, but that time period does not include the time period when the water damage occurred.

8. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. Many factors affect the number of therms used during any billing period.

9. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. This fact is disputed by a rebuttal expert opinion.

10. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. This fact is disputed by a rebuttal expert opinion.

11. OBJECTION. Irrelevant for purposes of this Motion. Without waiving this objection, Denied. This fact is disputed by a rebuttal expert opinion.

## LEGAL ANALYSIS

A. **The policy terms "vacant or unoccupied" are ambiguous.**

It is undisputed that, at the heart of this controversy is the interpretation of "vacant or unoccupied" for purposes of the policy exclusion. The exclusion applies if the water damage was caused by the freezing of pipes that occurred while the property was "vacant or unoccupied." It is also undisputed that those terms are not defined by the Policy.

Shelter contends that the term "vacant" means that the dwelling is totally empty and totally without animate or inanimate objects, whereas "unoccupied" means without human habitation. Of course, even if Shelter's construction is reasonable, theirs "must be the only reasonable interpretation for [Shelter] to be correct that the Policy is unambiguous." Carter v. State Farm, 407 F.Supp.3d 780, 783 (S.D.Ind. 2019).

In arguing that "vacant or unoccupied" are unambiguous, Shelter relies on a number of older cases, all of which are distinguishable. **In every one of the cases cited by Shelter on this issue, the relevant policy exclusion specifies a specific time period that is used to determine whether or not the "vacant or unoccupied" exclusion applies.**

For example, in both Lundquist v. Allstate Ins. Co., 732 N.E.2d 627 (Ill.App.Ct. 2000) and Thompson v. Green Garden Mut. Ins. Co., 633 N.E.2d 1327 (Ill.App.Ct. 1994), the policy exclusion applies if the premises are vacant or unoccupied for more than 30 days. In both

Hehemann v. Mich. Millers Mut. Ins. Co., 240 So.2d 851 (Fla. 4th DCA 1970) and Rainwater v. Maryland Cas. Co. of Baltimore, 166 S.E.2d 546 (S.C. 1969), the policy exclusion applies if the premises are vacant or unoccupied for more than 60 days.  In Jelin v. Home Ins. Co., 5 F. Supp. 908 (D.N.J. 1934), the policy exclusion applies if the premises are vacant or unoccupied for more than 10 days.  In Myers v. Merrimack Mut. Fire Ins. Co., 788 F.2d 468 (7th Cir. 1986), the policy exclusion applies if the premises are vacant or unoccupied for more than 60 days. See also Alcock v. Farmers Mut. Fire Ins. Co., 591 S.W.2d 126 (Mo.Ct.App. 1979) (60 days); National Sec. Fire & Cas. Co. v. James, 358 So.2d 737 (Ala.Civ.App. 1978) (60 days).

The policy exclusions in the cases Shelter relies on are very different from the one in the policy at issue in this case. Shelter's policy exclusion contained in Special Form Coverage B-250.2-B, states:

> 11.   Leakage or overflow from plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy.

Even if one assumes for the sake of argument that "vacant" unambiguously means that the dwelling is totally empty and totally without animate or inanimate objects, would the policy exclusion apply if the loss occurred at a time when the rental home had been totally empty for a single day (or a few hours after one tenant moved out, but before a new tenant moved in)? Even if one might accept Shelter's interpretation of "unoccupied," would the policy exclusion apply if the loss occurred when the rental home had been without human presence or habitation for a long weekend or a week (while its tenants were on a vacation or business trip)? The lack of any time limitation or reference renders the policy exclusion ambiguous.

Shelter also erroneously relies on Maldonado v. Allstate Fire and Cas. Ins. Co., 849 F.Supp.2d 1080 (D. Colo. 2012) to support its argument that "vacant or unoccupied" are unambiguous. The Maldonado court did not find "vacant or unoccupied" to be unambiguous terms. Rather, the court found that the insureds' interpretation of those terms was reasonable, but that there existed other disputed facts precluding summary judgment.

In any event, other more recent cases that have found the terms "vacant or unoccupied" to be ambiguous. For example, in <u>Carter v. State Farm Fire & Cas. Co.</u>, 407 F. Supp. 3d 780 (S.D. Ind. July 17, 2019), a freezing pipes case, the court found that the words "vacant" and "unoccupied" should be construed in relation to the property and its use.

> "So the words "vacant" and "unoccupied" may have a different meaning in the context of a summer vacation home, just as they have different meaning in the context of an owner-occupied dwelling versus a tenant-occupied dwelling, or when applied to a church, schoolhouse, store, barn, or mill."

<u>Id</u>. at 784. Because the use of the property must be taken into account, the terms may be reasonably construed to mean different things and were, therefore, found to be ambiguous.

