**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-3526-WJM-NYW

SKIBO, INC., a Colorado corporation;
ILIA GRETSKIY; and
LESTER L. BOGUNOVICH,

      Plaintiffs,

v.

SHELTER MUTUAL INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING ACME RESTORATION MITIGATION LLC'S MOTION TO
INTERVENE PURSUANT TO F.R.C.P. 24(a) OR (b)**

---

      This matter is before the Court on the Partially Unopposed Motion of ACME
Restoration Mitigation LLC d/b/a Metro Mitigation ("Metro Mitigation") To Intervene
Pursuant to F.R.C.P. 24(a) or (b) ("Motion"), filed on October 23, 2020.  (ECF No. 47.)
Defendant Shelter Mutual Insurance Company ("Shelter Mutual") does not oppose the
Motion, but Plaintiffs SKIBO, Inc., Ilia Gretskiy, and Lester L. Bogunovich (collectively,
"Plaintiffs") oppose the Motion.  (*Id.* at 1.)  Plaintiffs responded to the Motion on
November 6, 2020 (ECF No. 51), and Metro Mitigation replied on November 9, 2020
(ECF No. 52).

      For the reasons stated below, the Motion is granted.

**A.    Plaintiffs' Claims**

Plaintiffs own a residential property (the "Property") that was covered by an insurance policy issued by Shelter Mutual.  (ECF No. 34 ¶ 2.)  Plaintiffs allege that on or about January 16, 2019, their tenant who was leasing the Property discovered severe and extensive water damage to the Property.  (*Id.* ¶¶ 6, 8.)  After Plaintiffs notified Shelter Mutual of the damage, Shelter Mutual assigned a claims adjuster to handle the claim and conducted various inspections of the Property.  (*Id.* ¶¶ 9–12.)  According to Plaintiffs, because their tenant had removed their belongings from the Property at the time of the inspection, Shelter Mutual erroneously determined that the Property was vacant and unoccupied when the water damage occurred.  (*Id.* ¶¶ 11–15.)  Shelter Mutual ultimately denied coverage for the loss under the Property's insurance policy based on exclusions for water damage occurring over a period of time and damage caused by or resulting from freezing while the Property was vacant or unoccupied.  (*Id.* ¶ 22.)

Plaintiffs initiated this lawsuit against Shelter Mutual on November 12, 2019 in Arapahoe County District Court.  (ECF No. 1 at 1.)  Shelter Mutual removed this action on December 13, 2019 (ECF No. 1), and Plaintiffs filed an amended complaint on May 29, 2020, asserting claims for breach of contract and unreasonable delay or denial of insurance claim under Colorado Revised Statutes 10-3-1115 and 1116.  (ECF No. 34

---

[1] The following factual summary is based on the allegations in Plaintiffs' Complaint and Jury Demand (ECF No. 34), as well as the parties' briefs on the Motion and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

¶¶ 56–70.)

**B.   Metro Mitigation**

Metro Mitigation provides "mitigation and remediation services for residential and commercial properties damaged by water, fire, and other manmade and natural disasters." (ECF No. 47 at 1.)  It asserts that that it entered into a contract with Bogunovich on January 22, 2019 to perform mitigation and remediation services at the Property. (*Id.* at 1–2.)  Under the terms of their contract, Bogunovich authorized Metro Mitigation to receive payment for its services directly from Shelter Mutual and assigned his rights against Shelter Mutual to Metro Mitigation:

> I hereby assign any and all insurance rights, benefits, proceeds and any cause of action under any applicable insurance policies to METRO MITIGATION LLC, (hereafter referred to as "Company"), for the services rendered or to be rendered by Company. In this regard, I waive my privacy rights. I make this assignment in consideration of the Company's agreement to perform services including not requiring full payment at the time of service . . . I believe the appropriate insurance carrier to be Shelter Insurance. I further instruct that payment be made in the name of METRO MITIGATION.

(ECF No. 47-10 at 2.)

Metro Mitigation asserts that after it finished its work in February 2019, it sent a $49,641.33 invoice to Bogunovich's attorney, David Summers. (*Id.* at 2; ECF No. 47-2.)  When Metro Mitigation did not receive payment, it filed a lawsuit against Bogunovich in Arapahoe County District Court for breach of contract. (ECF No. 47 at 3.)  Bogunovich did not respond to the complaint, and Metro Mitigation obtained a default judgment in the amount of $63,941.25 against Bogunovich on June 4, 2020. (*Id.*; ECF No. 47-6.)

