**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 19-cv-3526-RMR-NYW

SKIBO, INC., a Colorado corporation,
ILIA GRETSKIY, and LESTER BOGUNOVICH,

      Plaintiffs,

v.

SHELTER MUTUAL INSURANCE COMPANY,

      Defendant.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

This matter comes before the Court on Plaintiff's Amended Early Motion for Partial Summary Judgment, ECF 55, and Defendant's Motion for Summary Judgment, ECF 62. Both motions have been fully briefed, and further briefing or argument would not materially assist the Court. For the reasons stated herein, the **GRANTS** the Plaintiffs' Motion [55] and **DENIES** Defendant's Motion [62].

## I.      BACKGROUND

This diversity action arises out of damage to a residential rental property ("the Property") owned by the Plaintiffs and insured by the Defendant. The Plaintiffs' insurance policy ("the Policy") had an effective period of March 7, 2018 through March 7, 2019. ECF 62 ¶ 3. On or around September 15, 2018, Plaintiffs leased the Property to Armando

Piedra ("the Tenant"). *Id.* ¶ 4. The Tenant purchased furniture from the prior tenants at the Property, which was kept inside the Property. *Id.* ¶ 7. The Tenant did not immediately move in to the Property full-time, but the furniture he purchased was in the Property, and he testified that he had a friend check on the property once a week. ECF 62-3, p. 5. On approximately January 16, 2019, significant water damage was discovered in the Property. ECF 62 ¶ 12; ECF 69 ¶ 12. Prior to January 16, 2019, a water supply pipe located on the second floor of the Property froze and burst. ECF 55 ¶ 5.

Plaintiffs timely submitted a claim to the Defendant under the policy. *Id.* ¶ 10. The Defendant denied Plaintiffs' claim for coverage because the policy excludes coverage for "leakage or overflow…caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured has made effort to maintain heat in the building or unless the equipment and appliances have been drained and the water supply shut off during such vacancy or unoccupancy." *Id.* ¶ 12. ("Exclusion 11"). The policy does not define "vacant or unoccupied." Defendant also denied Plaintiffs' claim pursuant to Exclusion 12, which precludes coverage for loss resulting from "continuous or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks, months or years." ECF 62 ¶ 19.

## II.    LEGAL STANDARD

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a). When analyzing a motion for summary judgment, the court must look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). However, the nonmoving party may not simply rest upon its pleadings at this stage; rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249.

## III.   PLAINTIFFS' EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs ask the Court to enter to summary judgment in their favor on Defendant's claim that Plaintiffs' losses are precluded from coverage pursuant to Exclusion 11. Plaintiffs specifically argue that the terms "vacant or unoccupied" are ambiguous in the context of the insurance policy and must thus be construed in favor of coverage. For the

reasons set forth herein, the Court **GRANTS** Plaintiffs' motion for partial summary judgment.

### A.      Applicable Law

"The interpretation of an insurance contract is a matter of law…" *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). An insurance policy is a contract and should be interpreted consistently with the well-settled principles of contractual interpretation. In contract interpretation, we begin by giving words used their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990); *see also Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002). The insurer bears the burden of establishing that an exclusion applies. *See Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991). Ambiguous terms in an insurance policy are construed against the insurer. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501–02 (Colo. 2004). A policy provision is ambiguous when it is reasonably susceptible of more than one meaning. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo.1993). Courts will not force an ambiguity in an insurance contract in order to resolve it against the insurer. *Martinez v. Hawkeye–Security Ins. Co.*, 195 Colo. 184, 188, 576 P.2d 1017, 1019 (1978).

**B.     Analysis**

The Plaintiffs argue that the terms "vacant" and "unoccupied" are ambiguous and, as such, should be construed against the Defendant.[1] The Defendant argues that the term is not ambiguous as it is used in the Policy because "it can be understood by considering its context." ECF 57, p. 6 (citing *American Auto Ins. Co. v. Marlow*, 666 F. Supp.2d 1209, 1217 (D. Colo. 2009). Defendant argues that, when considered in context, "unoccupied" means "lack of people's habitual presence," and that vacant means "empty of all content, including inanimate objects." ECF 57, p. 7. The Defendant directs the Court to *Maldonado v. Allstate Fire & Cas. Ins. Co.*, 849 F. Supp. 2d 1080, 1084 (D. Colo. 2012), in which Judge Jackson accepted the Plaintiff's proposed definition of "unoccupied" to mean "not lived in: empty."