Another case finding these terms to be ambiguous is <u>Gray v. Allstate Indem. Co.</u>, Case No. 3:13-cv-1232, (M.D. Pa. February 23, 2015). In that case, the rental property sustained vandalism-related fire damage. The policy excluded coverage for fire losses caused by vandalism if the property was vacant or unoccupied for more than 90 consecutive days immediately preceding the vandalism and precluded coverage for any loss occurring while the property was vacant or unoccupied beyond 60 consecutive days. The insured contended that, although the property was not being rented at the time of the fire, the insured had a continuous presence on the property to personally rehabilitate the property. The <u>Gray</u> court found that the terms "vacant" and "unoccupied" as used in the policy may be reasonably interpreted to support the positions of both parties. Additionally, the court found that Allstate could have eliminated the ambiguity by defining the terms vacant and unoccupied but failed to do so. Consequently, the <u>Gray</u> court found the terms to be ambiguous and strictly construed them against Allstate.

Shelter also points to certain dictionary definitions as support for its argument that the words vacant and unoccupied both mean "not lived in." This is problematic under applicable principles of contract construction which require each term to mean different things. Furthermore, dictionaries differ in their definition of the terms.

The Webster's New World College Dictionary's defines "vacant" as:

**1** having nothing in it, as a space; devoid of contents; empty; void

**2** not held, filled, or occupied, as a position or office

**3** having no occupant [a *vacant* seat]

**4** untenanted, as a room or house

**5** not filled with activity or work; free; leisure [*vacant* time]

**6** a) having or showing emptiness of mind or lack of intelligence, interest, thought, etc. b) empty of thought (said of the mind)

**7** *Law* a) unoccupied or unused, as land b) having no claimant, as an estate or succession c) not yet granted, as public lands

(4th Ed., p. 1576).

Webster's Dictionary's definition of "unoccupied" is **1** having no occupant; vacant; empty **2** at leisure; idle. (4th Ed., p. 1565) Webster's Dictionary defines each term by reference to the other, and its definitions differ somewhat from the one proposed by Shelter. This merely highlights the ambiguity.

Thus, different jurisdictions have provided different definitions for "vacant" and "unoccupied." Dictionaries differ in the definitions for those terms. Whether a property is "unoccupied" or "vacant" depends on the property's use and circumstances. Because "vacant" and "unoccupied" may be reasonably defined to support each party's position in this case, the Court should find the terms to be ambiguous and strictly construed against Shelter and in favor of coverage. Bailey v. Lincoln General Ins. Co., 255 P.3d 1039, 1051) (Colo. 2011); A. W. Interiors v. The Travelers, 44 F.Supp.3d 1071, 1075 (D.C. Colo. 2014).

### B. Shelter could have defined the terms and, having failed to do so, should bear the risk of ambiguity.

Shelter also argues that policy terms are not rendered ambiguous merely because they are not defined in the policy. Shelter's argument misses the point. The question is which party should bear the risk of ambiguity when terms are not defined in an insurance policy, the insured upon whom policy terms are foisted, or the insurer, who is the sole drafter of policy terms. There is ample case law that place the onus on the insurer, as the sole drafter of insurance policies, to draft them in such a way as to remove ambiguity wherever possible. As the court in Carter explained:

> Moreover, State Farm could have defined the terms "dwelling," "vacant," and "unoccupied," *see Buehler Corp. v. Home Ins.*, 358 F. Supp. 15, 16 (S.D. Ind. 1973) (quoting a policy that became void if a building remained "vacant or unoccupied ... for ten (10) days"), or included specific provisions governing off-season coverage, *see Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 245 (Ind. 2000) (recognizing that "the risk remained with the insurer" because it failed to set out clear policy terms).

Carter at 785.

Similarly, the court in Gray stated:

> The policy in the present case could have simply defined the terms vacant and unoccupied, with reference to the vacancy clauses, however, Allstate did not define the two terms at all in the policy. The court thus finds that more precise language in the policy by Allstate could have eliminated the ambiguity.

Gray at 18.

### C.     Plaintiffs' public policy argument does not have to be supported by case law.

In arguing that Plaintiffs' public policy argument must be supported by case law, Shelter relies on Meehan v. Amax Oil & Gas, Inc., 796 Fl. Supp. 461 (D. Colo. 1992). However, Shelter is misrepresenting the holding in Meehan. Meehan was a wrongful termination case. Colorado has carved out a narrow exception from the at-will employment doctrine. If an employer requires an employee to perform an act that would violate clearly expressed public policy, and the employee is terminated for failing to do so, then the employee can state a claim for wrongful discharge. In that context, a naked assertion that the employer required the employee to perform an act against public policy, without legal or evidentiary support, was appropriately rejected. Meehan has no application here.