According to Metro Mitigation, Summers subsequently transferred Bogunovich's

real property valued at approximately $800,000 into a limited liability company,

Collaborative Investments III, LLC. (ECF No. 47 at 3–4.) Metro Mitigation has also

sued Collaborative Investments III, LLC in Arapahoe County District Court to avoid

Bogunovich's transfer of real property as a fraudulent transfer. (*Id.* at 4.)

## II. ANALYSIS

Metro Mitigation argues that it should be allowed to intervene as of right under

Federal Rule of Civil Procedure 24(a)(2), which provides:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Tenth Circuit requires a non-party seeking to intervene as of right to establish:

(1) timeliness, (2) an interest relating to the property or transaction that is the subject of

the action, (3) the potential impairment of that interest, and (4) inadequate

representation by existing parties. *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d

1112, 1121 (10th Cir. 2019) (quoting *Kane Cnty. v. United States*, 928 F.3d 877, 889

(10th Cir. 2019)). "The central concern in deciding whether intervention is proper is the

practical effect of the litigation on the applicant for intervention." *Id.* (quoting *San Juan

Cnty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (en banc)).

## A. Timeliness

The Tenth Circuit considers three non-exhaustive factors particularly important in

determining whether a request to intervene is timely: (1) the length of time since the

movants knew of their interests in the case; (2) prejudice to the existing parties; and (3)

prejudice to the movants. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (citation omitted).

Metro Mitigation argues that the Motion is timely because it was filed just four days after Metro Mitigation learned of this case in October 2020. (ECF No. 47 at 4; ECF No. 52 at 2–3.) It further contends that the parties will not be prejudiced by its intervention because "[i]t has no intention of delaying this proceeding by requesting that any expired deadlines be reset or that any unexpired deadlines be extended." (ECF No. 52 at 3.)

In response, Plaintiffs contend that Metro Mitigation "has failed to satisfy the timeliness requirement" because several deadlines in this lawsuit have already passed. (ECF No. 51 at 3, 5.) They argue that allowing Metro Mitigation to intervene in this action "would cause extreme delay and add unnecessary complication to this proceeding." (*Id.* at 5.) The Court disagrees.

The discovery and dispositive motions deadlines had not yet expired when Metro Mitigation filed the Motion. Although those deadlines have now passed, Plaintiffs have not demonstrated that they would be prejudiced in any way by allowing Metro Mitigation to intervene. To the contrary, because Metro Mitigation has represented that it will not request any deadlines to be reset or extended, the only party possibly prejudiced by any delay is Metro Mitigation. For the Court, this is the dispositive factor in the timeliness analysis. Moreover, it is significant that Metro Mitigation filed the Motion within a week of learning of the existence of this action.[2]

---

[2] Plaintiffs' counsel informed Metro Mitigation's counsel in September 2019 that Plaintiffs planned to commence litigation against Shelter Mutual within a few weeks and that he would provide Metro Mitigation counsel's "with copies of the pleadings as soon as they are filed with the Court, and will keep [him] apprised of developments in the case." (ECF No. 47-4 at 1.)

Accordingly, the Court concludes that Metro Mitigation's request to intervene is timely.

**B.      An Interest In the Property That is the Subject of the Action & Potential Impairment of That Interest**

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, and the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Barnes*, 945 F.3d at 1121. The Tenth Circuit requires that a movant's "interest in the proceedings be direct, substantial, and legally protectable." *Id.*; *W. Energy All.*, 877 F.3d at 1165 ("A protectable interest is one that would be impeded by the disposition of the action.").

Moreover, a prospective intervenor must show that "impairment of its substantial legal interest is possible if intervention is denied." *Barnes*, 945 F.3d at 1121. A showing of impairment need not be of a strictly legal nature. *Id.* To the contrary, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (quotations omitted).

Plaintiffs argue that Metro Mitigation has failed to demonstrate that its interest would be impaired by not being allowed to intervene, since "Plaintiffs fully intend to pay [Metro Mitigation] for those water damage mitigation services that [it] provided at the relevant home." (ECF No. 51 at 4.) Moreover, Plaintiffs accuse Metro Mitigation of "attempting to add two pending state court cases to this Federal Court proceeding and

---

However, Metro Mitigation represents—and Plaintiffs do not contest—that Plaintiffs' counsel did not do so. (ECF No. 47 at 4.)

litigate the matters at issue in these cases in Federal Court through the intervention process." (*Id.* at 2.)  Because "there appear to be no common questions of law or fact in the [Metro Mitigation's] cases that are particularly relevant to the issues to be resolved in this proceeding," Plaintiffs assert that Metro Mitigation "has failed to state any specific claim against the Defendant in this proceeding."  (*Id.* at 5.)