The Court need not define "vacant or unoccupied" because, even under the Defendant's proposed definition of the term, no person could reasonably conclude that the Property at issue here was "vacant or unoccupied" when the damage occurred. In *Maldonado*, the Court explained that "a home is not necessarily 'unoccupied' or 'vacant' simply because the homeowner is not always there. It depends on the circumstances." *Id.*

---

[1] "Vacant," Plaintiffs argue, "generally means the opposite of 'rented'" in the "home rental context." The dictionary definition of the term, however, includes "devoid of contents, empty; not held, filled or occupied." Plaintiff thus argues that "vacant" is subject to multiple plain and ordinary meanings and is thus ambiguous. Plaintiffs argue that, likewise, "unoccupied" could mean "devoid of all contents and empty" or it could mean "not rented" because it had no occupant or contents belonging to a tenant, and was vacant." ECF 55.

The Tenant here signed his lease on September 15, 2018. He purchased furniture from the prior tenants of the Property, and so his furnishings were moved into the Property as of that date. For this reason alone, the Property was not "empty of all content" when the loss occurred. The Defendant suggests that the Tenant did not actually "move in" to the Property because his furniture was already there, but the Court fails to appreciate the distinction that the Defendant tries to make. The furniture in the Property—the same furniture that was damaged by the burst pipe—was owned by the Tenant. That he did not physically move that furniture into the property himself does not impact the analysis.

Further still, the Tenant testified that he tasked a friend with checking in on the Property weekly. The Property was thus not empty of all content nor did it "lack [] people's habitual presence." Even if someone had not been checking on the property regularly, the Defendant's suggested interpretation here would still be untenable. Defendant's proposed interpretation requires the Court to find that gaps in physical human occupancy by an individual tenant – even during the term of their lease -- could preclude coverage under Exclusion 11. The Defendant provides no workable framework for analyzing what length of vacancy would trigger Exclusion 11. Would a three-week vacation trigger Exclusion 11? One month? Under Defendant's interpretation of Exclusion 11, it would be nearly impossible for a policyholder to know when coverage might be excluded.

Considering the terms in the context of the broader Policy also supports the Court's finding here. The Policy at issue is an "Apartment Owners/Rental Dwelling Insurance Policy." When interpreting the Policy, the Court thus takes into consideration that it is was

6

specifically entered into to insure rental property. *See Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 640 (Colo. App. 2007)(a court analyzes a purportedly ambiguous term "in the context of the insurance policy in which it is contained"). The plain an ordinary meaning of the term "vacant," when referring to a rental property, means a property that is not rented. Defendant's argument that a rental property may be deemed "vacant" simply when the tenant is not physically on the property (for an unspecified period of time) requires the court to unnecessarily deviate from this plain and ordinary meaning.

For these reasons, the Court finds that Plaintiffs are entitled to summary judgment on Defendant's claim that Plaintiffs' coverage is precluded under Exception 11. The evidence here, even when viewed in light most favorable to the Defendant, indicates that no reasonable jury could find that the Property was "vacant or unoccupied" when the loss occurred. Plaintiffs' Early Motion for Partial Summary Judgment is **GRANTED.**[2]

---

[2] In a footnote in its own motion for summary judgment, ECF 62, the Defendant directs the court to its filing at ECF 44-1, arguing that "there are questions regarding Mr. Piedra's execution of the lease." The Court first notes that the brief referenced by the Defendant was attached to a motion for leave to file a supplemental reply, which was subsequently denied by the Court. *See* ECF 44 (motion for leave); ECF 54 (order denying motion for leave as moot). Nonetheless, even considering the arguments therein, the Court's analysis is not impacted. The thrust of the Defendant's argument is that Mr. Piedra may not have actually executed the lease because the signature on the lease is not identical to Mr. Piedra's signature on his affidavit. The Defendant also argued that, at the time that it filed ECF 44-1 (August 1, 2020), it had not had an opportunity to depose Mr. Piedra, and suggested that this called into question the accuracy of the statements made in his affidavit. The Court notes that the Defendant has attached to its own motion for summary judgment a transcript from its adjuster's interview with Mr. Piedra, dated February 6, 2019. ECF 62-3. The Court also notes that the Plaintiffs in this case have filed copies of the lease containing Mr. Piedra's signature (ECF 55-1, p. 34) and a copy of Mr. Piedra's rent check for December 2018. *Id.* at p. 36. Defendant's unsupported questions regarding the authenticity of the signature on the lease do not create an issue of material fact given the evidence already identified by the Plaintiffs.

## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant asks the court to grant summary judgment in its favor on Plaintiffs' breach of contract and bad faith claims. Defendant argues that Plaintiffs' coverage is precluded under Exclusion 11 and Exclusion 12, and it is therefore entitled to judgment as a matter of law.

For the reasons already stated herein, the Court finds that Exclusion 11 does not preclude coverage here because the Property was not "vacant or unoccupied." Defendant is thus not entitled to summary judgment with regard to Exclusion 11.

Defendant secondarily argues that it is entitled to summary judgment because Plaintiffs' claim was barred by Exclusion 12, which precludes coverage for losses caused by a "continuous or repeated seepage or leakage of water from within a plumbing, heating or air conditioning system or from within a domestic appliance which occurs over a period of weeks." Defendant argues that "the at-issue water loss commenced as early as January 3, 2019 [and]…was not discovered until January 17, 2019." ECF 62, p. 14. Because the leak lasted for more than a week before it was discovered, Defendant argues, the resulting loss is precluded by Exclusion 12.

Defendant's argument here is also unpersuasive. The Policy precludes coverage for leaks that occur over a period of weeks—that is, it precludes coverage when a system or appliance is continuously leaking. Defendant argues here, however, that the water loss "commenced" on January 3, 2019, but that it was not *discovered* until January 17, 2019.

8

The Defendant has admitted that the burst pipe "caused extensive water damage to the home within the first 24-hour period after it burst." ECF 82 ¶ 24.

Defendant's interpretation suggests that discovery of damage necessarily informs whether that damage was "continuous" under the policy exclusion. The Defendant here claims that Exclusion 12 applies because the damage was not discovered for 9-13 days. The Defendant's interpretation of Exclusion 12 would again lead to unpredictable and unforeseeable results. Under this interpretation, a family on vacation for 8 days might be denied coverage if the damage occurred on the day they left. Such interpretation contradicts the plain language of Exclusion 11, which was clearly intended to preclude coverage for continuous leaks, not merely for any leak or damage that takes more than seven days to discover.

Nor has the Defendant offered support for its claim that 9-13 days amounts to "weeks," for the purposes of the policy. Considering a similar insurance provision under Utah law, the Tenth Circuit found that a policy that precluded coverage for damages caused by "continuous or repeated seepage or leakage over a period of weeks" suggested that "weeks," as used in the policy, "must at the very least mean two weeks." *Wheeler v. Allstate Ins. Co.*, 687 F. App'x 757, 766 (10th Cir. 2017). The Defendant here has not identified evidence that, when considered in the light most favorable to the Plaintiff, suggests that it is entitled to judgment as a matter of law.

The Defendant has not established that the water leakage was "continuous," such that Exclusion 12 applies, nor has it established that the 9-13 day delay in discovery of the leak constituted "weeks," such that Exclusion 12 applies.

For these reasons, Defendant's Motion for Summary Judgment is **DENIED.**

## V.     CONCLUSION

For the reasons stated herein, Plaintiffs' Early Motion for Partial Summary Judgment [55] is **GRANTED.** Defendant's Motion for Summary Judgment [62] is **DENIED.**

DATED:  November 17, 2021

BY THE COURT:

_____

REGINA M. RODRIGUEZ

United States District Judge