If the ambiguity associated with Shelter's use of the terms "vacant or unoccupied" without a time reference is not corrected, countless other Shelter insureds will be thrust into the throes of uncertainty when they experience a similar casualty loss at their rental properties.  It is unconscionable to allow continued arbitrary and potentially unfair interpretation of these terms by Shelter to deny coverage to its insureds, who like the Plaintiffs, dutifully paid annual policy premiums for decades insuring their rental properties from casualty loss, only to have their first insurance claim denied under an obscure and ambiguous policy exclusion that was impossible for them to foresee.  Policy holders with rental properties cannot be expected to mitigate their potential for losses associated with denied insurance coverage for casualty losses from water damage by constantly monitoring the day-to-day activities of their tenants during unspecified time periods. Shelter's use of these terms in the context of an exclusion to insurance coverage, without specifying a time frame, or using a clear and workable definition, fosters arbitrary and unpredictable coverage determinations.   Insurance policy terms should be clearly and fully defined in the relevant insurance policy by the insurer.  Many insureds do not have the resources or knowledge to effectively challenge their powerful insurance carrier and deserve protection.  Insureds should not have to resort to Federal and State courts for rulings about workable and understandable definitions

of relevant exclusionary terms in their insurance policies. Thus, requiring insurance companies like Shelter to fully define their exclusionary terms will also serve to reduce the burden on overwhelmed court dockets and prevent waste of precious judicial resources.

### D. The doctrine of reasonable expectations supplements and supports Plaintiffs' analysis.

Finally, Shelter argues that the doctrine of reasonable expectations does not apply in these circumstances. In doing so, Shelter appears to argue that the doctrine of reasonable expectations is a remedy or theory entirely separate from the issue of ambiguity. That is incorrect.

The doctrine of reasonable expectations is an interpretive tool that supplements, but does not supplant traditional principles of contract interpretation. Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1050 (Colo. 2011). One of the circumstances in which the doctrine of reasonable expectations has been invoked in Colorado is "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue." Id.

> "This manifestation of the doctrine of reasonable expectations applies when policy coverage-provisions may not be ambiguous in the technical sense, and hence subject to the rule that ambiguities must be construed against the drafter, but are ambiguous from the perspective of an ordinary reader. In such cases, exclusionary language may be held unenforceable."

Id. See also Hoang v. Assurance Co. of Am., 149 P.3d 798, 803 (Colo. 2007) ("An insurance policy must be construed to meet the reasonable expectations of the insured.")

The doctrine has evolved out of the fact that Colorado courts "have long viewed insurance policies with a critical eye." Id. at 1049. Although insurance policies are not necessarily contracts of adhesion, neither are they in any sense negotiated at arms-length. Courts recognize that they are often presented on a take-it-or-leave-it basis and obtained by insureds who generally lack the sophistication to scrutinize and comprehend all of the language contained in insurance policies. Id. As with standardized contracts generally, there is an increased risk that the insured will be inadvertently or intentionally exploited. Id. For that reason, courts have a responsibility to scrutinize insurance policies carefully. Id. The doctrine of reasonable expectations is one of the principles of fairness to which insurance companies are subjected to protect insureds from the danger of unfairness or exploitation inherent in standardized contracts. Id.

Because Shelter clearly issued the Policy to cover a rental dwelling, application of the doctrine of reasonable expectations supports Plaintiffs' position.  It is certainly reasonable that the Plaintiffs expected that coverage would not be denied to them based on a tenant's temporary absence from a rented property. Not only do tenants have the right to peaceful, exclusive possession of a leased premises, landlords have a duty to respect those rights.  Tenants cannot be reasonably required, or expected, to inform their landlord when they are temporarily absent from the rented property, go on vacation, or travel for business, for every possible length of time. Thus, in the context of insurance policies for rental dwellings, landlords do not reasonably expect that they must fear loss of insurance coverage every time their tenants leave the property.

To fairly fulfill the purposes of an exclusionary provision in an insurance policy, and reasonably meet expectations of the insured, the exclusion must be easily applied. It is reasonable to expect that exclusions will create a bright and well defined line. The use of any term requiring the insured to constantly seek information about a tenant's whereabouts, and then analyze how long might be too long for a tenant to be absent does not.

## CONCLUSION

The application of the policy exclusion relied on by Shelter depends upon the interpretation of the terms "vacant or unoccupied." As demonstrated above, those terms, undefined by the policy, mean different things to different people and vary with every circumstance, especially where no time frame is specified.  Dictionary definitions differ. There is reasonable support for the both of the parties' positions. Case law differs substantially in the treatment of those terms.  Older cases concluding that the terms are not ambiguous rely on a specified time frame for their conclusions. More recent cases from multiple jurisdictions find "vacant" and "unoccupied" to be ambiguous. Shelter (and only Shelter) could have removed the ambiguity by defining the terms in the policy but failed to do so. As such, the Court should find the terms to be ambiguous, and construe the terms against Shelter and in favor of coverage.

Respectfully submitted this 3rd day of February, 2021.

*/s/ David M. Summers*
David M. Summers, No. 13488
4401 South Quebec Street, Suite 100
Denver, Colorado  80237
Telephone:  (303) 220-5420
dsummerslaw@gmail.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2021, a true and correct copy of the foregoing was served via the Court's ECF electronic filing system to:

Sophia H. Tsai, Esq.
Matthew R. Freda, Esq.
Morgan Rider Riter Tsai, PC
1512 Larimer Street, Suite 450
Denver, Colorado  80202
Email: stsai@morganrider.com

<u>/s/ David M. Summers</u><br>
David M. Summers<br>
<em>Attorney for Plaintiffs</em>