Plaintiffs' argument misses the mark.  At no point has Metro Mitigation suggested that it intends to add additional parties or claims to this action.  (*See generally* ECF Nos. 47, 52.)  To the contrary, Metro Mitigation has explained that it merely seeks to "litigate those claims alleged against Shelter that are owned by Metro Mitigation."  (ECF No. 52 at 4.)  Because Bogunovich has assigned to Metro Mitigation "any and all insurance rights, benefits, proceeds and any cause of actions under any applicable insurance policies" (ECF No. 47-10), Metro Mitigation has a direct, substantial, and legally protectable interest in this action, and its interests will be substantially affected if intervention is denied.  After all, the disposition of this action will directly affect Metro Mitigation's rights to pursue its assigned claim against Shelter Mutual.

Accordingly, the Court finds that Metro Mitigation has an interest relating to the claims at issue in this action and that its interest may be impaired if it is not allowed to intervene.

## C.   Inadequate Representation by Existing Parties

To satisfy the final element of the intervention test, Metro Mitigation must demonstrate that its interests will be not be "adequately represented by the existing parties to the litigation."  *Barnes*, 945 F.3d at  1124 (quoting *WildEarth*, 573 F.3d at 996).  The Tenth Circuit has recognized that "[t]he possibility of divergence need not be

great in order to satisfy this burden." *Id.* To the contrary, "[a]n intervenor need only show the *possibility* of inadequate representation." *Id.* (emphasis in original); *but see Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996) (recognizing that representation is adequate "when the objective of the applicant for intervention is identical to that of one of the parties").

Plaintiffs contend that Metro Mitigation's interests are already adequately represented in the lawsuit because Plaintiffs are seeking to recover for the "water loss damage suffered at the [Property] in order to provide funds for the appropriate payment of [Metro Mitigation] for their water damage mitigation services, and fund repairs to the home." (ECF No. 51 at 5.)

However, Metro Mitigation contends that Plaintiffs' argument is disingenuous given Bogunovich's (1) refusal to pay Metro Mitigation for its work at the Property, (2) attempts to transfer his property after learning that Metro Mitigation intended to pursue a claim against him, (3) failure to defend Metro Mitigation's state court lawsuit against him, and (4) failure to advise Metro Mitigation that it was asserting Metro Mitigation's claims against Shelter Mutual. (ECF No. 52 at 4–5.)

In light of the apparent animosity between the parties and Metro Mitigation's default judgment against Bogunovich, the Court finds that it is possible—if not likely— that the parties' interests have diverged to such an extent that Plaintiffs may well have different incentives and objectives in pursuing the insurance claim against Shelter Mutual. The Court therefore finds that Metro Mitigation has shown the possibility of inadequate representation to warrant intervention.

\* \* \* \*

In sum, the Court finds that Metro Mitigation has established each of the four requirements for intervention as of right under Rule 24(a)(2).[3]  However, the parties are on notice that the Court will hold Metro Mitigation to its representation that it will not seek to reset any expired deadlines or extend any unexpired deadlines.

### III. CONCLUSION

Accordingly, for the reasons set forth above, the Court ORDERS as follows:

1.    The Partially Opposed Motion of ACME Restoration Mitigation d/b/a Metro Mitigation to Intervene Pursuant to F.R.C.P. 24(a) or (b) (ECF No. 47) is GRANTED; and

2.    The parties and the Clerk of Court shall adopt the following caption going forward:

SKIBO, INC., a Colorado corporation;
ILIA GRETSKIY; and
LESTER L. BOGUNOVICH,

   Plaintiffs, and

ACME RESTORATION MITIGATION LLC d/b/a Metro Mitigation,

   Intervenor-Plaintiff,

v.

SHELTER MUTUAL INSURANCE COMPANY,

Defendant.

---

[3] Because the Court finds that Metro Mitigation is allowed to intervene as of right pursuant to Rule 24(a)(2), the Court will not analyze whether Metro Mitigation would also be permitted to intervene under Rule 24(b).

Dated this 4th day of June, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge